## Lindquist, John A. (TAX)

| | |
|---|---|
| From: | dgronsman@sidley.com |
| Sent: | Tuesday, June 29, 2004 3:04 PM |
| To: | Lindquist, John A. (TAX) |
| Cc: | wconlon@Sidley.com; rpietrzak@sidley.com; TMiller@Sidley.com |
| Subject: | SAB&W Tax Matter - Final Disclosure |

 

tmp.htm (1 KB) 5567780_1.DOC (40 KB)

John:   attached is the balance of the names and addresses of the interveners in the John Doe action.  Please let me know if you have any questions.

<<5567780_1.DOC>>

Sidley Austin Brown & Wood LLP mail server made the following annotations on 06/29/2004, 02:04:07 PM
------------------------------------------------------------

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

EXHIBIT
8

~~EXHIBIT F~~
Docket No. 12307-04

6/29/04

**Arthur Andersen**

|   |
|---|
|   |

**Chenery - CARDS**

|   |
|---|
|   |

**Diversified - Spread Options**

|   |
|---|
|   |
|   |
|   |
|   |
|   |
|   |

**CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**

02/15/2005 14:54 FAX  202 514 9649        US DEPT OF JUSTICE. TAX                 ☒048/050

6/29/04

|  |
|---|
|  |
|  |
|  |
| Mr. Keith Tucker<br>c/o Waddell & Reed Financial, Inc.<br>6300 Lamar Avenue<br>Shawanee Mission, KS  66202 |

**Multi-National Strategies – COMMON TRUST**

|  |
|---|
|  |
|  |
|  |

**Valdez - 43549.1**

|  |
|---|
|  |
|  |

**CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**

2

6/29/04

| |
|---|
| |
| |
| |
| |
| |
| |
| |
| |
| |

**CONFIDENTIA... – ATTORNEY/CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**

3

6/29/04

|   |
|---|
|   |
|   |
|   |
|   |
|   |
|   |
|   |

**CONFIDENTIAL – ATTORNEY/CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**

4

## Epsolon Limited

Sligo (2000) Company Inc.

1) Epsolon Limited, an Irish Private Limited Company ("Epsolon"), was formed on November 6, 2000. It was owned 100% by Cumberdale Investments Limited ("Cumberdale").

2) On December 18, 2000, Cumberdale sold to Sligo (2000) Company Inc. ("Sligo") 99% of Epsolon for $10,000.

3) On December 18, 2000, Cumberdale and Sligo entered into a Shareholders Agreement wherein Sligo agreed to contribute capital of $1,514,700 and Cumberdale $15,300 for a total of $1,530,00.

4) On December 20, 2000, Epsolon entered into eight European-style single-payoff ("digital") 19-day options with Lehman Brothers as follows:

|  |  | Premium <Paid>/Received | Potential Proceeds to be <Paid>/Received | Strike Price (USD/Euro) |
|---|---|---|---|---|
| Call Spread I | Purchased euro call (Option #1182384) | <$56,451,951> | $187,637,704 | .9208 |
|  | Sold euro call (Option #1182386) | 57,000,000 | <189,827,513> | .9207 |
| Put Spread I | Purchased euro put (Option #1182380) | <56,451,284> | 187,445,332 | .8914 |
|  | Sold euro put (Option #1182381) | 57,000,000 | <189,635,141> | .8915 |
| Call Spread II | Purchased euro call (Option #1182391) | <21,568,993> | 71,710,943 | .9208 |
|  | Sold euro call (Option #1182392) | 21,750,000 | <72,434,183> | .9207 |
| Put Spread II | Purchased euro put (Option #1182388) | <21,568,773> | 71,637,538 | .8914 |
|  | Sold euro put (Option #1182389) | 21,750,000 | <72,360,777> | .8915 |
|  | Total: | $1,458,999 |  |  |

5) The spot rate at time of the trades was .9056 and Epsolon was required to post a margin of $1,448,986 plus the net premium received, which on termination of the options would have grown (with interest on the $1,448,986) to $2,913,047, the maximum gross amount that Epsolon could owe. Epsolon could realize a net profit of $1,458,999 on the trades plus $5,062 in interest. The probability that this would occur was approximately 39.92 %.

EXHIBIT 9

1

KTTC001230

- ❖ The terms of Call Spread I were that if the euro was at .9208 and above at expiration, Epsolon would owe $2,189,809 and if it was below .9208 (*i.e.*, at .9207 and below), then Epsolon would retain a $548,049 net premium.

- ❖ The terms of Put Spread I were that if the euro was at .8914 and below at expiration, Epsolon would owe $2,189,809, and if it was above .8914 (*i.e.*, at .8915 and above), Epsolon would retain a $548,716 net premium.

- ❖ The terms of Call Spread II were that if the euro was at .9208 and above at expiration, Epsolon would owe $723,239 and if it was below .9208 (*i.e.*, at .9207 and below), then Epsolon would retain a $181,007 net premium.

- ❖ The terms of Put Spread II were that if the euro was at .8914 and below at expiration, Epsolon would owe $723,239, and if it was above .8914 (*i.e.*, at .8915 and above), Epsolon would retain a $181,227 net premium.

6) As the result of the trades entered into on December 20, 2000, the options would have the following net economic consequences for Epsolon:

| USD/Euro at Expiration | Net Gain | Net Loss | Probability |
|---|---|---|---|
| Between .8915 and .9207 | $1,458,999 | | 40% |
| Below .8915 | | $1,454,039 | 30% |
| Above .9207 | | 1,454,030 | 30% |

7) In addition, on December 21, 2000, Sligo (2000) LLC, a limited liability company whose sole member interest was owned by Keith Tucker ("Tucker"), entered into the following two European-style 365-day options:

| | Premium <Paid>/Received (USD Equivalent) | Potential Proceeds to be <Paid>/Received (USD Equivalent) | Strike Price (Yen/USD) |
|---|---|---|---|
| Purchased Yen put (Option #1185473) | <$51,000,000> | $132,089,680 | 108.96 |
| Sold Yen put (Option #1185472) | 50,490,000 | <131,020,972> | 108.97 |
| Total: | <$510,000> | $1,068,708 | |

8) The spot rate at the time of the trades was 112.3. Sligo (2000) LLC could realize a net profit of $558,708 on the trades. The probability that this would occur was 40%.

2  **KTTC001231**

- If the Yen was above 108.96 (i.e., at 108.97 and above) at expiration, Sligo (2000) LLC would receive a net payment of Japanese yen equivalent to $1,068,708 and if it was at 108.95 and below, Sligo (2000) LLC would lose the $510,000 net premium.

- If the Yen was at precisely 108.96 at expiration, Sligo (2000) LLC would receive Japanese yen equivalent to $132,089,680 and not owe anything on the short position.

9) In connection with the trades (including the replacement trades described below) entered into by Epsolon and Sligo (2000) LLC, Tucker or his controlled entities incurred fees of $1,270,000 (inclusive of $250,000 of the accounting fees incurred to KPMG). After payment of these fees, the initial Epsolon trades and the Sligo (2000) LLC trades could result in a net pre-tax profit of $747,707.

10) On December 21, 2000, Epsolon sold options #s 1182384 and 1182391 and closed out its short positions in options #s 1182381 and 1182389, recognizing gain and loss as follows:

| Trade | Original Premium <Paid>/Received | Proceeds Actually <Paid>/Received | Gain/<Loss> |
|---|---|---|---|
| Long euro call I (#1182384) | <$56,451,951> | $75,714,627 | $19,262,676 |
| Short euro put I (#1182381) | 57,000,000 | <38,155,202> | 18,844,798 |
| Long euro call II (#1182391) | <21,568,993> | 28,131,028 | 6,562,035 |
| Short euro put II (#1182389) | 21,750,000 | <15,159,054> | 6,590,946 |
| Total: | $729,056 | $50,531,399 | $51,260,455 |

11) On December 21, 2000, Epsolon entered into the following four European-style 18-day options:

| | Premium <Paid>/Received | Potential Proceeds to be <Paid>/Received | Strike Price (DEM/USD) | Spot Price (DEM/USD) ((USD/Euro)) |
|---|---|---|---|---|
| Purchased DEM call I (Option #1184107) | <$75,760,627> | $187,751,702 | 2.1241 | 2.1406 (.9137) |
| Sold DEM put I (Option #1183924) | 38,156,208 | <189,640,141> | 2.1939 | 2.1406 (.9137) |
| Purchased DEM call II (Option #1185263) | <28,157,866> | 71,779,358 | 2.1241 | 2.1424 (.9129) |
| Sold DEM put II (Option #1185254) | 15,159,892 | <72,364,777> | 2.1939 | 2.1424 (.9129) |
| Total: | <$50,602,393> | | | |

12) The DEM/Euro exchange rate was 1.95583 and was expected to remain fixed for the duration of the options.

13) The euro had rallied against the dollar since the date of the initial trades. The acquisition of the new options required Epsolon to pay a net premium of $70,994 plus an additional margin of $9,006.

14) As a result of the trades entered into on December 21, all of the options currently held would have the following economic consequences for Epsolon:

| USD/Euro at Expiration | Net Gain | Net Loss | Probability |
|---|---|---|---|
| Between .8915 and .9207 | $1,051,771 | | 39 % |
| Between .8915 and .9207 | 336,235 | | 40% |
| Below .8915 | | $1,143,038 | 20% |
| Below .8915 | | 391,004 | 21% |
| Above .9207 | | 1,024,040 | 41% |
| Above .9207 | | 318,590 | 39% |

15) In summary, Epsolon increased its potential loss if the euro was below .8915 from $1,454,049 to $1,534,042 (a potential increase of $79,993). The probability that this loss would occur decreased from 30% to 20%. The potential net loss if the euro was in excess of .9207 was decreased from $1,454,050 to $1,342,630, a potential reduction of $111,420. The probability that this loss would occur increased from 30% to 40%. The potential gross payoff in the .8915 to .9207 range decreased from $1,458,999 to $1,388,006. Overall, these trades increased Epsolon's exposure to the risk of a decline in the euro versus the dollar and decreased its exposure to the risk of a subsequent decline in the dollar versus the euro.

16) On December 26, 2000, Tucker assigned his membership interest in Sligo (2000) LLC to Sligo.

17) On December 28, 2000, Epsolon sold option #s 1184107 and 182380 and closed out its short positions in option #s 1183924 and 1182386, recognizing gain and loss as follows:

| Trade | Original Premium <Paid>/Received | Proceeds Actually <Paid>/Received | Gain/<Loss> |
|---|---|---|---|
| Long DEM call I (#1184107) | <$75,760,627> | $124,340,670 | $48,580,043 |
| Short euro call I (#1182386) | 57,000,000 | <125,715,399> | <68,715,399> |
| Long euro put I (#1182380) | <56,451,284> | 4,565,799 | <51,885,485> |
| Short DEM put I (#1183924) | 38,156,208 | <4,619,260> | 33,536,948 |
| Total: | <$37,055,703> | <$1,428,190> | <$38,483,893> |

18) At the time of the trade, the spot rate was .92855 USD/Euro (2.1063 DEM/USD).

19) As the result of the $38,483,893 loss realized on Call Spread I and Put Spread I on December 28 and the $38,107,474 gain previously realized on Call Spread I and Put Spread I on December 21, Epsolon had thus far recognized a net economic loss of $376,419 from these positions.

20) When the remaining positions expired on January 8, 2001, the spot rate of the euro was .9500 and of the DEM was 2.0588; the Euro/DEM exchange rate was unchanged from its position on December 21, 2000.

21) At expiration, Epsolon recognized gain or loss on each of the remaining call positions as follows:

| Trade | Original Premium <Paid>/Received | Proceeds Actually <Paid>/Received | Gain/<Loss> |
|---|---|---|---|
| Long DEM call II (#1185263) | <$28,157,866> | $71,779,358 | $43,621,492 |
| Short euro call II (#1182392) | 21,750,000 | <72,434,183> | <50,684,183> |
| Long euro put II (#1182388) | <21,568,773> | 0 | <21,568,773> |
| Short DEM put II (#1185254) | 15,159,892 | 0 | 15,159,892 |
| Total: | <$12,816,747> | <$654,825> | <$13,471,572> |

22) As the result of the $51,260,455 gain realized on December 21, the $38,483,893 loss on December 28, and the 13,471,572 loss realized on January 8, 2001, Epsolon recognized a net economic loss of $695,010 from all of the above transactions.

GD&C - DA          9/2/2003 4:45    PAGE  3/83    RightFax
SEP. 2.2003  12:13PM   WADDELL&REED FINANCIAL INC. SEC         NO.894   P.2



346 Park Avenue  
New York, NY 10154-0102

Telephone  212 758 9700  
Fax        212 758 9819

To   **Eugene Schorr**  
     **PERSONAL & CONFIDENTIAL FILE**  
     Memorandum For Record Re: Keith Tucker

From

Date  January 18, 2001

Ref   TuckerInnovativeTax.doc

**Innovative Tax Solutions Calendar Year 2000**

The Internal Revenue Service has been aggressively advising the public that "Innovative Tax Shelter Solutions" will be a priority for IRS scrutiny in the year 2001 and forward. The IRS has publicized this via various newspaper articles, announcements such as 2000-44 and various other public dialogues. Accordingly, I believe it prudent to summarize KPMG activity with Mr. Keith Tucker (Chairman, Waddell & Reed) for the year 2000 which resulted in KPMG implementing an "innovative tax solution" at the end of December 2000 for Mr. Tucker.

**Background**

Keith Tucker is a tax and financial planning client of KPMG for calendar year 2000 pursuant to the Waddell & Reed tax and financial planning program. We provide tax preparation services, income and estate planning, etc. In the spring of 2000, I identified Mr. Tucker as a potential client for our innovative tax strategies group. Mr. Tucker anticipated substantial income for the year 2000 resulting from the increasing value of Waddell & Reed shares. Mr. Tucker earned substantial income from the exercise of options in August of 2000.

Accordingly, I asked Mr. Timothy Speiss, the northeast PIC of Innovative Strategies, to meet with Mr. Tucker to discuss certain KPMG strategies to mitigate his year 2000 tax liabilities. Mr. Speiss met with Mr. Tucker to present various KPMG strategies. After various meetings and conference calls, Mr. Speiss and Mr. Tucker agreed that the "short options" strategy would be the appropriate KPMG solution for Mr. Tucker. Mr. Speiss had a final meeting in July with Mr. Tucker and it was agreed that KPMG would issue an engagement letter.

During the first week of August 2000 an engagement letter for the short options solution was issued to Mr. Tucker. Subsequent to issuing the engagement letter, the Internal Revenue Service issued announcement 2000-44. I was on vacation in Europe beginning August 10. During the week of August 14 Tim Speiss advised me in Europe of the following:

- KPMG withdrew the short options solution as a firm strategy.
- KPMG withdrew our engagement letter to Mr. Tucker.
- KPMG did not have any other solutions for Mr. Tucker.
- As a result of the Price Waterhouse/BOSS publicity and IRS announcement 2000-44, KPMG advised Mr. Tucker that we would not be able to implement a strategy for Mr. Tucker in the calendar year 2000.

EXHIBIT 10

EXHIBIT H  
Docket No. 12307-04

KPMG

Mr. Tucker understood our decision. He requested that Mr. Speiss advise him of any other appropriate "non KPMG" strategies in the market place with which we were comfortable. We advised Larry Scheinfeld (former KPMG partner) and principal of Quadra that KPMG was not able to provide a year 2000 innovative tax solution for Mr. Tucker. We asked Larry to let Mr. Tucker know if an appropriate solution was available with Quadra. Mr. Scheinfeld previously presented a solution to Mr. Tucker at the same time we presented the "short options" strategy. Mr. Tucker selected the "short options" strategy over Mr. Scheinfeld's forts transaction.

Quadra Forts Transaction

Larry Scheinfeld presented the forts transaction again to Mr. Tucker in the fall of 2000. Mr. Tucker agreed to proceed with this investment (forts) which offered strong potential for trading profits and also could result in tax benefits. Mr. Scheinfeld requested that KPMG's role be limited to acting as a tax advisor with respect to Mr. Tucker's personal tax situation. Mr. Scheinfeld requested that the details of the forts transaction not be divulged to KPMG. Mr. Speiss acted as an advisor to Mr. Tucker and consulted with Quadra to ensure that the investment was handled appropriately from a tax viewpoint for Mr. Tucker.

On December 11, 2000, Quadra faxed KPMG a document summarizing the steps to implement the forts investment. Mr. Tucker's first stage investment was due on December 18, 2000. On December 12, Larry Scheinfeld called and warned me that the financing for this investment was in jeopardy and the transaction might not close. After receiving this call from Larry Scheinfeld, I advised Tim Speiss of the potential that the forts transaction might not close. I asked Tim to check with the firm's tax leadership and our investment partners (Helios/Diversified, etc.) to determine whether KPMG could provide a tax solution for Mr. Tucker.

On December 14, Larry Scheinfeld advised Mr. Tucker and KPMG that they had to terminate the forts transaction because of the inability to finance the investment.

KPMG Innovative Tax Solution for Mr. Tucker

On or about December 14, 2000, Tim Speiss advised me that he had discussed proposing a tax solution for Mr. Tucker with the tax leadership (Messrs. Jeff Bischied, Larry DeLap, Washington National Tax, Neil Tender, Doug Ammerman, Jeff Rosenthal and Jeff Stein) and they agreed that Tim could develop a "customized solution" for Mr. Tucker. Tim indicated that the firm's policy of not selling tax solutions had not changed. However, the tax leadership of KPMG felt that if he could create with Diversified an economic transaction that was appropriate he could proceed. Tim indicated that the potential for a substantial fee was considered since PFP revenue was substantially lower than the prior year. I personally called Mr. Tendler (northeast PFP PIC) to determine that Tim had the support of tax leadership for this transaction because I did not want to disappoint Mr. Tucker again. Neil advised me that I could depend on Mr. Speiss to complete this transaction and it was approved.

Tim conferred with Diversified and Brown & Wood to develop a "customized solution" for Mr. Tucker. Tim indicated that an appropriate solution was available based on his discussions with Diversified and Brown & Wood. In light of the need to complete the transaction in the last two weeks of calendar year 2000 Tim took the following steps:

TuckerInnovativeTax.doc                                                          2

KPMG

- Tim developed the tax and investment structure with Helios and Brown & Wood.

- Tim obtained KPMG approval for this "customized solution" for Mr. Tucker.

- Tim communicated the transaction to Mr. Tucker.

- Tim orchestrated the transaction including engaging Frank Montgomery to provide the legal services necessary to complete the transaction.

- Tim issued an engagement letter under my signature as engagement partner (I did not sign the letter).

- Tim coordinated the transaction for Mr. Tucker during Christmas week while Mr. Tucker was on vacation.

- Tim reviewed all investment decisions with Diversified.

- Tim arranged for the wire transfer of fees to KPMG.

Representations to Mr. Tucker Regarding Tax Aspects of the KPMG Customized Solution

I participated in telephone calls with Tim and Mr. Tucker regarding the decision for Mr. Tucker to invest in the "customized solution." Keith requested our view of the tax risk of this strategy. Tim responded as follows:

- Mr. Tucker could rely on the more likely than not tax opinion of Brown & Wood.

- Absent any changes in tax law, KPMG would sign his tax returns.

- KPMG (Tim) would issue a separate memo or opinion to enhance Keith's tax position since he believed the customized strategy had strong economics.

- Tim indicated that he believed the worse case scenario was that Mr. Tucker would have to pay the taxes and interest on this transaction if the IRS disallowed it.

- Mr. Tucker indicated that he would not pursue this customized strategy unless we believed that penalties were not an issue. Penalties could be as much as $4,000,000. Tim indicated that in order to ensure that penalties would not be an issue, he suggested that Mr. Tucker invest approximately $5,000,000 in Sligo with Diversified which would, in his opinion, provide the economics to avoid penalty. Keith asked if the $5,000,000 could be invested with Waddell & Reed. Tim initially replied that the investment had to be made with Diversified. Keith agreed to the $5,000,000 investment suggested by Tim so as to avoid the possibility of IRS penalties. Tim advised Keith that this would be a long term investment. Keith agreed to follow KPMG advice to avoid penalties. Ultimately, with Tim's and Diversified's blessing, the investment was made through Sligo for Waddell & Reed to invest in high yield securities in keeping with Sligo's high risk investment strategy. The transaction was implemented and completed by the end of calendar year 2000 resulting in a $38,000,000 tax loss for Mr. Tucker.

TuckerInnovativeTpx.doc

3

KPMG

### Fees

Tim and I discussed the fees for the transaction. If our role was limited to tax advisor, Tim felt we should just charge our time which probably would be $250,000 to $300,000. However, Tim felt that we had actually created and implemented the transaction from beginning to end and should be paid a larger fee similar to that of short options. Accordingly, he billed $500,000.

On Monday, January 15, Neil Tendler called me and asked that the entire $500,000 fee be moved to Tim Speiss since he did all the work and implemented the transaction. I agreed that Tim did all the work in the last two weeks on the "customized solution." However, Bruce and I would need some of the fee for tax preparation and other matters. Additionally, we had worked almost nine months on "short option" and "forts" and thought a part of the fees should be kept in PFP core practice. Neil agreed to move 50% of the fees to Tim as engagement partner and give Tim 50% cross selling so that he would receive 100% of the credit for this "customized solution."

\* \* \* \* \* \* \* \* \* \* \*

The above summarizes the calendar year 2000 "innovative tax strategy" work done with Keith Tucker by KPMG.

TuckerInnovativeTax.doc

4

```
***  TRANSMISSION REPORT  ***

DEC-16-00 18:55   ID:212 872 3310        KPMG NYO   39TH FL

JOB NUMBER                                484
INFORMATION CODE                          OK
TELEPHONE NUMBER          918163616649
NAME(ID NUMBER)           816 361 6649
START TIME                DEC-16-00 18:52
PAGES TRANSMITTED         009           TRANSMISSION MODE    EMMR
RESOLUTION                STD           REDIALING TIMES      00
SECURITY                  OFF           MAILBOX              OFF
MACHINE ENGAGED           02'38

THIS TRANSMISSION IS COMPLETED.
LAST SUCCESSFUL PAGE      009
```

**Private and Confidential**

Transmit by Fax — 9 pages

December 16, 2000

To  :  Keith Tucker
From:  Timothy Speiss

Keith,

As prepared by the Helios and Diversified Group (Helios/Diversified) and as we discussed today, enclosed is the profit and loss summary depicting a net payoff of $827,464 assuming a $50 million notional amount (an actual $60 million notional will be entered into, with approximately $30 million closed in each of 2000 and 2001). The depiction assumes the euro currency trades within .8859 and .9082 in relation to the U.S. dollar between December 18, 2000 and January 8, 2001 (a 30% probability).

Also enclosed is a summary of the KPMG review points we are considering based upon our understanding of the Helios/Diversified investment and after our review of a tax memorandum (prepared by others) discussing the U.S. tax consequences of the transaction. Our comments include points which we would expect to be cited in a tax opinion issued with regard to this transaction. While we have not reviewed a completed tax opinion with regard to this transaction, we have been advised today that a draft Bryan Cave tax opinion would be available on or about December 22, 2000 or the following week. KPMG tax professionals will be reviewing the transaction components, based upon their specific areas of expertise.

Separately I will provide you with a diagram of the transaction and entities, as described to us by Helios/Diversified and as cited in our comments attached.

Please contact me directly at 212-872-7901 with your comments. Otherwise I will speak with you again on December 18.

At this time, the investment entities are scheduled to be formed on December 18, 2000 and your initial investment (approximately 2% of your actual notional amount) scheduled to be transmitted also on December 18. On December 18 Helios/Diversified will communicate to you additional investment steps.

Best Regards,

[signature]

EXHIBIT I
Docket No. 12307-04

EXHIBIT 11

KPMG App. 1144

X 055986

KTTC001310

**Private and Confidential**

**Transmit by Fax – 9 pages**

December 16, 2000

To   :   Keith Tucker
From:   Timothy Speiss

Keith,

As prepared by the Helios and Diversified Group (Helios/Diversified) and as we discussed today, enclosed is the profit and loss summary depicting a net payoff of $ 827,464 assuming a $ 50 million notional amount (an actual $ 60 million notional will be entered into, with approximately $ 30 million closed in each of 2000 and 2001). The depiction assumes the euro currency trades within .8859 and .9082 in relation to the U.S. dollar between December 18, 2000 and January 8, 2001 (a 30% probability).

Also enclosed is a summary of the KPMG review points we are considering based upon our understanding of the Helios/Diversified investment and after our review of a tax memorandum (prepared by others) discussing the U.S. tax consequences of the transaction. Our comments include points which we would expect to be cited in a tax opinion issued with regard to this transaction. While we have not reviewed a completed tax opinion with regard to this transaction, we have been advised today that a draft Bryan Cave tax opinion would be available on or about December 22, 2000 or the following week. KPMG tax professionals will be reviewing the transaction components, based upon their specific areas of expertise.

Separately I will provide you with a diagram of the transaction and entities, as described to us by Helios/Diversified and as cited in our comments attached.

Please contact me directly at 212-872-7901 with your comments. Otherwise I will speak with you again on December 18.

At this time, the investment entities are scheduled to be formed on December 18, 2000 and your initial investment (approximately 2% of your actual notional amount) scheduled to be transmitted also on December 18. On December 18 Helios/Diversified will communicate to you additional investment steps.

Best Regards,

*[signature]*

## 2000 Investment Transaction

### Review Points

1. IRC Sec. 338 election by Sligo (a Texas S corporation formed 12/18/2000 and electing S status on the same date, wholly owned by KT through a single member limited liability corporation (SMLLC) formed 12/18/2000). The election is effective 12/18/2000 in connection with Sligo's acquisition of Epsolon Ltd (an Irish entity C corporation)

2. Additional capital contributions to Sligo by KT and to Epsolon by Sligo (post 12/18/2000)

3. On or about 12/18/2000 Epsolon will enter into approximately 8 option trades (see attached depiction of aggregate trade result forecasts using 12/15/2000 market quotes) The depiction assumes the purchase of long ($ 50 million) and sale of short ($ 49.6 million) digital European customized option puts that expire 1/8/2001. These options are euro-denominated and are not listed on an exchange. The spot is .8964, the forward is .8974, the depo rate is 6.66% and (the) vol is 13.45%. You should review these factors again with the investment advisor. The loss point is .8858 and below (measured at the expiration or earlier if the position is closed) and the probability of loss is 35.06%. The bid-ask is a negative $ 67,402 and the theoretical proceeds are $ 481,584. The theoretical value is 34.93%. The payout amount if the euro trades within the range (a 30% probability) is $ 1,376,931 however you would subtract from this amount your initial deposit of $ 549,466 with a resulting net payoff of $ 827,461. Consider this transaction within the context of investment purpose, likelihood of profit, and related matters

4. Epsolon's sale of options that have increased in value, for example the long option (the gain leg), while retaining the short option (the loss leg). While the gain leg is sold, a new long position will be acquired, potentially based upon a non-euro currency; the expiration and strike price will be the same as the original long position. One half of an ordinary loss position would be realized in each of 2000 and 2001

5. Epsolon will file form 8832 electing (within 75 days of a December, 2000 effective date; see Reg. Sec. 301.7701-3) to be classified as a partnership

6. 2000 short year and 2001 (12 month) tax return filings for Sligo and Epsolon

7. 2000 and 2001 tax accounting and taxable year end considerations for Sligo and Epsolon

8. Formation of Sligo and its capitalization under Sec 351, noting Sec 1371, in combination with its acquisition of Epsolon (Sligo will purchase 98% of Epsolon stock on 12/18/2000)

9. Review Sligo's Form 5471 filing with regard to its investment in Epsolon

10. Epsolon's status as a Controlled Foreign Corporation (CFC, see Secs. 957 and 958) in 2000 and 2001

11. Epsolon's status as a Personal Foreign Investment Company (PFIC) with respect to Sligo in 2000 and 2001

12. Epsolon's status as a partnership for U.S. tax purposes effective December, 2000 with respect to its check the box election to be taxed as a U.S. partnership

13. Review investor's tax basis in Sligo. Consider Ward Financial as a Sligo shareholder and the election to treat Sligo as a qualified S corporation subsidiary of Ward

14. Investor representations to be cited in the tax opinion and the conclusion therein. The tax opinion will be prepared by Bryan Cave or Proskauer or Brown & Wood. The Bryan Cave draft opinion is expected to be available on or about December 22, 2000. KPMG has a tax memorandum as prepared by the investment advisor

15. Investment advisor representations to be cited in the tax opinion prepared by Bryan Cave or Proskauer or Brown & Wood.

16. Investor's tax basis in Sligo

17. Applicability and commentary regarding IRS Notices 99-14, 99-59, 2000-44; *Selena, Helmer, Deputy*; Rev. Ruls. 95-26, 95-45, 88-77, 73-301; definition of a liability for Sec. 752 purposes; related matters

18. SMLLC and partnership classification subject to Reg. Sec. 301-7701-3(b)(1)(i)

19. Sec. 465

20. Sec 469

21. Anti-abuse rules under Reg. Sec. 1.701-2

22. Business purpose and substance over form (see 3.) and step transaction

23. Consider *Scully, ACM Partnership, Schoenberg*. Contrast to *Cottage Savings* (see 17.)

950 Third Avenue, 23rd Floor
New York, NY 10022
Phone: (212) 688-2700
Fax (212) 688-7908

**THE DIVERSIFIED GROUP INCORPORATED**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Keith Tucker – 970 926-7386 | **From:** | James Haber |
| | 913 236-1939 | | |
| | Tim Speiss – 212 872-3318 | | |
| | David Kohn | | |
| **Fax:** | | **Date:** | December 21, 2000 |
| **Phone:** | | **Pages:** | 6 |
| **Re:** | | **CC:** | Max Tan |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

○Comments:

X 041782

KTTC001315

email addresses                                                                  Page 1 of 2

### Speiss, Timothy P

**From:** Speiss, Timothy P
**Sent:** Monday, December 18, 2000 10:02 PM
**To:** 'Mox Tan'; 'Frank Montgomery'; Speiss, Timothy P
**Cc:** '(DGI) Phil Kampf'; '(DGI) Jimmy Haber'
**Subject:** RE: Contact List - Project Epsolon and Haliday - REVISED DRAFT

Gentlemen:

- This was done, sent via email to Mox. We will teleconference at 8:30 am on 12/19. I will initiate the call.

- What form of engagement letter will our clients receive from Diversified wrt services to be rendered - specifically, we would like a tax opinion to be included as a services deliverable.

- Finally, we were able to speak with R.J. Ruble this evening and he answered our questions wrt opinion matters.

Thanks

TPS


-----Original Message-----
**From:** Mox Tan [mailto:moxtan@heliosfinancial.com]
**Sent:** Monday, December 18, 2000 7:28 PM
**To:** Frank Montgomery; (KPMG) Tim Speiss
**Cc:** (DGI) Phil Kampf; (DGI) Jimmy Haber
**Subject:** Fw: Contact List - Project Epsolon and Haliday - REVISED DRAFT

Tim and Frank:

We left Tim a voice mail requesting a time tomorrow morning when we can have an all-hands kick-off conference call first thing in the morning. Please call me on my cell phone at 312-399-3620 tonight with a time that works for you so we can coordinate.

In order to open accounts with Lehman Brothers, please provide us with the addresses of the two S-corps and the three single member LLCs. Also, please provide us with the names of the single member LLCs for each individual.

Mox

**Sligo (2000) Company Inc.** FEIN: 51-0405078 (Tucker 100% owner) - Project Epsolon
Address: Use Tucker's home address?
**NEED NAME OF SINGLE MEMBER LLC**
Address: Use Tucker's home address?
**Keith Tucker** (SS# 4████████)
Home addresss/Residence: ████ Vine Street, Apt 253, Dallas, Texas 75204
Phone: 913-236-1915
Fax: 913-236-1939
**Clare (2000) Company Inc.** FEIN: 51-0405076 (Herrmann 64% and Hechler 36% owner) - Project Haliday

08/20/2001

**EXHIBIT**
12

KPMG App. 1374

X 056216

EXHIBIT J
Docket No. 12307-04

KTTC3217