Jimmy Haber <jhaber@divgroup.com> on 12/20/2000 11:37:38 AM

To: R. J. Ruble/NY/BWLLP@BWLLP
cc:
Subject: [Fwd: DOB, County of Residence, Spouse]

---

---

Received: from p0016c23.us.kpmg.com (p0016c23.us.kpmg.com [199.207.255.23]) by thrush.prod.itd.earthlink.net (8.9.3/8.9.3) with ESMTP id MAA05961 for <jhaber@divgroup.com>; Tue, 19 Dec 2000 12:32:37 -0800 (PST)
Received: from p0016c56 by p0016c23.us.kpmg.com(Pro-8.9.3/Pro-8.9.3) with SMTP id PAA17902 for <jhaber@divgroup.com>; Tue, 19 Dec 2000 15:21:24 -0500 (EST)
Received: from p0016c22.kweb.us.kpmg.com by p0016c56 via smtpd (for [199.207.255.23]) with SMTP; 19 Dec 2000 20:21:24 UT
Received: from usnssexc11.kweb.us.kpmg.com by kpmg.com(Pro-8.9.2/Pro-8.9.2) with ESMTP id PAA17146 for <jhaber@divgroup.com>; Tue, 19 Dec 2000 15:21:24 -0500 (EST)
Received: from usnssexc11.kweb.us.kpmg.com (unverified) by usnssexc11.kweb.us.kpmg.com (Content Technologies SMTPRS 2.0.15) with ESMTP id <B0014452126@usnssexc11.kweb.us.kpmg.com>; Tue, 19 Dec 2000 15:21:16 -0500
Received: by usnssexc11.kweb.us.kpmg.com with Internet Mail Service (5.5.2650.21) id <YRHJATCA>; Tue, 19 Dec 2000 15:21:16 -0500
Message-Id: <2B564966BDE5D011978900805FE64F800BFAF8D5@USMNYEXC01>
From: "Speiss, Timothy P" <tpspeiss@kpmg.com>
To: "Speiss, Timothy P" <tpspeiss@kpmg.com>, "'Mox Tan'" <moxtan@heliosfinancial.com>, "'Frank Montgomery'" <fmontgomery@montlaw.com>, "'Eric Woldenberg'" <ewoldenberg@pryorcashman.com>, "'(DGI) Phil Kampf'" <philkampf@heliosfinancial.com>, "'(DGI) Jimmy Haber'" <jhaber@divgroup.com>
Subject: RE: DOB, County of Residence, Spouse
Date: Tue, 19 Dec 2000 15:21:09 -0500
MIME-Version: 1.0
X-Mailer: Internet Mail Service (5.5.2650.21)
Content-Type: multipart/alternative; boundary="----_=_NextPart_001_01C069F9.3987ACE0"
X-Mozilla-Status2: 00000000

---

Jimmy, please forward these addresses to R.J. Ruble for purposes of the engagement letter:

We want two opinions, one issued contemporaneously with the transaction, and one issued contemporaneously with the filing of the tax return. In addition we woulds like to see intended opinion representations by the client:

[redacted]

Keith Tucker
2816 Vine Street
Apartment 253
Dallas, Texas 75204

Redacted

EXHIBIT
13
PENGAD-Bayonne, N. J.

EXHIBIT K
Docket No. 12307-04

We would also like an opinion from one of the other two law firms you are working with.

Thanks

TPS

-----Original Message-----
From: Speiss, Timothy P
Sent: Tuesday, December 19, 2000 12:37 PM
To: 'Mox Tan'; Frank Montgomery; Eric Woldenberg; Speiss, Timothy P; (DGI) Phil Kampf; (DGI) Jimmy Haber
Subject: DOB, County of Residence, Spouse

Additional Data Required
[redacted]

Keith Tucker
DOB: [redacted]
Spouse [redacted]: Laura
County of Residence: County Dallas, Texas

Redacted

-----Original Message-----
From: Mox Tan [mailto:moxtan@heliosfinancial.com]
Sent: Tuesday, December 19, 2000 9:30 AM
To: Frank Montgomery; Eric Woldenberg; (KPMG) Tim Speiss; (DGI) Phil Kampf; (DGI) Jimmy Haber
Subject: Contact List - Project Epsolon and Redacted REVISED DRAFT

S Corporation - Project Epsolon
Name: Sligo (2000) Company Inc.
FEIN 51-0405078 - fbo Mr. Keith Tucker
Address: Department 502
2644 Capitol Trail, Suite 300
Newark, DE 19711

Keith Tucker (SS#[redacted])
Home addresss/Residence: 2816 Vine Street, Apt 253, Dallas, Texas 75204
Phone: 913-236-1915
Fax: 913-236-1939

Keith Tucker's SMLLC: Sligo (2000) LLC (ID number SS[redacted]) - fbo Mr. Keith Tucker
Department 502
2644 Capitol Trail, Suite 300

BROWN & WOOD LLP

ONE WORLD TRADE CENTER
NEW YORK, NY 10048-0557
TELEPHONE: 212-839-5300
FACSIMILE: 212-839-5599

December 26, 2000

Mr. Keith Tucker
2816 Vine Street
Apartment 253
Dallas, Texas 75204

**Re: Special U.S. Federal Income Tax Counsel**

Dear Mr. Tucker:

You have asked that we act as special U.S. federal income tax counsel to you in connection with certain investment transactions in which you have engaged involving the acquisition of an interest in a foreign corporation through an S corporation and your entering into various digital foreign currency option trades, both in your individual capacity and through the foreign corporation ("Transactions"). In that capacity, you have asked that we provide you with an opinion regarding certain of the U.S. federal income tax consequences of the Transactions (i) in connection with the closing of the Transactions and (ii) in connection with your filling a U.S. federal income tax return reporting the transactions on April 15, 2001. In the case of the latter opinion, we will only be obligated to provide such opinion in the event that there has been no adverse change in the statute, regulations, or administrative or judicial interpretation thereof subsequent to the closing of the Transactions.

You acknowledge that any U.S. federal income tax opinion that we issue in connection with your participation in the Transactions will not guarantee the U.S. federal income tax consequences thereof, but will provide only that such tax consequences are "more likely than not" to occur

We hereby agree to so represent you. We wish to point out that although we are not representing or advising the Diversified Group Incorporated or any of its affiliates ("Diversified") in connection with the Transactions, in the past we have represented or advised Diversified with respect to certain matters and may continue to do so in the future. By your acceptance of this letter you waive any legal conflict that may arise from such current, past or future representations.

EXHIBIT
14

KTTC2755

~~EXHIBIT~~ L
~~Docket No. 12307-04~~

By your acceptance of this letter you agree that any controversy or claim arising out of or relating to this letter, and the matters addressed herein, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Rules and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration proceeding shall be conducted in New York City, New York. The arbitrator shall have the authority to award any remedy or relief that a court of competent jurisdiction could order or grant. Except as necessary in court proceedings to enforce this arbitration provision or an award rendered hereunder, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. The parties acknowledge that this letter evidences a transaction involving interstate commerce. The parties agree that United States Federal Arbitration Act shall govern the interpretation and enforcement of this arbitration provision.

Please return an acknowledged copy of this letter as evidence of your acceptance of the terms hereof.

Very truly yours,

Brown & Wood LLP

Acknowledged

Keith H. Tucker

R. J. Ruble
12/27/2000 12:43 PM

To: Susan L Sodano/NY/BWLLP@BWLLP
cc:
Subject: Redacted

---------------------- Forwarded by R. J. Ruble/NY/BWLLP on 12/27/2000 12:44 PM ---------------------------

Jimmy Haber <jhaber@divgroup.com> on 12/27/2000 11:56:06 AM

To: R. J. Ruble/NY/BWLLP@BWLLP
cc:
Subject: Redacted

---

I am in receipt of the Keith Tucker an[redacted]letters. Thank you. I will need another one for Dale Ba[redacted]. Can you please address it as follows:

Redacted

Denise

EXHIBIT
15

PENGAD-Bayonne, N. J.

EXHIBIT M
Docket No. 12307-04

## Unknown

**From:** Jimmy Haber [jhaber@divgroup.com]
**Sent:** Friday, January 26, 2001 11:46 AM
**To:** R. J. Ruble
**Subject:** Re: [redacted]and edacte Diversified Opinions

[redacted] & Tucker Opinions

These opinions will be two opinions. One is increase in outside basis by virtue of a 351 contribution of two options into an S Corp. and the second, a loss generated by the CFC strategy. You do not have any information on these opinions as of yet. Orrin just finished a form opinion for the CFC part with the help of Bryan Cave. I am reviewing the opinion and putting together the closing documents to send to you in the next day or two.

"R. J. Ruble" wrote:

> I just got a call from Tim Spiess of KPMG asking how these two opinions
> were progressing. I don't remeber them. Are they done? They did not appear to
> be in my files of not plain vanila deals. Could you let me know? Thanks.
> ___
>
> This information may contain confidential and/or privileged material
> and is only transmitted for the intended recipient. Any review,
> retransmission, conversion to hard copy, copying, reproduction,
> circulation, publication, dissemination or other use of, or taking of
> any action, or omission to take action, in reliance upon this
> information by persons or entities other than the intended recipient is
> prohibited. If you have received this message in error, please contact
> the sender and delete the material from any computer, disk drive,
> diskette, or other storage device or media. A list of partners at each
> office can be provided on request.

att1.htm (1 KB)

- att1.htm

PENGAD-Bayonne, N. J.
EXHIBIT
16

~~EXHIBIT N~~
~~Docket No. 12307-04~~

950 Third Avenue, 23rd Floor
New York, NY 10022
Phone: (212) 688-2700
Fax: (212) 688-7908

**THE DIVERSIFIED GROUP INCORPORATED**

# MEMORANDUM

**TO:** R.J. Ruble

**FROM:** Orrin Tilevitz, Esq.

**DATE:** January 30, 2001

**SUBJECT:** CFC Technique

Jimmy asked me to send you this note. You will need to write opinions to Sligo (2000) Company Inc., [redacted]. and Redacted Each is an S corporation that acquired a series of options through a CFC. The CFC's trading activities resulted in gain recognized at the CFC level (but not passed through to the S corporation) and loss recognized at the S corporation level. Also, the shareholder of each corporation separately acquired an option spread through a single-member LLC and contributed the LLC interest to the S corporation in a section 351 transaction with the tax goal of increasing outside basis sufficiently that the shareholder could deduct the S corporation's loss. Each shareholder will also need a opinion on this issue (separate from the one issued to the S corporation). Jimmy will be sending you, under separate cover, detailed descriptions of these transactions.

Attached to assist you in preparing the S corporation opinion is a form legal opinion, prepared by a lawyer at Bryan Cave LLP and substantially edited and supplemented (*e.g.*, the Bryan Cave draft did not include the tax shelter, step transaction and penalty discussions) by yours truly. The tax discussion was designed to be self-contained; *i.e.*, it does not refer back to particular facts in the fact section. To the extent you choose to use the form, be forewarned that the separate conclusions within the tax discussion do not consistently reflect a "more likely than not" standard.

The page references within the opinion were "bookmarked" by Bryan Cave and can be updated automatically by hitting "F9".

As always, I am happy to assist you or your staff with any substantive or technical questions.

PENGAD-Bayonne, N. J.
EXHIBIT
17

~~EXHIBIT O~~
~~Docket No. 12307-04~~

**Unknown**

**From:** Mox Tan [moxtan@heliosfinancial.com]
**Sent:** Wednesday, March 14, 2001 2:43 PM
**To:** R. J. Ruble
**Cc:** \(DGI\) Jimmy Haber
**Subject:** Basis rep letters

RJ,

I have attached a draft of rep letters for the basis step up opinions for [redacted], Tucker an Redacted Please review, and if they are OK, I will forward them to the clients for signature.

Thanks,

Mox

Mox Tan
225 West Washington Street, Suite 2200
Chicago, Illinois 60606
Office: (312) 419-6150
Fax: (312) 419-6153
Mobile: (312) 399-3620

att1.htm (1 KB)

- att1.htm

[redacted] ...

[redacted]c

Tucker 03.14.01 Basis Rep Lett...

- Tucker 03.14.01 Basis Rep Letter.doc

Redacted

EXHIBIT 18
PENGAD-Bayonne, N. J.

EXHIBIT P
Docket No. 12307-04



KTTC3168

**Unknown**

**From:** R. J. Ruble
**Sent:** Friday, March 16, 2001 12:41 PM
**To:** James Haber
**Subject:** Re: [redacted] Tucker Redacted

The rep lettere should just repeat the reps in the opinions. Susan set it up originally of the wrong model, so there are a couple of reps that need to be added. I can live with a separate letter if that is less painful to the clients. I will try to call you when I"m free, but today is management-committee-meetings-on-the-merger day and I'm not sure when I'll be free.

PENGAD-Bayonne, N. J.
EXHIBIT
19

EXHIBIT R
Docket No. 12307-04



KTTC2780

## Unknown

**From:** James Haber [jhaber@divgroup.com]
**Sent:** Friday, March 16, 2001 12:37 PM
**To:** R. J. Ruble
**Subject:** [redacted] Tucker Redacted

Please let me know if the Rep. letters are okay for [redacted] Tucker and Redacted so that I may get them signed prior to sending them an opinion. Please call me when you get an opportunity to talk. I have a few things I'd like to discuss with you.

EXHIBIT
20

PENGAD-Bayonne, N. J.

EXHIBIT Q
Docket No. 12307-04

MAR-23-2001 13:41 DIVERSIFIED GROUP 12127523972 P.01

950 Third Avenue, 23rd Floor
New York, NY 10022
Phone: (212) 688-2700
Fax: (212) 688-7908

THE DIVERSIFIED GROUP INCORPORATED

# Fax

| | | | |
|---|---|---|---|
| **To:** | Susan Sodano / RJ Ruble, Esq. Brown & Wood | **From:** | James Haber |
| **Fax:** | | **Date:** | March 23, 2001 |
| **Phone:** | | **Pages:** | 4 |
| **Re:** | | **CC:** | |

☐ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

**Comments:**

Per our conversation, can you please substitute #14 of the attached revised Rep. letter into the opinion.

Thanks.
Denise

EXHIBIT 21
PENGAD-Bayonne, N. J.

~~EXHIBIT S~~
~~Docket No. 12307-04~~

4. Based on the advice of Alpha, and upon Investor's own independent evaluation, Investor had an opportunity to make an aggregate gross return in excess of the sum of Investor's net investment in the Options and the portion of any advisory fee paid by Investor attributable to the Transactions ("Advisory Fee").

5. Investor contributed the membership interest in SMLLC to Corp to increase Corp's capital.

6. SMLLC has not elected under Treas. Reg. §301.7701-3 to be classified as a corporation.

7. Investor has not hedged Investor's risks with respect to the Options with Bank.

8. Investor has not identified, and will not identify, any of the Options as being part of a hedging transaction under Treas. Reg.§1.446-4.

9. Investor, SMLLC, and Corp each uses the U.S. dollar as such person's functional currency.

10. There existed no understanding, agreement, obligation, or arrangement pursuant to which any of the parties described herein committed to undertake all or any of the transactions described herein upon the happening of any other transaction, except to the extent that Investor/SMLLC (and Corp as transferee of Investor) and Bank were contractually obligated to perform under the Options in accordance with their stated terms.

11. Investor has not entered into a confidentiality agreement or otherwise agreed (orally or in writing) to any obligations of confidentiality with respect to the Transactions.

12. Investor is an individual whose "tax home" as defined in Section 911(d)(3) of the Internal Revenue Code of 1986, as amended ("Code"), is the United States.

13. Investor owns 100% of the issued and outstanding stock of Corp.

14. Corp was formed for the principal purpose of investing in foreign currency, either directly or through derivatives, such as the Options; Corp will in fact engage in such transactions; and Investor does not intend to cease engaging in such transactions through Corp for the foreseeable future (i.e., at least 12 months).

15. Investor actively participates in the management of Corp's activities.

Keith Tucker
C/o Waddell & Reed Financial, Inc.
6300 Lamar Avenue
Shawnee Mission, KS 66202

Brown & Wood, LLP
1 World Trade Center
New York, NY 10048
Attention: R.J. Ruble, Esq.

Ladies and Gentlemen:

The undersigned ("Investor") hereby makes the following representations as of December 31, 2000, upon which you may rely in connection with your issuance of a U.S. federal income tax opinion ("Opinion") regarding certain transactions ("Transactions") in which the undersigned has participated that involve the acquisition, through a single member domestic limited liability company ("SMLLC"), of certain options ("Options") with respect to which the counterparty was an unrelated financial institution ("Bank") and the contribution of Investor's interest in SMLLC to a domestic corporation ("Corp"):

1. Investor entered into the Options for substantial non-tax business reasons, including to produce an overall economic profit from the movement of the foreign currencies referenced by the Options.

2. Based upon Investor's own independent evaluation and upon advice of Alpha Consultants, Inc. ("Alpha"), Investor believed that by entering into the Options, Investor could significantly leverage Investor's investment in such foreign currency.

3. Based upon advice of Alpha as to the probability of the foreign currency reaching certain levels at which the Options would be profitable, and upon Investor's own independent evaluation, Investor believed that Investor had a reasonable opportunity to earn a reasonable profit, in excess of all fees and transaction costs, from the Transactions, without regard to tax benefits.

4. Based on the advice of Alpha, and upon Investor's own independent evaluation, Investor had an opportunity to make an aggregate gross return in excess of the sum of Investor's net investment in the Options and the portion of any advisory fee paid by Investor attributable to the Transactions ("Advisory Fee").

5. Investor contributed the membership interest in SMLLC to Corp to increase Corp's capital.

6. SMLLC has not elected under Treas. Reg. §301.7701-3 to be classified as a corporation.

7. Investor has not hedged Investor's risks with respect to the Options with Bank.

8. Investor has not identified, and will not identify, any of the Options as being part of a hedging transaction under Treas. Reg.§1.446-4.

9. Investor, SMLLC, and Corp each uses the U.S. dollar as such person's functional currency.

10. There existed no understanding, agreement, obligation, or arrangement pursuant to which any of the parties described herein committed to undertake all or any of the transactions described herein upon the happening of any other transaction, except to the extent that Investor/SMLLC (and Corp as transferee of Investor) and Bank were contractually obligated to perform under the Options in accordance with their stated terms.

11. Investor has not entered into a confidentiality agreement or otherwise agreed (orally or in writing) to any obligations of confidentiality with respect to the Transactions.

12. Investor is an individual whose "tax home" as defined in Section 911(d)(3) of the Internal Revenue Code of 1986, as amended ("Code"), is the United States.

13. Investor owns 100% of the issued and outstanding stock of Corp.

14. Corp was formed for the principal purpose of investing in investments including fixed income and foreign currency, either directly or through derivatives, such as the Options; Corp will in fact engage in such transactions; and Investor does not intend to cease engaging in such transactions through Corp for the foreseeable future (i.e. at least 12 months).

15. Investor actively participates in the management of Corp's activities.

16. At the time of the contribution of the Options to Corp, the Options were not subject to any liabilities, and Corp assumed no liabilities and distributed or paid no money or other property to Investor in connection with such contribution.

17. Corp has elected to be treated as an S corporation for U.S. federal income tax purposes.

18. Investor has reviewed the description of the Transactions as set forth in the Opinion and such description is accurate and complete, and there are no pertinent facts relating to the Transactions that have not been set forth in such description.

Very truly yours,

Keith Tucker

## Unknown

**From:** James Haber [jhaber@divgroup.com]
**Sent:** Tuesday, April 10, 2001 4:28 PM
**To:** R. J. Ruble
**Subject:** Items to be discussed

---

1. Charlie Bee email.
2. Timing of the completion of the following tax opinions:
   1. Tucker
   2. [redacted]
   3.
   4.
   5. Redacted
   6.
   7.
   8.

PENGAD-Bayonne, N. J.
EXHIBIT
22

EXHIBIT T
Docket No. 12307-04

950 Third Avenue, 23rd Floor
New York, NY 10022
Phone: (212) 688-2700
Fax: (212) 688-7908

THE DIVERSIFIED GROUP INCORPORATED

# Fax

To: Susan Sodano
R.J Nugle, Esq.

From: James Haber

Fax:

Date: 4/18/01

Phone:

Pages: 6 5

Re:

CC:

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

Comments:

EXHIBIT
23

PENGAD-Bayonne, N. J.

EXHIBIT U
Docket No. 12307-04

4/18/01

SLIGO (2000) Company, Inc.

December 31, 2000

Mr. Keith Tucker
c/o Waddell & Reed Financial, Inc.
6300 Lamar Avenue
Shawanee Mission, KS 66202

Re: **Investment in Foreign Entity**

Dear Mr. Tucker:

You ("Shareholder") have requested our opinion regarding certain United States federal income tax consequences of investing in a foreign entity that acquires an option spread and other investment assets as described more fully below ("Transactions").

## I. Summary of the Transactions

### A. Description of the Parties

Redacted ("Investor") is a domestic corporation all of the stock of which is owned by Shareholder. Investor has elected to be treated as an S corporation for U.S. federal income tax purposes. The taxable year of Investor and the Shareholder is the calendar year.

Cumberdale Investments Limited ("Cumberdale") is an Irish entity wholly owned by Irish individual investors who are wholly unrelated to Investor.

Epsolon Redacted Limited ("Investment Entity") is an Irish entity wholly owned by Cumberdale. Cumberdale acquired 100% of the stock of Investment Entity on ~~December 18~~ November 6, 2000.

### B. Description of Options

Redacted activities consist largely of investments in European-style digital options on foreign currency. An option is a "European-style" option as opposed to an "American-style"

Investment Entity

model, the probability depends on the particular foreign currency underlying the option, the term of the option and the strike price. The probability of a profit is roughly inverse to the magnitude of that profit, which is itself also a function of the bid-asked spread.

## C. Summary of Options Trades

These options trades can be summarized as follows:

i. The Investment Entity entered into a series of Long and related Short Options (the "Original Options"). Specifically, Investment Entity entered into two pairs of over-the counter, non-publicly traded foreign currency option transactions with an independent financial institution ("Bank"). The first was the purchase of a European-style cash-settled digital call option having a 19 day term, reference number 1182485, for a premium of $66,847,720, and the sale of a European-style cash-settled digital call option, having a 19 day term, reference number 1182486, for a premium of $67,500,000. The second was the purchase of a European-style cash-settled digital put option having a 19 day term, reference number 1182482, for a premium of $66,848,446, and the sale of a European-style cash-settled digital put option, having a 19 day term, reference number 1182483, for a premium of $67,500,000.

ii. The Investment Entity disposed of or closed out certain of these Options, including Long Option (reference number 1182485) and one Short Option (reference number 1182483), which had appreciated in value, and retained the other Options (the "Remaining Options").

iii. The Investment Entity acquired new Options, one Long Option, the purchase of European-style cash-settled digital put option having an 18 day term, reference number 1184840) and one Short Option, the sale of a European-style cash-settled digital put option having an 18 day term, reference number 1184833) (the "Replacement Options"), to balance the Remaining Options.

iv. The Remaining Options and Replacement Options (collectively, the "Other Legs") were sold or closed out.

(...continued)

a standard technique for pricing interest rate cap agreements."

NYLIB1/813598/1

Insert

model, the probability depends on the particular foreign currency underlying the option, the term of the option and the strike price. The probability of a profit is roughly inverse to the magnitude of that profit, which is itself also a function of the bid-asked spread.

C. **Summary of Options Trades**

These options trades can be summarized as follows:

i. The Investment Entity entered into a series of Long and related Short Options (the "Original Options"). Specifically, Investment Entity entered into two pairs of over-the counter, non-publicly traded foreign currency option transactions with an independent financial institution ("Bank"). The ~~first~~ third was the purchase of a European-style cash-settled digital call option having a 19 day term, reference number ~~1182485~~ 1182391, for a premium of ~~$66,847,720~~ $21,564,9[illegible], and the sale of a European-style cash-settled digital call option, having a 19 day term, reference number ~~1182486~~ 1182392, for a premium of ~~$67,500,000~~ $21,750,000. The ~~second~~ fourth was the purchase of a European-style cash-settled digital put option having a 19 day term, reference number ~~1182482~~ 1182388, for a premium of ~~$66,848,446~~ $21,564,773, and the sale of a European-style cash-settled digital put option, having a 19 day term, reference number ~~1182483~~ 1182389, for a premium of ~~$67,500,000~~. 21,750,000

ii. The Investment Entity disposed of or closed out certain of these Options, including Long Option (reference number 1182485) and one Short Option (reference number 1182483), which had appreciated in value, and retained the other Options (the "Remaining Options").

iii. The Investment Entity acquired new Options, one Long Option (the purchase of a European-style cash-settled digital put option having an 18 day term, reference number 1184840) and one Short Option (the sale of a European-style cash-settled digital put option, having an 18 day term, reference number 1184833) (the "Replacement Options"), to balance the Remaining Options.

iv. The Remaining Options and Replacement Options (collectively, the "Other Legs") were sold or closed out.

(...continued)

a standard technique for pricing interest rate cap agreements."

TOTAL P.05

BROWN & WOOD LLP

Mr. Keith Tucker
December 31, 20000
Page 4

D. Acquisition of Investment Entity

On December ~~20~~ 18, 2000, Investor purchased 99% of the stock of Investment Entity from Cumberland for $10,000, an amount that we have been advised equaled the fair market value of such stock.

On ~~March~~ 9, 2001, Investment Entity filed U.S. federal income tax Form 8832, electing to have Investment Entity treated as a partnership for U.S. federal income tax purposes, as of December 2~~1~~, 2000. (6)

In connection with the Transactions, Investor paid an investment advisory fee of ~~$900,000~~. $1,020,000

II. Representations

A. Shareholder and Investor Representations

For purpose of rendering our opinion, Shareholders and Investor have represented as follows:

1. Before entering into the transaction, Shareholders obtained independent financial, investment and other advice in undertaking a thorough objective and subjective analysis of factors relevant to determining the suitability of an investment in the Options and concluded that the investment was suitable as a business matter.

2. Based upon Shareholder's own independent evaluation, Shareholders believed that Investor had a reasonable opportunity to earn a reasonable profit, in excess of all fees and transaction costs, from the Transactions, without regard to tax benefits.

3. Shareholders and Investor each uses the U.S. dollar as such person's functional currency.

4. The "tax home" as defined in Section 911(d)(3) of the Internal Revenue Code of 1986, as amended ("Code"), of Shareholders is the United States.

5. Shareholder owns 100% of the issued and outstanding stock of Investor.

6. Each Shareholder actively participates in the management of Investor's activities.

NYLIB1/813598/1

SIDLEY AUSTIN BROWN & WOOD LLP

CHICAGO
DALLAS
LOS ANGELES
SAN FRANCISCO
SEATTLE
WASHINGTON, D.C.

ONE WORLD TRADE CENTER
NEW YORK, NEW YORK 10048-0557
TELEPHONE 212 839 5300
FACSIMILE 212 839 5599
www.sidley.com

FOUNDED 1866

BEIJING
HONG KONG
LONDON
SHANGHAI
SINGAPORE
TOKYO

June 28, 2001

Mr. Keith Tucker
c/o Waddell & Reed Financial, Inc.
6300 Lamar Avenue
Shawanee Mission, KS 66202

Re: **Investment in Foreign Entity**

Dear Mr. Tucker:

Brown & Wood LLP previously issued to you a more-likely-than-not opinion, dated December 31, 2000, ("Letter") regarding certain United States federal income tax consequences of investing in a foreign entity that acquires an option spread and other investment assets as described more fully therein ("Transactions").

We are unaware of any change in law, or interpretation thereof, that would adversely affect the United States federal income tax treatment of the Transactions, since the date of the Letter and through March 26, 2001 (the date you filed your 2000 tax year individual income tax returns).

Very truly yours,

R.J. Ruble

EXHIBIT 24

PENGAD-Bayonne, N. J.

~~EXHIBIT W~~
~~Docket No. 12307-04~~

KTTC2759

# COPY OF TRANSCRIPT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

- - - - - - - - - - - - - - - - - - - - - - x

SHASTA STRATEGIC INVESTMENT FUND, LLC, and PRESIDIO GROWTH LLC (Tax Matters Partner),

Petitioners

- against -

UNITED STATES OF AMERICA,

Respondent

- - - - - - - - - - - - - - - - - - - - - - - x

86 Chambers Street
New York, New York

August 2, 2005
12:22 p.m.

**DEPOSITION** of **R.J. RUBLE**, a Non-Party Witness, in the above-entitled action, held at the above time and place, pursuant to subpoena, taken before Holly Johnson, a shorthand reporter and Notary Public within and for the State of New York.

EXHIBIT
25

PENGAD-Bayonne, N. J.

LEX REPORTING SERVICE, INC.
Professional Reporting Since 1980
throughout New York and New Jersey • Toll Free 800-608-6085

EXHIBIT X
Docket No. 12307-04

A p p e a r a n c e s:

LATHAM & WATKINS, ESQS.
Attorneys for Petitioners
505 Montgomery Street - Suite 2000
San Francisco, California 94111
BY: JUSTIN RHOADES, ESQ.,
via telephone

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for Respondent
Tax Division
Judiciary Center Building
555 4th Street NW, Room 8921
Washington, DC 20001
BY: STUART D. GIBSON, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for Respondent
Tax Division
Judiciary Center Building
555 4th Street NW, Room 8921
Washington, DC 20001
BY: JENNIFER K. BROWN

HOFFINGER STERN & ROSS, LLP
Attorneys for R.J. Ruble
150 East 58th Street
New York, New York 10155
BY: JACK S. HOFFINGER, ESQ.

(Appearances continues)

FRANKEL & ABRAMS, ESQS.
Co-Counsel for R.J. Ruble
230 Park Avenue
New York, New York 10169
BY: STUART ABRAMS, ESQ.

ALSO PRESENT:

THOMAS PICOZZI, Videographer

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing, sealing and certification be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

MR. GIBSON: Please mark this as Deposition Exhibit 1 and this as Deposition Exhibit 2.

(Notice of deposition of R.J. Ruble and Subpoena of R.J. Ruble were respectively marked as Deposition Exhibits 1 and 2, for identification, as of this date.)

THE VIDEOGRAPHER: Good afternoon. My name is Thomas Picozzi. I'm a videographer employed by Lex Reporting Service, 160 Broadway, 14th Floor, New York, New York 10038. Today is Tuesday, August 2, 2005. The time is now 12:22 p.m.. The name of the action is Shasta Strategic Investment Fund, LLC and Presidio Growth LLC versus the United States of America.

This is the deposition of R.J. Ruble. It's being held at the offices of the U.S. Attorney's

Office, 86 Chambers Street, New York, New York.

This videotaped deposition is being recorded on DV at the normal speed.

Would each of the attorneys please state your names?

MS. BROWN: Jennifer Brown for the United States.

MR. GIBSON: Stuart Gibson for the United States.

MR. HOFFINGER: Jack Hoffinger for Mr. Ruble.

MR. ABRAMS: Stuart Abrams for Mr. Ruble.

MR. RHOADES: This is Justin Rhoades for Petitioner, Presidio Growth.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness.

R. J. R U B L E, the witness herein, having
first been duly sworn by a Notary
Public of the State of New York, was
examined and testified as follows:
EXAMINATION BY
MR. GIBSON:
Q State your name for the record, please.
A R.J. Ruble.
Q State your address for the record, please.
A 65 Duck Pond Road, Glen Cove, New York 11542.
MR. RHOADES: Can you guys move the speaker a little closer to the witness? It was sort of hard to hear that.
MR. GIBSON: Mr. Hoffinger, I believe that you had a statement that you wanted to make at the beginning.
MR. HOFFINGER: Yes. On July 13th I sent a letter to Ms. Brown confirming our recent

conversations in which I advised her that Mr. Ruble would be asserting his constitutional rights, including the 5th Amendment not to testify, and that's what he'll be doing here today.

MR. GIBSON: Okay. Thank you.

Q Mr. Ruble, I'm going to show you what we've marked for -- marked as Exhibit 1. The court reporter has marked this.

I ask you if you have seen that document before?

A I've been instructed by my counsel to assert my constitutional rights, including the 5th amendment, not to testify.

Q You're not going to answer as to whether you have seen the notice of deposition by which you're appearing here today?

A Same answer.

Q I'm going to show you what we've marked as Deposition Exhibit 2, which is a copy of the subpoena that Mr. Hoffinger

accepted service of on your behalf for you to appear today.

MR. HOFFINGER: We'll concede for the record that I received the subpoena and that he's appearing pursuant to subpoena.

MR. GIBSON: Okay.

Q Do you recognize that document, Mr. Ruble?

A Same answer.

Q Have you brought with you any of the documents that have -- that are called for production in the attachment to the subpoena?

A Same answer.

Q Okay. What is your occupation, Mr. Ruble?

A Same answer.

Q Are you -- have you attended college?

A Same answer.

Q Have you attended law school?

A Same answer.

Q Are you admitted to practice law in any state in the United States?

A Same answer.

Q Are you admitted to practice law in any Federal court in the United States?

A Same answer.

Q Please tell me about your -- your -- when did you first -- were you ever employed by the Law Firm of Brown and Wood?

A Same answer.

Q Were you ever employed by the Law Firm Sidley Austin Brown and Wood?

A Same answer.

Q Have you ever been fired from any job?

A Same answer.

Q Have you ever resigned from a job in anticipation of being fired or terminated?

A Same answer.

Q Are you currently employed by Sidley Austin Brown and Wood?

A Same answer.

Q Where are you currently employed?

A Same answer.

Q Have you ever had your license to practice law revoked?

A Same answer.

Q Have you ever been disciplined by a state licensing authority?

A Same answer.

Q Have there been any complaints filed against you before any state law licensing authority?

A Same answer.

Q Are there any disciplinary charges pending against you at this time before any state law licensing authority?

A Same answer.

Q Have you ever been sued?

A Same answer.

Q Have you ever been sued by any individual who purchased or was -- or participated in a BLIPS transaction?

A Same answer.

Q Has judgment been entered against you in any action in which you have been sued?

A Same answer.

Q Has judgment been entered in your favor in any action in which you have been sued?

A Same answer.

Q Have you ever been sued by a former client who was not involved with the BLIPS transactions?

A Same answer.

Q Have you ever had your deposition taken before?

A Same answer.

Q What did you do to prepare for this deposition today?

A Same answer.

Q Have you reviewed any documents to prepare for your deposition today?

A Same answer.

Q Have you spoken with anybody outside Mr. Hoffinger and Mr. Abrams in preparation for your deposition today?

A Same answer.

Q Have you reviewed any documents for the purpose of refreshing your recollection in order to testify here today?

A Same answer.

Q Have you given any written statement to anyone regarding the BLIPS

transactions?

A Same answer.

Q Have you given any oral testimony or oral statement to anyone regarding the BLIPS transactions?

A Same answer.

Q Have you made a statement on videotape with respect to the BLIPS transactions?

A Same answer.

Q Have you made a -- any recorded audio statements with respect to the BLIPS transactions?

A Same answer.

MR. GIBSON: Let's mark this Exhibit 3.

(Letter dated December 31, 2000 to Trinity Ventures, LLC on Brown and Wood, LLP letterhead was marked as Deposition Exhibit 3, for identification, as of this date.)

Q As soon as we get copies for the

witness's lawyers, I will be handing you, Mr. Ruble, a copy of what we have marked as Deposition Exhibit 3. This is a --

MR. GIBSON: For the record Exhibit 3 --

Q And I'll give you your own copy, Mr. Ruble.

A Thank you.

MR. GIBSON: Deposition Exhibit 3 is a letter dated December 31, 2000 to Trinity Ventures, LLC on Brown and Wood, LLP letterhead which is attached as an exhibit to the petition for readjustment of final partnership administrative adjustments in the Olympus Strategic Investment Fund case which is one of the six consolidated cases here.

Q Mr. Ruble, have you ever seen this document before?

A Same answer.

Q Did you have any role in drafting this document?

A Same answer.
Q Do you know who drafted this document?
A Same answer.
Q If you look, Mr. Ruble, on the bottom of the second page, you'll see a little, it looks, like a little document control type of a number on the bottom. It says NYLIB1-809888-1.
Are you familiar with the document numbering system at Brown and Wood in December of 2000?
A Same answer.
Q What kind of word processing system was in use at Brown and Wood during December of 2000?
A Same answer.
Q Do you know who at Brown and Wood was actually responsible for typing up each of the -- this opinion letter in Olympus?
A Same answer.
Q Was there a form or a prototype opinion letter drafted before this particular document, Exhibit 3, was prepared?

A Same answer.
Q Do you know what the purpose of this Exhibit 3 was, the purpose of the letter?
A Same answer.
Q Did you collaborate with anyone else at Brown and Wood on this letter?
A Same answer.
Q Did you collaborate with anyone at KPMG about this letter?
A Same answer.
Q Did you collaborate with anyone at Presidio about this letter?
A Same answer.
Q Were -- was there a template into which specific information about the particular client was pasted into to create this letter?
A Same answer.
Q Do you know who actually did put the client's specific information into this letter?
A Same answer.
Q How did you learn of individual clients who were seeking opinion letters about

the BLIPS transactions?

A Same answer.

MR. GIBSON: Let's mark this Exhibit 4.

(Letter on Brown and Wood letterhead dated December 31, 1999 addressed to Hoko Ventures, LLC was marked as Deposition Exhibit 4, for identification, as of this date.)

Q I'm going to hand you what we've marked for identification as Exhibit 4.

MR. GIBSON: For the record this is a document -- this is a letter on the Brown and Wood letterhead dated December 31, 1999, addressed to Hoko Ventures, LLC. This was attached as an exhibit to the petition that was filed on behalf of the Princeton Strategic Investment Fund, which is one of the six consolidated cases in which we're taking this