No. 05-999 T
(Judge Margaret Sweeney)

---

# *IN THE UNITED STATES COURT OF FEDERAL CLAIMS*

EPSOLON LIMITED, BY AND THROUGH
SLIGO (2000) COMPANY, INC.,
TAX MATTERS PARTNER,

Plaintiff

v.

THE UNITED STATES,

Defendant

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANT'S MOTION TO STAY PROCEEDING

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

**Page**

## TABLE OF CONTENTS

Defendant's Reply Motion to Plaintiff's Response and Objection To Defendant's Motion to Stay Proceedings . . . . . 1

Introduction . . . . . 2

Discussion:

I. The Issues in the Case Are Related and Are Substantially Similar to Those in the Criminal Case . . . . . 3

II. The Potential Hardship Is Real . . . . . 7

III. Plaintiff Will Not Be Harmed by a Stay . . . . . 12

IV. The Duration of the Requested Stay is Reasonable . . . . . 13

V. The Potential for Summary Judgment.

Conclusion . . . . . 14

| Exhibit | Description |
|---|---|
| 1. | Order of the United States District Court for the Northern District of Texas (Dallas Div), *John Doe 1 & Johne Doe 2 v. KPMG, L.L.P.* 398 F.3d 686 (5th Cir. 2005). |
| 2. | Memorandum Opinion of the United States District Court for the Southern District of New York, *United States v. Jeffrey Stein, et al.*, S05 Crim. 888 (LAK) (SDNY). |
| 3. | Order of the United States District Court for the Southern District of New York, *United States v. Jeffrey Stein, et al.*, S05 Crim. 888 (LAK) (SDNY). |

**Page**

## TABLE OF AUTHORITIES

**Cases:**

*Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . 10

*Ampetrol v. United States*, 30 Fed. Cl. 320 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*C3, Inc. v. United States*, 5 Cl. Ct. 6591 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*John Doe 1 and John Doe 2 v. United States*, 398 F.3d 686 (5th Cir. 2005) . . . 3, 8, 9, 12

*AD Global v. United States*, Fed. Cir. No. 06-5046 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978) . . . . . . . . . . . . . . . . . . . . 10

*Penden v. United States*, 512 F.2d 1099 (Ct. Cl. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513 (1991) . . . . . . . . . 2, 3, 7

*Keith A. and Laura B. Tucker v. Commissioner*, Docket No. 12307-04 . . . . . . . . . . . . . 10

*United States v. Stein, et al.*, S05 Crim. 888 (LAK) (SDNY) . . . . . . . . . . . . . . . . . . . . 1, 6

**Miscellaneous:**

Federal Rule of Criminal Procedure Rule 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Williams)

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE AND OBJECTION
TO DEFENDANT'S MOTION TO STAY PROCEEDINGS

Defendant has moved this Court to stay proceedings on the grounds that moving forward with this case will interfere with the pending and related criminal proceeding taking place in the Southern District of New York, *United States v. Stein, et al.*, S05 Crim. 888 (LAK) (SDNY). As presented in the Brief in Support of Defendant's Motion (hereinafter, "defendant's Brief"), the Declaration of David House, and the attachments thereto,[1] the issues involved in this case are both related to and substantially similar to those in the criminal case. The potential for hardship and prejudice to the government is real and the delay sought is not significant. Accordingly, the

[1]All references to the Exhibits attached to the Declaration of David House, submitted with the defendant's Brief, will be to "House Decl., Ex. ".

Motion to Stay satisfies the three part test of *St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513 (1991), and should be granted.

## INTRODUCTION

Plaintiff's Objection seeks to diminish the connection between the two cases on the basis that the taxpayer enjoying the benefits of the shelter, Keith Tucker, is not under indictment. While it is true that Keith Tucker is not under indictment, that is not the end of the inquiry. As shown in the defendant's Brief and below, Mr. Tucker's motives for entering into the shelter transactions, the basis for Ruble's tax opinions, the truth or falsity of the representations of the opinion letters, and the *bona fides* of the tax shelter transactions are at issue in both this case and the criminal case.

Plaintiff also complains that the government will not be harmed by a denial of the stay since plaintiff has no intention of seeking discovery which would infringe on the criminal matter. It is no surprise that plaintiff has no desire to probe into Ruble's determination in his tax opinions written for plaintiff that the Epsolon transaction would "more likely than not" pass muster under the tax laws, since development of these subjects would be inimical to plaintiff's case. Likewise, it is no harm to plaintiff if the Government is prevented from obtaining third-party discovery regarding the shelter transactions, the substance of the marketing pitch, and Tucker's motives, so plaintiff is in favor of this case proceeding to decision under those restrictions. Under the guise of objecting to the reasonable stay request filed in this case, plaintiff is clearly attempting to push the case along while barring defendant from being able to discover third-party information with respect to plaintiff's tax planning which will shed light on plaintiff's motives for entering into the Son of Boss shelter - motives plaintiff has placed in issue as a result of filing the complaint in

this matter.

Plaintiff has a history of seeking to prevent the Government from gaining third-party information with respect to his tax planning efforts. *See John Doe 1 and John Doe 2 v. United States*, 398 F.3d 686 (5th Cir. 2005). Further, as stated in the defendant's Brief, the criminal defendants could well gain discovery into the government's criminal case to the extent that the government's trial counsel in this case does manage to obtain some third-party discovery into plaintiff's motives, Ruble's information and motives, and KPMG's operation with regard to the transactions in this case.

Plaintiff also objects to defendant's Motion on the basis that it was the Service that issued the Notice of Final Partnership Administrative Adjustment ("FPAA") and the Service should, therefore, be forced to live with the consequences of its actions in issuing an FPAA when the criminal case was on the horizon. As will be shown below, plaintiff could have extended the statute of limitations with respect to issuing the FPAA, but refused to do so. Accordingly, despite plaintiff's implication that the Government had a choice regarding when to issue the FPAA, Mr. Tucker refused to permit any realistic choice at all.

## DISCUSSION

### I. <u>The Issues in This Case are Related and are Substantially Similar to Those in the Criminal Case.</u>

The first part of the three-part test of *St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513 (1991), requires the party seeking the stay of a civil case to establish that the issues in the civil case are related to and substantially similar to those in the criminal case. In the defendant's Brief, the Government set forth in detail the connections between the civil case and

the criminal case.

Plaintiff's complaint seeks a redetermination of the partnership adjustments made in the FPAA attached to plaintiff's complaint. The FPAA lists among the reasons for adjustment that the acquisition of any interest in Epsolon Limited and the alleged foreign currency transactions lacked any genuine business purpose apart from tax reduction, lacked economic substance, and constituted economic shams for federal income tax purposes; and that plaintiff failed to enter into the transactions with a profit motive. The FPAA further determined that the adjustments were attributable to a tax shelter for which no substantial authority has been established for the position taken, and that there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. The FPAA went on to assert penalties. The complaint filed in this case alleges that the foregoing determinations are erroneous, including the determination that Epsolon lacked substantial authority for the tax treatment reflected on its tax return for 2001, and, in the alternative, Epsolon had a reasonable basis for believing that the tax treatment reflected on its tax return for 2001 was more likely than not the proper treatment. Thus Mr. Tucker's motives and intentions, as well as the advice he received from the persons marketing the tax shelter to him, are relevant to the civil case. In addition, the information known to the scriveners of the various transaction documents and the author of the tax opinions supporting the transaction are also relevant to determine both the *bona fides* of the transactions and whether the imposition of penalties is appropriate.

As set forth in defendant's Brief (at 10 - 20), the issues and facts in the criminal proceeding relate to and are substantially similar to the facts of this case. The facts and issues

relevant to both this case and the criminal proceeding include, among others, KMPG's review and evaluation of the SOS shelter and Ruble's opinion letter, and KPMG's determination that neither would withstand an IRS challenge; KPMG's decision nevertheless to market SOS shelters to taxpayers including the Tuckers and to prepare tax returns encompassing purported SOS losses; KPMG's actual marketing of the shelter to the Tuckers; Ruble's opinion letter and the veracity of the representations contained therein made by, among others, the taxpayers; and the role of the shelter boutique, its principal owner, and related parties in implementing the Tucker shelter. In the letter from Assistant United States Attorney Shirah Neiman (House Decl., Ex. 7), the United States Attorneys Office has confirmed that the Tucker/Epsolon transactions are part of the activity described in the indictment.

Plaintiff's own brief acknowledges, albeit obliquely, that the transactions in this case relate to and are substantially similar to the facts of this case. At page 4 of its brief, plaintiff acknowledges that Mr. Ruble rendered two tax opinions with respect to plaintiff's transactions. Plaintiff also acknowledges that Mr. Speiss, a partner in KPMG's "Innovative Strategies" group, advised plaintiff with respect to the transactions. Plaintiff then dismisses the notion that Mr. Speiss and Mr. Ruble would be third-party witnesses in this case even though Mr. Tucker's motivation for entering into the transactions and understanding of the transactions are in issue. The plaintiff actually states, at page 4, that the documents underlying the transactions are sufficient to determine the validity of the transaction. That may well be plaintiff's position, but both the criminal case and the civil case will be based, at least in part, upon whether or not the documentation of the transactions including the Tax Opinion was accurate. Paragraph 49 of the superseding indictment (House Decl., Ex. 5) alleges that opinion letters and associated

documents were false and fraudulent in numerous ways, including stating that the transactions were entered into "'for substantial non-tax business reasons' when in truth and in fact, the transactions were undertaken in order to generate the phony tax losses SOS purported to generate and not for any 'substantial non-tax business reason.'" It is an understatement to say that the factual issues in this case regarding the validity of the transactional documents, representation letters, and opinion letters, as well as plaintiff's motives for entering into the transactions, relate to and are substantially similar to those in the criminal proceeding.

Plaintiff's attempts to distinguish this case from *Ampetrol v. United States*, 30 Fed. Cl. 320 (1994), and *C3, Inc. v. United States*, 5 Cl. Ct. 6591 (1984), are unavailing. The very documents upon which plaintiff claims the parties can rely to establish the *bona fides* of the transactions at issue are the subject of the criminal case, in which the criminal defendants are alleged to have prepared false and fraudulent documents in furtherance of the criminal conspiracy. The holdings of *Ampetrol* and *C3* are applicable to this case. As shown above, the factual issues present in this case are directly related and substantially similar to those presented in the criminal case.

Plaintiff also objects to the stay by contending that the criminal case and this case do not involve the same transactions. (Pl. Brief at 8.) Plaintiff is mistaken. The letter from Assistant United States Attorney Shirah Neiman expressly states that the Tucker/Epsolon transactions are encompassed within the *Stein* indictment, referencing, inter alia, paragraph 32 and paragraphs 47–51 of that indictment. (House Decl., Ex. 8.) Again, defendant's Brief traces in detail the connections the Tucker/Epsolon transaction have with the criminal case, including the fact that the superseding indictment alleges that the short options strategy was referred to by several

different names, including "spread option strategy" and "digital option." (House Decl. Ex. 5, para. 47.) Tucker himself referred to the Epsolon transactions as digital options (House Decl., Ex. 9 at item 4), and, in response to an IRS summons, Sidley Brown, Austin & Wood provided that Keith Tucker had participated in "Diversified – Spread Options." (House Decl., Ex. 8.) Plaintiff's attempts to dismiss the connections between this case and the criminal case simply ignore the facts.

Indeed, plaintiff undercuts its own argument when it claims "no person that is directly or indirectly related to plaintiff has been indicted." (Pl. Brief at 7.) R. J. Ruble, who plaintiff admits prepared the tax opinion letters for plaintiff, and is thus directly related to plaintiff's transaction, has been indicted for his role in the very SOS shelter engaged in by plaintiffs.

As shown above and in the government's Brief, the issues and facts in this case both relate to and are substantially similar to the issues and facts in the criminal case. The first part of the test of *St. Paul Fire, supra*, is clearly met.

**II. <u>The Potential Hardship is Real.</u>**

The second part of the three-part test of *St. Paul Fire* is that the party moving for the stay make a showing of hardship or inequity if the civil case proceeds in the face of the criminal action. In defendant's Brief, the Government has set forth the hardship which will be involved in proceeding with this case while the criminal case is going forward, including the inability to discover information from third parties who have already announced their intention to assert their Fifth Amendment protection against self incrimination. Those persons include Ruble, the author of the plaintiff's Tax Opinions, and Tim Speiss, partner of KPMG's "Innovative Strategies" group, who advised Mr. Tucker regarding these transactions. Plaintiff attempts to diminish the

hardship involved by asserting that plaintiff has no intention of seeking discovery into the criminal case. Plaintiff ignores the Government's need for independent discovery and appears to be attempting to use the pendency of the criminal case to prevent the Government from gaining third-party information for use in the civil case.

If this civil case were to proceed, the Government would also be faced with the prospects of interfering with the criminal case by taking depositions of potential witnesses who may be called in the criminal matter. Proceeding with discovery in this case runs the very real risk of permitting the criminal defendants insight into the criminal case before they are entitled to that information. In *Ampetrol*, the court found that the mere fact of deposition discovery in the civil case would be a sufficient hardship on the prosecution in the criminal case. In particular, the court found that "[i]t would be impossible to limit the educational effect of a deposition on a witness, or the impact that the mere designation of discovery here might have in affecting strategy in the criminal proceeding." 30 Fed. Cl. 320, 322 (1994). Given the close relationship between the criminal case and this case, the effect on the criminal proceeding is no less than that presented in *Ampetrol*.

Plaintiff contends that the harm to the Government's civil and/or criminal cases in proceeding with this case is of the Government's own making. (Pl. Br. at 12-14.) Plaintiff is in error. Plaintiff attempts to create the image that the Government chose to issue the FPAA at the same time the criminal investigation was proceeding. In fact, the Government attempted to have plaintiff and Mr. Tucker sign waivers of the statute of limitations on assessment which could have delayed the issuance of the FPAA, but they refused. Mr. Tucker appeared as John Doe 1 in the case of *John Doe 1 and John Doe 2 v. United States*, 398 F.3d 686 (5th Cir. 2005). (House

Decl., Ex. 6.) In that case, Mr. Tucker was attempting to prevent KPMG from disclosing his identity and any of his dealings with the tax shelter in response to an IRS summons. The United States intervened and, as part of the case, requested that the Court order the parties to execute waivers of the statute of limitations on assessment. Mr. Tucker resisted that request.

The District Court issued an order in which it declined to order the parties to execute waivers of the statute of limitations. A true and correct copy of that Order, obtained from the website of the United States District Court for the Northern District of Texas, is attached hereto as Exhibit 1.[2] On page 10, n. 3, of that Order, the District Court stated that the plaintiffs behavior in obtaining an extension in that Court was "puzzling . . . unless it was to run out the clock." In fact, plaintiff is now contending that the statute of limitations had run and the FPAA was issued untimely. (Pl. Compl. Para. 8.) Although plaintiff's contention regarding the timeliness of the FPAA is mistaken, plaintiff wants to have it both ways: refuse to consent to an extension of time for assessments which could have delayed the issuance of the FPAA, and then complain that the government has issued an FPAA during the pendency of the criminal investigation. This is followed by the argument that the government has "made its bed and must lie in it." (Pl. Brief at 14.) It was plaintiff's refusal to execute the waiver of the statute of limitations, while attempting to prevent KPMG from providing information in response to a summons, that created this situation. As suggested by the District Court, it would appear that plaintiff had all along been attempting to "run out the clock."

Where plaintiff has created the situation that caused the Government to issue the FPAA at

---

[2]The District Court held in that Order that equitable tolling would apply to extend the statute of limitations on assessment. That portion of the Order was reversed on appeal. *John Doe 1 and John Doe 2 v. United States*, 398 F.3d 686 (5th Cir. 2005).

the time the criminal investigation is proceeding, plaintiff's argument that the Government should not be permitted a stay because its harm is self-inflicted is incredible. Stays are permitted in order to prevent the very type of harm that plaintiff is attempting to engineer in this case. *See, e.g., Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987); *Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978); *Penden v. United States*, 512 F.2d 1099, 1104 (Ct. Cl. 1975).

Plaintiff next argues, Pl. Brief at 14-16, that any harm from this case has already been done by the Tax Court's denial of the motion to stay in *Keith A. and Laura B. Tucker v. Commissioner*, Docket No. 12307-04. This is simply not accurate. Plaintiff states, at 14, that *Tucker* is "in the midst of discovery," implying that depositions are going forward. No depositions have been taken in that case. Again, the United States is considering what options it may have with respect to the Tax Court's denial of the stay in that case. Further, the fact that the Government must now be forced to choose whether to limit its discovery and examinations in the Tax Court case or to risk damage to the criminal case as a result of the denial in *Tucker* does not justify forcing such a decision in this case. The one-sentence denial of stay in the Tax Court, without explanation, does not address the strong public interest as set forth by the Fifth Circuit in *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955 (1963):

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

Nor does the "damage" created by the Tax Court's *Tucker* decision obviate the need for a stay in

this case. A stay in this case would avoid prejudice to the criminal trial and this proceedings by: 1) allowing the Government to take its depositions of third parties later – *i.e.*, after the criminal trial – when it could do so without providing undue disclosure of the government's criminal case; 2) providing both the government and plaintiff access to the record of the criminal trial, which will very likely narrow the issues in this case; and 3) enabling the government to obtain access to grand jury information under Federal Rule of Criminal Procedure Rule 6 that will be available after the *Stein* trial, and not before. Thus, the stay would enable the parties to proceed in this case without the limitations that will exist in the Tax Court case because of the need to protect the public interest in law enforcement – which limitations are exactly what plaintiff is attempting to force on the Government in this case as well.

Plaintiff also attempts to argue, focusing on Mr. Speiss, that the stay will not prevent unindicted witnesses from asserting their Fifth Amendment rights in the future. This is simply speculation. What is not speculation is that granting the stay will permit the Government to take depositions of third parties without providing undue disclosure of the government's criminal case, and that the Government will be able to provide the Court with full factual development without the constraints against revealing grand jury information under Rule 6(e) of the Rules of Criminal Procedure. Plaintiff complains that permitting the Government access to grand jury information is somehow a windfall or creates a unique or unfair advantage. (Pl Brief at 12.) Plaintiff ignores the fact that plaintiff will also gain access to the same information – as will the Court.

Plaintiff is, in effect, arguing that the Court should not have access to the information surrounding the Epsolon tax shelter transactions. While it is understandable that plaintiff wishes

to argue that the transaction documents are all that is necessary to determine the *bona fides* of the Tucker/Epsolon transaction, the Government should be permitted to go behind the documents and present all the surrounding facts necessary to determine whether Mr. Tucker had the requisite profit motive in entering into those transactions and to determine whether the transactions themselves were economic shams – a presentation that the Government cannot make before the criminal trial.

**III. <u>Plaintiff Will Not Be Harmed by a Stay.</u>**

Plaintiff complains at pages 16-19 of its brief that the Government is the party attempting to interfere with plaintiff's ability to fairly and objectively present the merits of the transactions at issue in this case. In fact, to the contrary, it is plaintiff, and plaintiff alone, that is attempting to limit the presentation of facts to this Court.[3] If the Government's stay is granted, plaintiff, in due course, will have a full and fair opportunity, as will the Government, to test any factual allegations through appropriate discovery. If the stay is not granted, the Government's trial attorneys in this case will be limited in their ability to test plaintiff's allegations of fact, and in the presentation of evidence to the Court, out of the need to protect the public's interest in law enforcement.

In the event plaintiff prevails on the merits of this case, plaintiff will be entitled to interest

---

[3]Plaintiff's Brief, at pages 16-19, presents a vitriolic and highly specious diatribe regarding the government's criminal investigation. While the government does not agree with plaintiff's mis-characterization of the criminal proceedings or with plaintiff's speculation as to future events, they are also irrelevant to the issues presented in the government's Motion to Stay. Plaintiff's protests that the government is attempting to prevent a full and fair hearing of the merits of the tax liability here ring hollow when plaintiff and Mr. Tucker have been attempting to prevent the discovery of information into these transactions from the start. *See, e.g., John Doe 1 and John Doe 2 v. United States*, 398 F.3d 686 (5th Cir. 2005).

on the deposit it has made. Thus, any potential or actual harm to plaintiff is alleviated by the provision for interest.

**IV. The Duration of the Requested Stay Is Reasonable.**

As stated in the defendant's Brief, the trial in the criminal case is scheduled for September 11, 2006. While plaintiff desires to speculate about possible delays,[4] the judge in the criminal case has made it clear that the case is to go forward as scheduled.[5] Thus the Government's request that the proceedings in this case be suspended until after the criminal trial is not an unreasonable delay in the proceedings in this case. Therefore the third part of the *St. Paul Fire* three-part test is satisfied.

**V. The Potential for Summary Judgment.**

The plaintiff has stated that it intends to file a motion for summary judgment with respect to the issue of the timeliness of the FPAA. The plaintiff contends that such a Motion can be filed utilizing no testimony from any individual that would interfere with the criminal proceeding and that any documentary evidence to be presented with the Motion is already in the possession of

---

[4]Plaintiff again seeks to cast harrowing and specious concerns about the government's use of the suspension to seek out prejudicial admissions through supposed leveraging of indictments. The Government rejects and denies plaintiff's speculations and mis-characterizations.

[5]In the criminal case, on January 26, 2006, the Judge denied the government's Motion to disqualify one of the defendant's attorneys' on the basis of a conflict of interest. One of the grounds for denial stated by the judge (at p. 23 of the Order) was that a substitute counsel would not have time to adequately prepare for the trial, thus signaling that the criminal trial is to go forward as scheduled. A true and correct copy of that Order is attached as Exhibit 2. Further, the Judge in the criminal case issued an Order dated February 1, 2006, in which he notified the criminal defendants that a guilty plea must be submitted prior to June 15, 2006, in order to be considered timely to obtain acceptance credit for permitting the government to avoid trial preparation. This again indicates that the judge intends for the criminal case to go forward as scheduled. A true and correct copy of that Order is attached as Exhibit 3.

both parties and would not interfere with the criminal proceeding. If plaintiff is correct in its contentions regarding the evidentiary basis for such a Motion, the Government does not object to suspending further proceedings with the exception of proceeding on a Motion for Summary Judgment directed solely to the question of the timeliness of the issuance of the FPAA.

However, this issue is already before the Federal Circuit, which has recently allowed an interlocutory appeal in *AD Global v. United States*, Fed. Cir. No. 06-5046. The initial brief before the Federal Circuit is due on or before March 14, 2006. If plaintiff were to move for summary judgment on this issue, this Court might well decide to take the matter under advisement until the Federal Circuit's decision in *AD Global*.

**CONCLUSION**

The Tucker/Epsolon transactions are part of the activity that is the subject of the *Stein* indictment, and the issue of the legitimacy of the transactions will be litigated in the criminal trial. To require the civil case to go forward with discovery and /or trial prior to the conclusion of the *Stein* trial would prejudice the criminal trial, and would prejudice the ability of the United States to fairly develop their defense in the civil case pending before this Court. As stated in the defendant's Brief, the illegal tax shelter criminal proceedings are enormously important with respect to the effective administration of the Internal Revenue laws, and this case is just one facet of the overall conspiracy. Thus, as a result of grand jury secrecy, Fifth Amendment considerations, and the danger that events in this case could compromise the criminal prosecution, proceedings in this case should be suspended until after the criminal case has been

resolved. As a practical matter, discovery will not be feasible until after that trial, which is set to begin on September 11, 2006, and assuming conviction, after any sentencing proceeding has ended.

WHEREFORE, defendant respectfully moves that the instant case be stayed until resolution of the pending criminal trial, with the exception that plaintiff be allowed to file a motion for summary judgment on the issue of the timeliness of the FPAA.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims