No. 05-999 T
(Judge Margaret Sweeney)

# *IN THE UNITED STATES COURT OF FEDERAL CLAIMS*

EPSOLON LIMITED, BY AND THROUGH
SLIGO (2000) COMPANY, INC.,
TAX MATTERS PARTNER,

Plaintiff

v.

THE UNITED STATES,

Defendant

CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION UNDER RULE 56(f),
AND BRIEF IN SUPPORT THEREOF

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

Page

# TABLE OF CONTENTS

Cross-Motion of the United States for Partial Summary Judgment, and Alternative Rule 56(f) Motion . . . . v

Brief for the United States in Support of its Cross-Motion for Partial Summary Judgment and in Support of its Alternative Motion under Rule 56(f). . . . . 1

Statement. . . . . 3

Argument. . . . . 8

I. Summary of Argument.. . . . . 8

II. The Limitations Period for Assessing the 2001 Tax Attributable to Epsolon's 2001 Partnership Items Is Open and Suspended.. . . . . 11

A. Section 6501 Provides the General Limitations Period for Tax Assessments Attributable to Epsolon's Partnership Items.. . . . . 13

1. The Plain Language of § 6229 Establishes a Minimum Period Within Which the General § 6501 Period Shall Not Expire. . . . . 15

2. Legislative History Supports the Conclusion that § 6229 Does Not Establish an Exclusive and Independent Limitations Period. . . . . 19

III. The § 6501 Limitations Period for Assessing Mr. Tucker with 2001 Tax Attributable to Epsolon's 2001 Partnership Items Has Not Expired and is Suspended.. . . . . 21

A. Section 7609(e)(2) Suspended the Statute of Limitations of § 6501. . . . . 21

B. The Statute of Limitations Remains Suspended. . . . . 24

IV. In the Alternative, Pursuant to RCFC 56(f) the United States Moves that the Court Refuse Plaintiff's Application for Judgment. . . . . 26

Conclusion. . . . . 29

**Page**

**TABLE OF AUTHORITIES**

**Cases:**

*AD Global Fund v. United States*, 67 Fed. Cl. 657 (2005). . . . . . . 2, 9, 14, 16, 18, 19, 24

*AD Global v. United States*, Fed. Cir. No. 06-5046.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Andantech, L.L.C. v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003). . . . 13, 16, 18, 21, 25

*Badaracco v. Commissioner*, 464 U.S. 386 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Blum v. Stenson*, 465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bufferd v. Commissioner*, 506 U.S. 523 (1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*E.I. du Pont de Nemours & Co. v. Davis*, 264 U.S. 456 (1924).. . . . . . . . . . . . . . . . . . . . . 13

*Estate of Flandreau v. Commissioner*, 994 F.2d 91 (2d Cir. 1993).. . . . . . . . . . . . . . . . . . 13

*Green v. Commissioner*, 963 F.2d 783 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*John Doe 1 & John Doe 2 v. KPMG, L.L.P.*, Civil No. 3: 03-CV- 2036.. . . . . . . . . . . . . . 23

*Maxwell v. Commissioner*, 87 T.C. 783 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

*Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*,
114 T.C. 533 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 16-18, 21, 24, 25

*Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572 (1980). . . . . . . . . . . . . . . . . 20

*United States v. Greene-Thapedi*, 398 F.3d 635 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 14

*United States v. Stein, et al.*, S05 Crim. 888 (LAK). . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 29

**Page**

**Statutes:**

Internal Revenue Codes of 1986 (26 U.S.C.):

§ 6221. . . . . 12, 25

§ 6225. . . . . 12, 25

§ 6226. . . . . 11,12

§ 6229. . . . . *Passim*

§ 6501. . . . . *Passim*

§ 6503. . . . . 26

§ 7602. . . . . 8-10

§ 7609. . . . . *Passim*

§ 7906. . . . . 10, 22, 23

**Page**

**Miscellaneous:**

FRAP 26(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

H,R. Conf. Rep. 99-841, 1986-3 C.B. (vol. 4).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

H.R. Rep. 102-631, Title IV, Subtitle C, Part II(5), *reprinted in*
1992 WL 206185, at *145 (June 30, 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Rules of United States Court of Federal Claims:
Rule 56(f).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 3, 26, 27, 29

Senate Finance Committee's Technical Explanation of Finance
Comm. Amend. to H.R. 11, *printed in* 138 Cong. Rec. S11246,
Title IV, Subtitle C, Part B, 5, at *S11288 (August 3, 1992). . . . . . . . . . . . . . . . . . . . . 20

The Role of Professional Firms in the U.S. Tax Shelter Industry,"
Permanent Subcommittee on Investigations of the Committee on
Homeland Security and Governmental Affairs, at 11,
Senate Report 109-54, 109th Cong., 1st Session (2005) ("Subcommittee Report").. . . 27

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Sweeney)

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT, AND ALTERNATIVE RULE 56(f) MOTION

Plaintiff has moved for summary judgment on the grounds that the FPAA issued to Epsolon was untimely. The United States opposes that motion and cross-moves for partial summary judgment pursuant to Rule 56(a) of the Rules of the United States Court of Federal Claims (RCFC), on the grounds that the FPAA was issued at a time when the statute of limitations of § 6501(a) for assessing taxes attributable to partnership items was open for Mr. Tucker's 2001 taxable year by reason of the suspension of the statute of limitations contained in § 7609(e)(2) due to a pending IRS summons. There is no genuine issue of material fact with respect to this issue and defendant is entitled to judgment as a matter of law.

In the alternative, the Government requires discovery to determine whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax, which would result in the

application of the unlimited statute of limitations of § 6501(c)(1). If the Court denies the Government's principal motion, then the Government moves the Court pursuant to RCFC 56(f) to refuse plaintiff's application for judgment. The Government will require discovery into the merits of the Tucker/Epsolon transaction to determine whether that position is appropriate and engaging in that discovery will interfere with the criminal case. The Court has already issued an Order staying all proceedings in this case on the Government's motion. For the reasons set forth in the Brief filed in Support of this Cross-Motion and in the Government's Brief in Support of its Motion to Suspend Proceedings and Reply Brief, if the Court reaches the issue regarding application of the unlimited statute of limitations, plaintiff's application for judgment should be refused.

Respectfully submitted,

s/ David R. House

DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Sweeney)

---

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN SUPPORT OF ITS ALTERNATIVE MOTION UNDER RULE 56(f)

---

Defendant moved this Court for a stay in this matter pending the resolution of the criminal investigation and trial in the case *United States v. Stein, et al.*, S05 Crim. 888 (LAK) (SDNY). Plaintiff objected to that motion for stay contending, in part, that there was an issue concerning the statute of limitations that could be resolved without implicating the criminal case. The defendant in reply stated that it had no objection to going forward on summary judgment with respect to the statute of limitations issue if resolution of that issue could be had without requiring discovery which would interfere with the criminal case. The defendant also stated that the Federal Circuit had recently allowed an interlocutory appeal in *AD Global v. United States*,

Fed. Cir. No. 06-5046,[1] with respect to the issue of whether 26 U.S.C. § 6229(a)[2] operates as a possible extension of the statute of limitations of § 6501, or whether § 6229(a) is an exclusive statute of limitations for issuance of an FPAA. This Court then issued an Order staying all proceedings in this case.

Despite the Court's Order staying all proceedings, plaintiff has moved for summary judgment on the question of whether the FPAA was timely. The United States files this Cross-Motion for Partial Summary Judgment on the issue of whether the FPAA was issued when the statute of limitations of § 6501(a) for assessing taxes attributable to partnership items was open for Mr. Tucker's 2001 taxable year by reason of the suspension of the statute of limitations contained in § 7609(e)(2) due to a pending IRS summons. As explained below, plaintiff's contention that the decision in *AD Global* is not implicated in the resolution of this issue is mistaken. Furthermore, in the event the Court determines that the three-year statute of limitations of § 6501(a) was not open at the time the FPAA issued, the United States will need to conduct discovery on the question of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax, which would permit the application of the unlimited statute of limitations of § 6501(c)(1). As explained below and in the Government's Brief in Support of Motion to Suspend Proceedings, and Reply Brief in support of that Motion, such discovery will interfere with the criminal action in *United States v. Stein*, *et al.*, S05 Crim. 888 (LAK) (SDNY). As a result, plaintiff's contention that the criminal case will not be impacted by resolution of the

---

[1]The decision below is reported at 67 Fed. Cl. 567 (2005). The appellant's initial brief in *AD Global* was filed with the Federal Circuit on April 17, 2006.

[2]All references to code sections will be to Title 26, U.S.C., unless otherwise designated.

statute of limitations issue may also be incorrect. As a result, pursuant to RCFC 56(f) the United States requests in the alternative that the Court refuse plaintiff's application for judgment, in the event the issue of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax must be reached.[3]

**STATEMENT**

Keith Tucker ("Mr. Tucker") is the individual who, by means of the Epsolon entity, utilized the tax shelter at issue in this case in an effort to reduce his individual tax liabilities.[4] He is also one of the persons receiving the Notice of Final Partnership Administrative Adjustment.

On April 10, 2002, (*i.e.* five days early), Mr. Tucker filed his individual Form 1040 for the year 2001.[5] The return was deemed filed on April 15, 2002.[6] On April 10, 2002, Epsolon filed its Form 1065 for the taxable year ending December 31, 2001.[7] That return was also deemed filed on April 15, 2002.[8]

About a year and a half later, on October 14, 2003, the United States District Court for

---

[3]If the Court determines that, at the time the FPAA issued, the statute of limitations for assessing taxes attributable to partnership items was open for Mr. Tucker's 2001 taxable year by reason of the suspension of the statute of limitations contained in § 7609(e)(2), as contended by the Government below, there would be no need to address the issue of whether Mr. Tucker filed a false or fraudulent return for purposes of determining whether the FPAA was timely issued.

[4]Although reference is made in this Memorandum to the "partnership" and various purported entities, defendant does not concede that, under the applicable law, a viable partnership or the alleged entities existed.

[5]See Pl. Prop. Finding 6 and Defendant's Response.

[6]§ 6501(b)(1).

[7]See Pl. Prop. Finding 1 and Defendant's Response.

[8]§ 6501(b)(1).

the Northern District of Illinois issued an order granting leave for the IRS to serve a "John Doe" summons upon Sidley Austin Brown & Wood (now known as Sidley Austin, LLP ("Sidley Austin")).[9] On October 15, 2003, the IRS served a "John Doe" summons on Sidley Austin ("John Doe" summons).[10] As set forth in the rider to the "John Doe" summons, the summons required Sidley Austin to produce:

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction' or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor Brown & Wood LLP.[11]

Mr. Tucker has conceded that Brown & Wood was engaged to perform services in connection with the SOS shelter in which Epsolon participated.[12]

By letter dated October 27, 2003, Sidley Austin provided the Service with the identities of some but not all of the participants in the described transactions, withholding the identities of those who had either failed to consent or refused to consent to Sidley Austin's disclosure of their identities pursuant to the IRS summons. Mr. Tucker's identity was not among the information

---

[9]Def. Prop. Finding 2. A "John Doe" summons is served by the Service to obtain information about unknown persons within a defined class. In this instance, the "John Doe" summons was issued to learn the identities of unknown participants in tax shelters organized or sold by Sidley Austin (the "John Doe" class) as part of the IRS investigation to determine the correctness of returns filed by the unknown participants and their correct liabilities. Lindquist Declaration, Ex. 4, para. 6.

[10]Def. Prop. Finding 3. At the time the summons was served, a year and a half still remained in the three-year period (see § 6501(a)) in which the IRS was allowed to assess tax against Mr. Tucker for his 2001 taxable year.

[11]Def. Prop. Finding 4.

[12]Def. Prop. Finding 5.

Sidley Austin revealed in its October 27, 2003, letter.[13]

On December 27, 2004, the United States filed a petition to enforce the "John Doe" summons in the United States District Court for the Northern District of Illinois.[14] On January 14, 2004, the Court ordered Sidley Austin to give its clients who were subject to the "John Doe" summons until January 23, 2004, to advise Sidley Austin of their intention to assert that their identities were protected by privileges.[15] Pursuant to the Order of January 14, 2004, Sidley Austin was also directed to provide copies of all letters received to the United States, with client names redacted.[16] Pursuant to the Order of January 14, 2004, multiple persons notified Sidley Austin that it was not to disclose their identities to the Service. Among those persons, two taxpayers, represented by Thomas Linguanti of Baker & McKenzie, instructed Sidley Austin by letter dated January 22, 2004, not to disclose their identities to the IRS.[17]

On February 6, 2004, the Court issued an Order pursuant to which persons who objected to Sidley Austin revealing their identities would be permitted to intervene in the summons enforcement proceeding.[18] Pursuant to the February 6, 2004 Order, a motion to intervene was filed on February 26, 2004, by Baker & McKenzie on behalf of by two clients who were

---

[13]Def. Prop. Finding 6.

[14]Def. Prop. Finding 7.

[15]Def. Prop. Finding 8. Although the Order referenced "clients" of Sidley Austin, the summons required production of the identities of all U.S. taxpayers that had participated in the transactions specified in the "John Doe" summons.

[16]Def. Prop. Finding 9.

[17]Def. Prop. Finding 10.

[18]Def. Prop. Finding 11.

identified only as “Baker Doe 1” and “Baker Doe 2.”[19] On April 14, 2004, “Baker Doe 1" and Baker Doe 2" filed a Motion to Withdraw their Motion to Intervene in the summons enforcement action.[20] At paragraph 4 of that Motion, it stated that the Baker Does will “no longer be pursuing protection of their identities, “ and that counsel for the Does had instructed counsel for Sidley Austin to provide the clients’ names to the Government if Sidley Austin believed that the names were responsive to the John Doe Summons.[21] That motion was granted on April 15, 2004.[22]

Upon withdrawal of the Baker Does’ motion to intervene, counsel for the Government requested that counsel for Sidley Austin turn over the identities of the Baker Does.[23] The Government’s request for Baker Does’ identities was denied by Sidley Austin on the basis that Sidley Austin would not turn over taxpayer identities without a court order or written consent of the taxpayer.[24] Shortly thereafter, counsel for Sidley Austin informed Government counsel that Sidley Austin had requested the Baker Does to provide written consent to disclose the summoned information to the Service, but they had refused to provide that written consent to Sidley Austin.[25]

On April 28, 2004, the Illinois District Court granted the Government’s Petition to

---

[19]Def. Prop. Finding 12.

[20]Def. Prop. Finding 13.

[21]Def. Prop. Finding 14.

[22]Def. Prop. Finding 15.

[23]Def. Prop. Finding 16.

[24]Ibid.

[25]Def. Prop. Finding 17.

enforce the Sidley Austin summons.[26] On April 30, 2004, the Illinois District Court issued a further Order staying the Court's April 28, 2004 order "for the period during which this proceeding remains pending, including all appeals, including the period until all appeals are disposed of, or until expiration of the period in which all appeals may be taken or a request for rehearing may be made."[27]

On June 29, 2004, after the expiration of the period during which an appeal from the Illinois District Court's April 28, 2004 order could be taken under FRAP 26(a), Sidley Austin , via electronic mail, disclosed to Government counsel what it represented to be the "balance of the names and address of the interveners in the John Doe action" to which was attached a list which included the name "Keith Tucker."[28] In the list produced by Sidley Austin to Government counsel on June 29, 2004, was the name "Keith Tucker" under the heading "Diversified - Spread Options." The information produced by Sidley Austin on June 29, 2004, did not include Mr. Tucker's Social Security Number, or the names and identifying Employment Identification Numbers for any participating entities, including, but not limited to the controlled U.S. entities Sligo (2000) and Epsolon.[29]

At the time the list was produced, upon inquiry by Government counsel, Sidley Austin represented that the additional summoned material was not readily available because its New York offices had been destroyed on September 11, 2001. Upon demand of Government counsel,

[26]Def. Prop. Finding 18.

[27]Def. Prop. Finding 19.

[28]Def. Prop. Finding 20.

[29]Def. Prop. Finding 21.

Sidley Austin was subsequently able to recover the names of the taxpayer entities that participated in these transactions.[30] On March 3, 2005, counsel for Sidley Austin hand delivered to Government counsel a supplemental production in response to the "John Doe" summons in which Sidley Austin for the first time identified the names of participating entities, including, but not limited to, the controlled U.S. entities Sligo (2000) and Epsolon.[31]

The FPAA with respect to Epsolon's taxable year ending December 31, 2001, was mailed June 17, 2005 – three years and two months after Mr. Tucker and Epsolon filed their 2001 returns.[32]

## ARGUMENT

Plaintiff contends that the FPAA in this case–issued three years and two months after Epsolon filed its return–was untimely, in view of a supposed statute of limitations plaintiff finds in § 6229(a). In fact, the relevant statute is § 6501(a), which is suspended, pursuant to § 7602(e)(2), when a response to a summons is delayed by 6 months. Here, such a delay added ten months to the three-year period, rendering the FPAA timely.

### I. SUMMARY OF ARGUMENT

Pursuant to § 6501(a), the general statute of limitations with respect to the assessment of taxes is 3 years from the date the tax return is filed. (In the case of a false or fraudulent return with the intent to evade tax, the statute of limitations is unlimited.[33]) For taxes assessed pursuant

---

[30]Def. Prop. Finding 22.

[31]Def. Prop. Finding 23.

[32]Def. Prop. Finding 24.

[33]§ 6501(c).

to partnership items, § 6229(a) operates as a possible extension to the general statute of limitations and not as a separate and exclusive three-year statute of limitations.[34] Pursuant to § 7609(e)(2) the statute of limitations of § 6501 is stayed for a period beginning six months after issuance of a summons and ending with the final resolution of such response.

In this case, Mr. Tucker's individual tax return for the year 2001 was deemed filed on April 15, 2002.[35] The three-year period for assessing taxes against Mr. Tucker for his 2001 taxable year, but for the extension of § 7609(e)(2), would have ended on April 15, 2005.[36] A "John Doe" summons was issued on October 15, 2003 to Sidley Austin, pursuant to §§ 7602 and 7609(f). The summons requested the identity of each U.S. taxpayer, who had participated in a "'listed transaction' or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor Brown & Wood LLP." Upon notification that information about him and Epsolon were responsive to the summons, Mr. Tucker attempted to prevent Sidley Austin from disclosing his identity to the Service in response to the summons. Sidley Austin finally made a partial response to the summons (giving Mr. Tucker's name) on June 29, 2004, but it was not until March 3, 2005, that Sidley Austin provided the names (though not the taxpayer identification numbers) of the entities Mr. Tucker used in the transaction.

The statute of limitations began to be suspended pursuant to § 7602(e)(2) six months after October 15, 2003 – the date of service of the summons – *i.e.*, on April 15, 2004. Because the

---

[34] *AD Global Fund v. United States*, 67 Fed. Cl. 657 (2005).

[35] A tax return filed before the due date is considered as filed on the due date. § 6501(b)(1).

[36] § 6501(a).

Service had until April 15, 2005, to assess taxes with respect to Mr. Tucker's 2001 taxable year, there remained 365 days for the Service to assess taxes as of the date of the suspension. The suspension of limitations of § 7602(e)(2) ended upon final resolution of the response to the summons on March 3, 2005.[37] Therefore, the statute of limitations began running again as of March 3, 2005–for a period of 365 days, until March 3, 2006.[38] The FPAA, issued months earlier on June 17, 2005, was issued within the time during which Mr. Tucker's 2001 taxable year was open, and was therefore timely.[39]

In the event the Court were to determine that Mr. Tucker's 2001 taxable year was not open at the time the FPAA issued because the 3-year statute of limitations of § 6501(a) had not been suspended by § 7602(e)(2) and had expired, then the Government requests the Court continue the stay in this matter pending the trial of the criminal case in the Southern District of New York. As presented above, the Government may take the position that Mr. Tucker's 2001 return was false or fraudulent and was filed with an intent to evade tax. If the 2001 return was

[37] § 7906(e)(2)(B). It is possible that the period of suspension continued beyond March 3, 2005, if Sidley Austin did not fully comply with the terms of the enforcement order, which required the production of multiple taxpayers' names and associated data. So far as we know, Sidley Austin never provided Mr. Tucker's social security number, nor the taxpayer identification numbers of the entities. For purposes of this case, however, the date of March 3, 2005, is the earliest date upon which the suspension could have ended, assuming that Sidley Austin fully complied with the enforcement order at that time. If further information is later discovered by Sidley Austin and turned over to the Government, then the date of the later production will be the date of final resolution on which the suspension terminates.

[38] March 3, 2005, plus 365 days = March 3, 2006. The suspension lasted for more than 10 months, from April 15, 2004 to March 3, 2005.

[39] The issuance of the FPAA also suspends the statute of limitations pursuant to § 6229(d), with the result that Mr. Tucker's taxable year ending December 31, 2001 remains open. *See* Section III.B below.

false or fraudulent and was filed with an intent to evade tax, then the unlimited statute of limitations of § 6501(c)(1) would apply, and the FPAA was issued at a time when Mr. Tucker's 2001 taxable year was open. Before it could be determined that such a position is appropriate, discovery would have to be taken. That discovery would necessarily interfere with the criminal case in that it will involve document and testimonial discovery of at least one indicted person, R.J. Ruble, as well as potential witnesses in that case. For the reasons presented in the Government's Brief in Support of Motion to Stay Proceedings, and its Reply Brief, the Government requests that the Court continue the stay in this matter in the event this issue is reached.

## II. THE LIMITATIONS PERIOD FOR ASSESSING THE 2001 TAX ATTRIBUTABLE TO EPSOLON'S 2001 PARTNERSHIP ITEMS IS OPEN AND SUSPENDED.

The shorthand often used to state the issue in this case – whether the FPAA was timely – is imprecise. Strictly speaking, the Code states no deadline for the issuance of an FPAA, and the real statute of limitations issue in a TEFRA suit is whether the statute of limitations to assess tax against a partner has expired. Expiration of the partner's assessment period is the defense allowed by § 6226(d)(1) – *i.e.*, the partner may "assert[] that the period of limitations for assessing any tax attributable to partnership items has expired *with respect to such person*". The issuance of an FPAA *before* the expiration of the partner's assessment period expires causes the running of that period to be suspended until the ensuing TEFRA suit has been resolved.[40] If the FPAA's adjustments are upheld in that TEFRA suit, then when the judgment in that suit becomes

[40] § 6229(d).

final, the resulting tax is then and only then assessed against the partner.[41] If an FPAA were issued *after* a partner's assessment period had already expired, however, then by definition that already-lapsed period could not be suspended by the FPAA. The partner could then prevail in the TEFRA suit by showing that no assessment of tax against him was possible any longer.

The IRS intends to assess the Tuckers with 2001 tax attributable to adjustments of Epsolon's year 2001 partnership items. The IRS issued a 2001 FPAA as a prerequisite to these assessments, because 26 U.S.C. § 6221 requires the IRS to determine partnership adjustments as part of an entity-level partnership proceeding.[42] As explained above, § 6226(d)(1) allows a partner to challenge this proceeding by asserting that the limitations period "*with respect to such person*" for assessing tax attributable to partnership items has expired, but the following parts explain that the Tuckers' 2001 assessment limitation periods are open and suspended.

The statutory distinction of partners and partnerships, and the requirement that they file separate returns, creates some opportunities for mischief: The information needed to understand and evaluate their treatment of their tax issues is divided between the two returns, and it may be that neither the partner's return by itself nor the partnership's return by itself would give the IRS sufficient information to spot a necessary adjustment. If a partnership substantially delayed the filing of its Form 1065 return (not as here), then the statute of limitations to assess tax against the partner might expire before the IRS could see the whole story. The simple solution, given in § 6229(a), is that the partner's assessment period (normally three years from the date of filing his

---

[41] § 6225.

[42] § 6221; *Maxwell v. Commissioner*, 87 T.C. 783 (1986); *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 552 (2000).

own return) will not expire until three years after the (later) filing of the partnership's return. Section 6229(a) was obviously enacted to give *more* time to the IRS for examining partnership issues and assessing the resulting tax. Therefore, § 6229(a) operates a potential extension of time of the general statute of limitations contained in § 6501, depending on the date of the filing of the partnership return.

**A. Section 6501 Provides the General Limitations Period for Tax Assessments Attributable to Epsolon's Partnership Items.**

Section 6501 of the Internal Revenue Code provides the general limitations period for the assessment of "any tax imposed by [Title 26]."[43] Epsolon asserts that the statute of limitations for issuing an FPAA is § 6229(a) without explaining why that section should overrule the general limitations period of § 6501. Neither § 6501 nor § 6229(a) contain any language which could be considered to cut short the general limitations period. Instead, the plain language of § 6229(a) provides a safe harbor period within which the general § 6501 period *shall not expire*.

The issue before this Court is whether the Government's assertion of a tax liability against individuals who participated in a tax shelter via a TEFRA partnership is barred by limitations. In *Badaracco v. Commissioner*[44] the Supreme Court expressly applied the general rule of *E.I. du Pont de Nemours & Co. v. Davis*[45] that statutes of limitation are strictly construed in favor of the Government to the particular situation of tax cases. While we submit that the plain meaning of the statutes involved shows that the FPAA here was timely issued (*i.e.*, was

[43] § 6501(a). *See also Andantech, L.L.C. v. Commissioner*, 331 F.3d 972, 976-977 (D.C. Cir. 2003) (" The plain language of § 6501 compels its application to all assessments.")

[44] 464 U.S. 386 (1984).

[45] 264 U.S. 456, 462 (1924).

issued when Mr. Tucker's assessment period had not yet expired), if a statute of limitations on the Government's ability to collect a tax admits of two interpretations, then the Supreme Court and numerous other courts hold that the statute should be construed in favor of the Government.[46]

In *AD Global*, the most recent of the three cases that have unanimously rejected Mr. Tucker's view of § 6229(a), this Court determined that the statute is ambiguous, and it adhered to the rule that statutes of limitations will be construed to permit the Government to pursue tax collection.[47] Although we respectfully submit it is clear that the issuance of the FPAA to Epsolon occurred while Mr. Tucker's 2001 tax year remained open, it is also clear that the *AD Global* Court applied the correct rule governing the resolution of any ambiguities in limitations upon tax collection.

---

[46] *See Badaracco v. Commissioner*, 464 U.S. 386 (1984); *United States v. Greene-Thapedi*, 398 F.3d 635, 637-638 (7th Cir. 2005); *Estate of Flandreau v. Commissioner*, 994 F.2d 91, 94 (2d Cir. 1993); *AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657 (2005); *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 542 (2000)

[47] 67 Fed. Cl. at 694.

### 1. The Plain Language of § 6229 Establishes a Minimum Period Within Which the General § 6501 Period Shall Not Expire.

The Court may determine the meaning of §§ 6501(a) and 6229(a) by looking directly to their plain language. The plain language of the two statutes read as follows:

| **26 U.S.C. § 6501(a)** | **26 U.S.C. § 6229(a)** |
|---|---|
| "Except as otherwise provided in this section, the amount of any tax imposed by this title **shall be assessed within** 3 years after the return was filed...the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." [Emphasis added.] | "Except as otherwise provided in this section, **the period for assessing** any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year **shall not expire before** the date which is 3 years after the later of-- (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions)." [Emphasis added.] |

Section 6501(a) states that any tax imposed by the Internal Revenue Code "shall be assessed" within three years after the taxpayer's return is filed. It provides no exception for tax attributable

to partnership items. "The plain language of § 6501 compels its application to all assessments."[48] The different language of section 6229(a) could not be plainer: It states that limitations "shall not expire **before**" three years from the date of the filing of the partnership return or the last day for the filing of the return without regard to extensions. Thus, § 6229 acts as a possible extension of the general § 6501 period.[49] Section 6501(n)(2) confirms this interpretation by referring readers to § 6229 "[f]or *extension* of [§ 6501's limitations] period in the case of partnership items."[50]

All of the courts that have considered this issue agree that § 6501 establishes the general limitations period within which all tax shall be assessed.[51] Section 6229, on the other hand, provides only a minimum period within which the § 6501 period for assessments attributable to partnership items shall not expire.[52] In their opinions, these judges explain that plain language,

---

[48] *Andantech, L.L.C. v. Commissioner*, 331 F.3d 972, 976-977 (D.C. Cir. 2003)

[49] *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 542 (2000). For example, if a partner files his tax return, but the partnership does not, § 6229 would extend the § 6501 period.

[50] 26 U.S.C. § 6501(n)(2) (emphasis added). *See also Rhone*, 114 T.C. at 542.

[51] *See Andantech*, 331 F.3d at 976 ("plain language of § 6501 compels its application to all assessments…no exceptions for partnership items"); *Rhone*, 114 T.C. at 542 ("6501 unequivocally provides the period of limitations within which any tax imposed by the Internal Revenue Code shall be assessed"); *AD Global*, 67 Fed. Cl. at 694 (asserted ambiguity resolved in favor of government). The concurrence in *Rhone* agreed that § 6501 is the general statute of limitations for tax attributable to partnership items, and that § 6229 provides only a minimum period within which the 6501 period shall not expire. *Id.* at 558. The concurrence disagreed, however, with the majority's conclusion that, under § 6229(d), an FPAA suspends the § 6501 period. *Id.* at 559-564.

[52] *Andantech*, 331 F.3d at 977 ("the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term 'shall not expire' that the provision is intended to dictate a minimum period, but not an absolute restriction"); *Rhone*, 114

policy, and legislative history all support the conclusion that § 6229 does not establish an independent and exclusive limitations period.

In *Rhone Poulenc Surfactants and Specialties, L.P. v. Commissioner*, for example, the United States Tax Court thoroughly explained the relationship between 6501 and 6229 in a fully reviewed opinion.[53] In that case, the partnership filed its 1990 tax returns by September 17, 1991, and the IRS issued an FPAA over three years later – almost six years later – on September 12, 1997.[54] The IRS asserted that the FPAA was timely because the *partner's* § 6501(e) six-year limitations period for substantial omission was open when the FPAA was issued.[55] The partnership, on the other hand, asserted that the FPAA was untimely because the § 6229 three-year period had expired before the FPAA was issued. The partnership asserted that § 6229 established an independent and exclusive limitations period for tax assessments attributable to partnership items. The Tax Court disagreed. It held that § 6501, not § 6229, "unequivocally" provided the general limitations period governing tax assessments attributable to partnership items.[56] Section 6229, on the other hand, provided only a "minimum" period within which the § 6501 period shall not expire.[57] In other words, § 6229 did not replace or except the general

---

T.C. at 542 ("6229 provides a minimum period of time for the assessment of any tax attributable to partnership items").

[53]*Rhone*, 114 T.C. 533. A fully reviewed opinion is one which has been reviewed by all the active judges on the Tax Court.

[54]*Id.* at 536-537.

[55]*Id.* at 537.

[56]*Id.* at 542.

[57]*Id.* at 542.

limitations period provided by § 6501; it provided a possible extension of the 6501 period.[58] Therefore, the six-year limitations period provided by § 6501(e) was available, and the partnership's summary judgment motion was denied.[59]

In a later case, *Andantech, L.L.C. v. Commissioner*, the D.C. Circuit agreed with and commended the Tax Court's analysis in *Rhone*.[60] The D.C. Circuit held that the Tax Court's analysis was "reasonable, persuasive, and ultimately convincing."[61] The D.C. Circuit analyzed §§ 6501 and 6229 and held that "[t]he plain language of § 6501 compels its application to all assessments."[62] The D.C. Circuit stressed that "[t]here are no exceptions for partnership items mentioned in the provision."[63] Section 6229, on the other hand, "rather than simply stating a three-year statute of limitations, indicates by the use of the term 'shall not expire' that the provision is intended to dictate a minimum period, but not an absolute restriction."[64] In sum, the D.C. Circuit held that the Rhone analysis was "mandated by the plain language of [§ 6229]."[65]

In *AD Global*, Judge Miller in the Court of Federal Claims considered *AD Global's* attempts to confuse § 6229's plain language. Nevertheless, the Court held that any ambiguity

---

[58]*Id.* at 542.

[59]*Id.* at 550-551.

[60]*Andantech*, 331 F.3d 972.

[61]*Id.* at 977.

[62]*Id.* at 976.

[63]*Id.* at 977.

[64]*Id.* at 977.

[65]*Id.* at 976.

should be "resolved in favor of the Government."[66] The opinion explained that the taxpayer's arguments did not "overcome the strong presumption in favor of allowing the Government to collect the taxes."[67]

**2. Legislative History Supports the Conclusion that § 6229 Does Not Establish an Exclusive and Independent Limitations Period.**

Because the language of §§ 6501 and 6229 is plain and unambiguous, the Court need not consider legislative history.[68] Nevertheless, the following discussion briefly explains why legislative history supports the conclusion that § 6229 does not establish an exclusive and independent limitations period.

Legislative history that directly addresses the issue concludes that § 6229 establishes only a minimum period. In 1992, for example, Congress considered various changes to § 6229 related to partner bankruptcies and partial settlements. These changes were not enacted until 1997, but the 1992 House and Senate reports considering these changes explain that the § 6229 period applies only if it is longer than the § 6501 period:

1. 1992 Ways and Means Committee Report on Proposal to Suspend Partner Statute of Limitations During Bankruptcy – "The period for assessing tax with respect to partnership items generally is the longer of the periods provided by § 6229 or § 6501."[69]

---

[66]*AD Global*, 67 Fed. Cl. at 671-676.

[67]*AD Global*, 67 Fed. Cl. at 694.

[68]*See, e.g., Blum v. Stenson*, 465 U.S. 886, 896 (1984) ("Where...resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.").

[69]*H.R. Rep. 102-631, Title IV, Subtitle C, Part II(3b)*, *reprinted in* 1992 WL 206185, at 142 (June 30, 1992). This proposal was ultimately enacted in 1997 and is codified as 26 U.S.C.

2. <u>1992 Ways and Means Committee Report on Proposal to Exclude Partnership Partial Settlements From 1-Year Assessment Rule</u> – "The period for assessing tax with respect to partnership items generally is the longer of the periods provided by § 6229 or § 6501."[70]

3. <u>1992 Senate Finance Committee's Report on Proposal to Suspend Partner Statute of Limitations During Bankruptcy</u> – "The period for assessing tax with respect to partnership items generally is the longer of the periods provided by § 6229 or § 6501."[71]

4. <u>1992 Senate Finance Committee's Report on Proposal to Exclude Partnership Partial Settlements From 1-Year Assessment Rule</u> – "The period for assessing tax with respect to partnership items generally is the longer of the periods provided by § 6229 or § 6501."[72]

Although this legislative history was not issued contemporaneously with § 6229's enactment, it is the most direct evidence the parties have of Congress's intent, and as the Supreme Court stated in *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, it is "entitled to significant weight."[73]

---

§ 6229(h).

[70]H.R. Rep. 102-631, Title IV, Subtitle C, Part II(5), *reprinted in* 1992 WL 206185, at *145 (June 30, 1992). This proposal was ultimately enacted in 1997 and is codified as 26 U.S.C. § 6229(f)(2).

[71]Senate Finance Committee's Technical Explanation of Finance Comm. Amend. to H.R. 11, Title IV, Subtitle C, Part B, 3(b), *printed in* 138 Cong. Rec. S11246, at *S11288 (August 3, 1992). This proposal was ultimately enacted in 1997 and is codified as 26 U.S.C. § 6229(h).

[72]Senate Finance Committee's Technical Explanation of Finance Comm. Amend. to H.R. 11, *printed in* 138 Cong. Rec. S11246, Title IV, Subtitle C, Part B, 5, at *S11288 (August 3, 1992). This proposal was ultimately enacted in 1997 and is codified as 26 U.S.C. § 6229(f)(2).

[73]*Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980). *See also Green v. Commissioner*, 963 F.2d 783, 788 (5th Cir. 1992) ("this legislative history, although not contemporaneous, supports the conclusion that 'the limitations period for assessing a tax liability

## III. The § 6501(a) Limitations Period for Assessing Mr. Tucker with 2001 Tax Attributable to Epsolon's 2001 Partnership Items Has Not Expired and is Suspended.

As is shown above, § 6501(a) is the general statute of limitations for assessing partnership items and § 6229 provides for a minimum period before which the statute of limitations may not expire. We show below that the period within which the Service could assess Mr. Tucker with 2001 tax attributable to Epsolon's 2001 partnership items has not expired pursuant to § 6501(a), by reason of the suspension contained in § 7609(e)(2). Accordingly, the FPAA was timely issued. Further, the issuance of the FPAA and filing of this suit has suspended the statute for assessing taxes attributable to partnership items for Mr. Tucker's taxable year ending December 31, 2001.

### A. Section 7609(e)(2) Suspended the Statute of Limitations of § 6501.

As explained above, the statute limiting assessment against Mr. Tucker of 2001tax attributable to Epsolon's 2001 audit adjustments is § 6501(a).[74] Section 6501(a) generally requires the IRS to assess tax within three years after the relevant tax return is filed. The relevant tax return is the return that the taxpayer must file, not the return filed by an entity from which the taxpayer receives taxable income or some other item.[75] In other words, the relevant tax return for

---

against a shareholder begins to run from the date that the individual, and not the S corporation, files his return.'").

[74] *See Andantech*, 331 F.3d at 976; *Rhone*, 114 T.C. at 542.

[75] § 6501(a) ("the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit"). *See also Bufferd v. Commissioner*, 506 U.S. 523, 527-528 (1993) ("the S corporation's return, which petitioner asserts triggers the beginning of the limitations period, is deficient precisely because it does not contain all of the information necessary to compute a shareholder's taxes. If the Internal Revenue Service were required to rely on that return, it would be forced to conduct its assessment on the basis of incomplete

an individual is the individual tax return, not a partnership return from which the taxpayer receives an income item.

Mr. Tucker's individual tax return for the year 2001 was deemed filed on April 15, 2002.[76] The three-year statute of § 6501(a), but for the suspension of § 7609(e)(2), would have expired on April 15, 2005.

Section 7609(e)(2) provides as follows:

> (2) SUSPENSION AFTER 6 MONTHS OF SERVICE OF SUMMONS. – In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period –
>
> (A) beginning on the date which is 6 months after the service of such summons, and
>
> (B) ending with the final resolution of such response.

In this case, the District Court for the Northern District of Illinois issued its order permitting the Government to serve the "John Doe" summons on October 14, 2003. The summons was served on October 15, 2003. Six months after the service of that summons was April 15, 2004. Therefore, the date the statute of limitations was suspended was April 15, 2004 – 365 days prior to the date the statute of limitations would have expired pursuant to § 6501.[77] Pursuant to § 7906(e)(2)(B), the suspension ended more than 10 months later on the date of the

---

information").

[76]A tax return filed before the due date is considered as filed on the due date. § 6501(b)(1).

[77]The original date that the statute of limitations would have expired was April 15, 2005. From April 15, 2004 to April 15, 2005 is 365 days.

final resolution of the summons – *i.e.*, no earlier than March 3, 2005, when Sidley Austin provided the full information requested by the summons. Because the statute was suspended when the Service had 365 days remaining on the statute of limitations, once the suspension of § 7906(e)(2) was lifted on March 3, 2005, the Service had 365 days from that date within which to assess the tax. The date which is 365 days from March 3, 2005, was March 3, 2006. The FPAA was mailed on June 17, 2005 – at a time when Mr. Tucker's taxable year ending December 31, 2001 was open.

The reasons behind the suspension provided in § 7609(e)(2) are obvious. Under the prior law, "if the IRS litigated to obtain access to the third-party records, the statute of limitations can expire prior to final determination as to the availability of the records."[78] The law was changed to suspend the statute of limitations until the summoned party's response was finally resolved.[79] Here, Mr. Tucker actively attempted – in two pieces of litigation – to prevent the Service from discovering his identity and the fact that Epsolon engaged in an abusive tax shelter. The potential effect, but for the suspension of § 7609(e)(2), would have been to "run out the clock" on the statute of limitations for assessment.[80] Mr. Tucker's own behavior in these cases illustrates the validity of Congress' concern that the statute of limitations might run out while

---

[78]H.R. Conf. Rep. 99-841, 1986-3 C.B. (vol. 4), at 809.

[79]§ 7609(e)(2)(B).

[80]In fact, as quoted in the Government's Reply Brief on its Motion to Stay, the District Court in the Texas litigation commented on Mr. Tucker's tactics in that litigation by observing that the plaintiffs behavior in obtaining an extension in that Court was "puzzling . . . unless it was to run out the clock." *See* Exhibit 1 to the Government's Reply Brief on its Motion to Stay, Order of the District Court for the Northern District of Texas, *John Doe 1 & John Doe 2 v. KPMG, L.L.P.*, Civil No. 3: 03-CV– 2036, page 10, n. 3.

response to the summons was unresolved. It is this very type of attempt to "run out the clock" that the suspension of § 7609(e)(2) was designed to prevent. The statute of limitations for assessing taxes against Mr. Tucker for his 2001 taxable year was suspended so that the year was open at the time the FPAA issued.

**B. The Statute of Limitations Remains Suspended.**

As shown above, the FPAA was mailed on June 17, 2005, when Mr. Tucker's individual year ending December 31, 2001, remained open for assessment until March 3, 2006, pursuant to § 7609(e)(2). Upon the mailing of the FPAA, § 6229(d)(1) operates to further suspend the statute of limitations of § 6501 during the pendency of the instant suit. Section 6229 (d)(1) provides:

> (d) SUSPENSION WHEN SECRETARY MAKES ADMINISTRATIVE ADJUSTMENT.– If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) . . . shall be suspended –
>
> (1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and
>
> (2) for 1 year thereafter.

The assessment period for Mr. Tucker's 2001 taxable year was suspended when the IRS issued an FPAA to Epsolon's partners on June 17, 2004. The Tax Court held in Rhone that, under § 6229(d), the issuance of an FPAA suspends the § 6501 assessment limitations period for tax attributable to partnership items.[81] Since § 6229(d) suspends the "period specified in

[81] *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 551-557 (2000). *See also AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657, 694 (2005) ("The 'period specified in subsection (a)' means the 'period for assessing any tax ... which is attributable to any partnership item'").

subsection [6229](a),"[82] the Tax Court began by identifying the limitations period referred to in § 6229(a). Section 6229(a) refers to "the period for assessing any tax…which is attributable to any partnership item."[83] Section 6229(a) affects this assessment period by stating that it "shall not expire before," but it does not create a new and independent limitations period.[84] Thus, the Tax Court held that § 6229(a) refers to the general limitations period established by § 6501 and § 6229(d) suspends that period.[85]

This interpretation makes sense, because once the IRS issues an FPAA, two other partnership provisions, §§ 6221 and 6225, prohibit the IRS from assessing a tax liability attributable to partnership items.[86] If a suit challenging the FPAA is filed in a district court or in the Court of Federal Claims, the IRS may not assess for 150 days (*i.e.*, the period within which a TEFRA suit may be filed).[87] Accordingly, if § 6229(d) did not suspend the general § 6501 limitations period for assessments, then the § 6501 limitations period could expire while the IRS was prohibited from assessing tax attributable to partnership items. Congress has shown in other statutes, like § 6503, that it does not intend assessment limitations periods to expire while the

---

[82] § 6229(d).

[83] § 6229(a).

[84] *Rhone*, 114 T.C. at 542 ("Section 6229 provides a minimum period of time for the assessment of any tax attributable to partnership items"); *Andantech, L.L.C. v. Commissioner*, 331 F.3d 972, 977 (D.C. Cir. 2003) ("the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term 'shall not expire' that the provision is intended to dictate a minimum period, but not an absolute restriction.").

[85] *Rhone*, 114 T.C. at 552.

[86] *Maxwell v. Commissioner*, 87 T.C. 783 (1986). *See also Rhone*, 114 T.C. at 553-554.

[87] 26 U.S.C. § 6225(a)(1).

IRS is prohibited from assessing.[88]

In this case, § 7609(b)(2)(B) suspended Mr. Tucker's 2001 assessment limitations periods until March 3, 2006 – well after the IRS issued a 2001 FPAA to Epsolon's partners on June 17, 2005. Pursuant to § 6229(d), that period remains suspended until a decision of this Court is final and for one year thereafter.

### IV. In the Alternative, Pursuant to RCFC 56(f) the United States Moves that the Court Refuse Plaintiff's Application for Judgment.

If the Court were to determine that the general 3 year statute of limitations contained in § 6501(a) was not open on the date the FPAA was issued, then the United States would need to conduct discovery to determine whether the unlimited statute of limitations of § 6501(c)(1) applies because Mr. Tucker had filed a false or fraudulent return with intent to evade tax. If the Court reaches this issue, then the United States moves, pursuant to RCFC 56(f), that the Court refuse plaintiff's application for judgment because the Government will require discovery into the merits of the Tucker/Epsolon transaction to determine whether such a position would be appropriate. As shown below and in the Government's Brief in Support of Suspension of Proceedings, that fraud-related discovery will necessarily interfere with the criminal proceeding in the Southern District of New York.

---

[88] *See* 26 U.S.C. §§ 6503(a) (suspension during deficiency proceeding while IRS is prohibited from assessing), 6503(h) (suspension during bankruptcy proceeding while IRS is prohibited from assessing).

Rule 56(f) provides:

> Should it appear from the affidavits[89] of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Where a taxpayer has filed a false or fraudulent return with the intent to evade tax, § 6501(c)(1) provides for an unlimited statute of limitations for purposes of assessing tax with respect to that taxable year. As stated in the Government's Brief in Support of its Motion to Suspend Proceedings, the individuals, entities, and transactions involved in this case are intimately related to a broad-based conspiracy to develop, promote, sell, and implement various illegal tax shelters by the worldwide accounting firm KPMG LLP and others.[90] On August 29, 2005, KPMG admitted and accepted responsibility for violations of law with respect to its involvement in developing, promoting, selling, and implementing illegal tax shelters during the period from 1996 through 2002 and has agreed to pay $456,000,000 to the United States as a punitive fine, restitution, and penalties to the IRS stemming from its involvement with the illegal tax shelters.[91] The IRS determined that Epsolon had utilized a tax shelter involving option

---

[89]The affidavits and supporting exhibits on which defendant relies in support of its alternative motion under RCFC 56(f) are attached to the United States Motion to Suspend Proceedings and Brief in Support.

[90] *See* "The Role of Professional Firms in the U.S. Tax Shelter Industry," Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, at 11, Senate Report 109-54, 109th Cong., 1st Session (2005) ("Subcommittee Report").

[91] *See KPMG Prosecution Agreement* (attached to the Government's Motion to Stay as Exhibit 1 to the Declaration of David House; *KPMG Information* (attached to the Government's Motion to Stay as Exhibit 2 to the Declaration of David House); *KPMG Statement of Facts* (attached to the Government's Motion to Stay as Exhibit 3 to the Declaration of David House).

positions in foreign currency to produce an artificial loss for the year 2001 to be reflected on the partners' income tax returns in the amount of $13,890,954. (Exhibit A to plaintiff's complaint.) The Service further determined that, *inter alia*, the transactions giving rise to the claimed loss were not entered into with a profit motive, lacked economic substance, had no bona fide business purpose, and were shams. The United States expects to prove at trial that these losses were calculated to be used by Mr. Tucker to avoid paying income taxes on substantial amounts of income. Furthermore, Mr. Tucker took aggressive steps to prevent his identity from being disclosed to the Service in response to summonses seeking the identities of taxpayers who had participated in tax shelters.

Thus, the potential exists that the United States would raise the issue of whether Mr. Tucker had filed a false or fraudulent return with the intent to evade tax for his 2001 taxable year with the result that the unlimited statute of limitations of § 6501(c)(1) applies for that year and the FPAA was issued timely. In order to determine whether such a position is appropriate, the United States requires discovery into the merits of the Tucker/Epsolon transaction--both document discovery and depositions--including inquiries into KPMG's marketing of the SOS shelter to Mr. Tucker, and the participation in implementing the transaction by various KPMG personnel and R.J. Ruble, who is an indicted defendant in the criminal case proceeding in the Southern District of New York. As explained in the letter dated January 13, 2006 from the United States Attorney's Office for the Southern District of New York, the Epsolon/Tucker transaction is part of the matters contained in the Superceding Indictment filed in *United States v.*

*Jeffrey Stein, et al.*, S05 Crim. 888 (LAK) (SDNY).[92] For reasons stated in the Government's Brief in Support of Defendant's Motion to Suspend, that discovery will necessarily interfere with the criminal case. Therefore, the Government requests that, if the Court reaches the issue of whether the unlimited statute of limitations of § 6501(c)(1) were to apply because Mr. Tucker filed a false or fraudulent return with the intent to evade tax, the Court refuse plaintiff's application for judgment pursuant to RCFC 56(f) to allow discovery on this issue after the case is no longer stayed.

**CONCLUSION**

The statute of limitations of § 6501 governs the assessment of tax attributable to partnership items. As of the issuance of the FPAA, the statute of limitations of § 6501 was open and suspended pursuant to § 7609(e)(2)(B). The statute of limitations to assess tax against Mr. Tucker for 2001 remains open and suspended as a result of the issuance of the FPAA and the filing of this suit pursuant to § 6229(d)(1). Therefore the United States asks the Court to grant the United States Motion for Partial Summary Judgment by holding that the adjustments reflected in the 2001 FPAA are not barred by limitations, so that the Court may determine Epsolon's 2001 partnership items, in order that the IRS may thereafter assess tax against Mr. Tucker.

[92] Exhibit 7 to the Declaration of David House filed with the Government's Brief in Support of Motion to Stay Proceedings.

In the alternative, if the Court reaches the issue of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax resulting in the application of the unlimited statute of limitations of § 6501(c)(1), the Court should refuse plaintiff's application for judgment pursuant to RCFC 56(f).

In either event, the Court should leave in place its Order staying all proceedings in this case.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims