**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **EPSOLON LIMITED, by and through SLIGO (2000) COMPANY, INC., Tax Matters Partner,** | |
| **Plaintiff,** | **No. 05-999 T** |
| **v.** | **Judge Margaret M. Sweeney** |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE AND REPLY TO CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION UNDER RULE 56(f), EPSOLON'S MOTION FOR 56(f) RELIEF AND FOR LEAVE TO CONDUCT DISCOVERY, AND BRIEF IN SUPPORT THEREOF**

A. Duane Webber
Attorney of Record

George M. Clarke III
Of Counsel

Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000
(202) 452-7074

Attorneys for Plaintiff,
Epsolon Limited

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

I. STATEMENT OF THE QUESTIONS INVOLVED ..... 1

II. STATEMENT OF THE CASE ..... 4

A. The Section 6229 Period Is Closed ..... 4

B. The Period of Limitations Under Section 6501 Relating to the Tuckers Naturally Expired on April 15, 2005, Unless It Was Tolled by Operation of Another Statute ..... 5

C. The Section 6501 Period Was Not Tolled ..... 5

1. The Section 6501 Period Was Not Tolled By Section 6503(a)(1) ..... 5

2. The Section 6501 Period Was Not Tolled By Section 7609(e)(2) ..... 5

D. The Tax Attributable to the Partnership Items At Issue in This Proceeding Was Assessed on March 22, 2006 ..... 11

III. ARGUMENT ..... 11

A. The Section 6501 Period Expired on April 15, 2005, Two Months Prior to Issuance of the FPAA. ..... 12

1. The Natural Expiration of the Section 6501 Period Was April 15, 2005 ..... 12

2. The SABW Summons Never Tolled the Section 6501 Period ..... 13

a. As of April 14, 2004, Defendant Possessed All of the Information Requested from SABW With Respect to Mr. Tucker ..... 13

b. Only "the Name, Address and Taxpayer Identification Number" of Mr. Tucker Was Necessary to Fully Resolve the SABW Summons With Respect to Mr. Tucker ..... 15

B. AD Global and Grapevine Are Wrongly Decided, the Section 6501 Period Does Not Control the Assessment of Tax With Respect to Partnership Items and, Even if it Does, an FPAA Does Not and Can Not Extend That Period ..... 17

1. The Holdings in AD Global and Grapevine That Section 6229 Is Not a Separate And Exclusive Period of Limitations Are Wrong ............17

2. The Holdings in AD Global and Grapevine That the Issuance of an FPAA Tolls Section 6229 Are Wrong ......................................................21

C. Defendant's Fraud Allegations are Specious and Baseless\ and Ultimately Unimportant to the Matter Before the Court..........................................................24

IV. CONCLUSION ...........................................................................................................26

# TABLE OF AUTHORITIES

## STATUTES

26 U.S.C. §6212 .......... 18, 19

26 U.S.C. §6213 .......... 18, 19

26 U.S.C. §6221 .......... 18, 19

26 U.S.C. §6223 .......... 25

26 U.S.C. §6225 .......... 18, 19, 20

26 U.S.C. §6229 .......... *passim*

26 U.S.C. §6230 .......... 5, 19, 20

26 U.S.C. §6501 .......... *passim*

26 U.S.C. §6501(a) .......... *passim*

26 U.S.C. §6501(c) .......... 3, 4, 22, 23, 25

26 U.S.C. §6502 .......... 5, 19

26 U.S.C. §6503 .......... 5, 19, 20, 21

26 U.S.C. §7609 .......... *passim*

## CASES

AD Global v. United States, Fed. Cir. No. 06-5046 .......... *passim*

Grapevine Imports, Ltd. v. United States, Docket No. 05-296
(Slip Op. Attachment A) .......... *passim*

Griffiths v. Commissioner, 50 F.2d 782 (7th Cir. 1931) .......... 26

John Doe 1 v. United States, 325 F. Supp. 2d. 746 (N.D. Tex. 2004) .......... 9

Powell v. United States, 379 U.S. 48, (1964) .......... 14

Ohio v. Reiner, 532 U.S. 17 (U.S. 2001) .......... 25

Tucker v. Commissioner, Tax Court No. 12307-04 .......... 10, 24

Twining v. New Jersey, 211 U.S. 78, (1908) .......... 25

United Savings Association of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365, (1988)....................23

United States v. Garrett, 571 F.2d 1323 (5th Cir. 1978)....................14

Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379 (Fed. Cir. 1998)....................23

**MISCELLANEOUS**

R. Ct. Fed. Cl., Appendix A....................3

R. Ct. Fed. Cl. 26(d)....................3

R. Ct. Fed. Cl. 56(f)....................1, 2, 3, 27

**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **EPSOLON LIMITED, by and through SLIGO (2000) COMPANY, INC., Tax Matters Partner,** | ) | |
| **Plaintiff,** | ) | **No. 05-999 T** |
| **v.** | ) | **Judge Margaret M. Sweeney** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE AND REPLY TO CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION UNDER RULE 56(f), EPSOLON'S MOTION FOR 56(f) RELIEF AND FOR LEAVE TO CONDUCT DISCOVERY, AND BRIEF IN SUPPORT THEREOF**

Plaintiff, Epsolon Limited ("Epsolon"), by and through its tax matters partner, Sligo (2000) Company, Inc. ("Sligo") hereby responds and replies to the Cross-Motion of the United States for Partial Summary Judgment or, in the Alternative, Motion Under Rule 56(f) and Brief in Support Thereof, dated May 12, 2006 ("Defendant's Motion"), which Defendant filed in response to Plaintiff's Motion for Summary Judgment and Brief in Support Thereof, filed on April 11, 2006 ("Plaintiff's Motion"). Plaintiff substantively opposes the granting of Defendant's Motion (in either alternative), and in the alternative, moves the Court pursuant to R. Ct. Fed. Cl. 56(f) to refuse Defendant's application for partial summary judgment and to allow Plaintiff leave to conduct discovery into various allegations made by Defendant.

## I. STATEMENT OF THE QUESTIONS INVOLVED.

In Plaintiff's Motion, Plaintiff moves for summary judgment because the Notice of Final Partnership Administrative Adjustment ("FPAA") for the taxable year ended December 31, 2001

("2001"), which the Internal Revenue Service (the "Service") issued on June 17, 2005 (more than two months after the expiration of ***both*** the three year period of limitations under section 6229[1] relating to the FPAA and the three year period of limitations under section 6501 relating to Mr. Keith A. Tucker and his wife, Laura B. Tucker (the "Tuckers") (to the extent even relevant)[2]), was untimely and can not operate to adjust Plaintiff's partnership items for 2001. (See Plaintiff's Motion at 2-3.) In support of its motion for summary judgment, although the period of limitations under section 6229 was closed, Defendant argues that the FPAA was timely because the period of limitations under section 6501 relating to the Tuckers was tolled, first by the issuance of a "John Doe" summons to Sidley Austin Brown & Wood ("SABW" and the "SABW Summons") (Defendant's Motion at 21-24), and second by the issuance of the FPAA in this case (Defendant's Motion at 24-26). In the alternative (i.e., if the period of limitations was not tolled), although Defendant requested and received a stay in the proceedings in this case and has not filed an Answer, Defendant asks this court for an order under R. Ct. Fed. Cl. 56(f) to permit Defendant to conduct discovery as to whether Plaintiff's tax return for 2001 was

---

1 Section 6229 provides that "[e]xcept as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of – (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such year (determined without regard to extensions)."

2 Section 6501(a) provides that "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." That provision goes on to limit its application to "return[s] required to be filed by the taxpayer (and . . . not . . . return[s] of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit) [such as a partnership like Epsolon]." The question of whether section 6229 is the exclusive period of limitations for the assessment of partnership items and whether section 6501 has any bearing whatsoever on the question is currently before the Federal Circuit in AD Global v. United States, Fed. Cir. No. 06-5046. Judge Allegra also recently issued an opinion in Grapevine Imports, Ltd. v. United States, Docket No. 05-296 (Slip Opinion filed June 12, 2006 attached hereto as Attachment A), that also may be addressed by the Federal Circuit in the near future.

fraudulent, and thus as to whether section 6501(c)(1)[3] allows Defendant an unlimited period of limitations in which to adjust Plaintiff's partnership items (Defendant's Motion at 26-29).

Plaintiff's position with respect to the foregoing is set out in detail in the Argument below (Section III, infra). However, for clarity, Plaintiff's responses to the Government's positions are summarized below:

Primary Position. The Court should grant Plaintiff's Motion and deny Defendant's Motion, and should hold that, based on the law and the uncontroverted factual record, the periods of limitations set out in ***both*** section 6229 (to the extent that provision represents a period of limitations) ***and*** section 6501(a) (to the extent that provision is even relevant to the inquiry) were closed prior to the date on which the Service issued the FPAA, the FPAA was not timely, and no partnership adjustments are properly made pursuant to the FPAA. (See Sections III.A and C, infra.)

First Alternative. If the Court concludes that the period of limitations under section 6501 for the Tuckers' 2001 taxable year was tolled by the SABW Summons, the Court should await resolution of the Federal Circuit's ruling in the appeal of AD Global.[4] In the interim, pursuant to R. Ct. Fed. Cl. 56(f), Plaintiff should be permitted[5] to engage in discovery to refute various allegations made by Defendant. (See Section III.B, infra.)

Second Alternative. If the Court concludes that the periods of limitations in ***both*** section 6229 (relating to Plaintiff) ***and*** section 6501(a) (relating to

---

[3] Section 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

[4] As discussed in more detail in Section III.B., infra, if the Federal Circuit rules in favor of the taxpayer in AD Global (as Plaintiff anticipates), the pending motions necessarily will be resolved in favor of Epsolon. However, if the Federal Circuit rules in favor of the United States in that case, that ruling will not necessarily resolve this case in favor of Defendant because the question of whether the section 6501(a) period in this case was in fact open was not at issue in AD Global.

[5] Because Defendant has not yet filed its Answer in this matter, the parties are unable to confer as required by R. Ct. Fed. Cl., Appendix A so as to begin the discovery period pursuant to R. Ct. Fed. Cl. 26(d). In the first and second alternatives, Plaintiff requests that the Court grant Plaintiff leave to issue discovery in this matter.

> the Tuckers, to the extent that provision is even relevant) expired prior to the date on which the Service issued the FPAA, ***but*** that there is an open question as to whether section 6501(c) may apply (because of Defendant's alternative request for leave to search for any evidence of fraud), the Court should grant Plaintiff summary judgment on the question of whether the ***three year periods*** in section 6229 and 6501(a) are closed, deny Defendant's Motion as to its primary position, and deny Defendant any discovery relating to any potential fraud claim given that Defendant can pursue any such claim without regard to any period of limitations. (See Section III.C, infra.)

## II. STATEMENT OF THE CASE.

### A. The Section 6229 Period Is Closed.

On April 10, 2002, Epsolon filed its U.S. Return of Partnership Income for 2001 ("Epsolon's return"). (Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact ("Defendant's Response") ¶1.) The service received that return on April 15, 2002. (Defendant's Response ¶2-4.) Pursuant to section 6229(a), the three year "period" of section 6229 (***whether*** that period is a "potential extension" of section 6501 as Defendant alleges (see Defendant's Motion at 13-20), ***or*** a separate and exclusive period of limitations as Plaintiff explains (see Section III.B, infra)) (hereinafter the "Section 6229 Period") began to run on April 15, 2002 and expired on April 15, 2005.

The Service issued the FPAA on June 17, 2005. (Defendant's Response ¶5.)

Because the Section 6229 Period expired over two months prior to the issuance of the FPAA, the FPAA was timely only if (i) the period of limitations under section 6501 is relevant to the question of whether the FPAA is timely, and (ii) that period was itself open as of June 17, 2005 (the date the FPAA was issued).

**B. <u>The Period of Limitations Under Section 6501 Relating to the Tuckers Naturally Expired on April 15, 2005, Unless It Was Tolled by Operation of Another Statute</u>.**

The Tuckers, who were the ultimate owners of a majority of Epsolon through their ownership of Sligo, filed their U.S. Federal income tax return for 2001 on April 10, 2002. (Defendant's Response ¶6.) The Service received that return. (Defendant's Response ¶7.) That return was thus timely filed prior to the unextended due date of that return. (Defendant's Response ¶8.) Pursuant to section 6501(a), the three year period of section 6501 (***whether*** that period is relevant to the assessment of tax with respect to partnership items as Defendant alleges (<u>see</u> Defendant's Motion at 13-20), ***or*** not as Plaintiff explains (<u>see</u> Section III.B, <u>infra</u>), hereinafter the "Section 6501 Period") began to run on April 15, 2002 and naturally expired on April 15, 2005 (unless it was tolled pursuant to another statutory provision).

**C. <u>The Section 6501 Period Was Not Tolled</u>.**

1. <u>The Section 6501 Period Was Not Tolled By Section 6503(a)(1)</u>.

Although the Service issued to the Tuckers on April 14, 2005, a document styled as a Statutory Notice of Deficiency (Defendant's Response ¶9), the United States Tax Court determined that such document was not a valid Notice of Deficiency when issued (Defendant's Response ¶10). Accordingly, section 6503(a)(1)[6] did not toll the Section 6501 Period.

2. <u>The Section 6501 Period Was Not Tolled By Section 7609(e)(2)</u>.

On October 14, 2003, the United States District Court for the Northern District of Illinois issued an order granting leave for the Service to serve the SABW Summons. (Defendant's

[6] Section 6503(a)(1) provides that "[t]he running of the period of limitations provided in section 6501 or 6502 (or section 6229, but only with respect to a deficiency described in paragraph (2)(A) or (3) of section 6230(a) [concerning so-called "substantive affected items" and "converted items" not at issue here]," shall be suspended upon the issuance of a notice of deficiency.

Proposed Findings of Uncontroverted Fact ("DPFUF") ¶2.) The SABW Summons was served on October 15, 2003. (DPFUF ¶3.) The SABW Summons required SABW to produce "the ***name address and taxpayer identification number*** for each United States ***taxpayer***" that participated in certain transactions. (DPFUF ¶4 (emphasis added).) During the summons enforcement process, Mr. John A. Lindquist, Esq., the Department of Justice Attorney "assigned to enforce the [SABW Summons]" (Declaration of John Lindquist, dated May 9, 2006 filed with Defendant's Motion (the "Lindquist Declaration") ¶2 ) represented to the Northern District of Illinois that "[t]he [SABW Summons] ***seeks only identities***." (United States' Supplemental Memorandum in Opposition to Intervention, April 13, 2004 at 2 (attached as Exhibit I to the Declaration of George M. Clarke III, dated June 12, 2006 (the "Clarke "Declaration")) (emphasis in original).) Mr. Lindquist also emphasized that "***the summons seeks only the [intervening John Does'] identities***." (Id. at 9 (emphasis in original).)

On December 27, 2004, the United States petitioned to enforce the SABW Summons. (DPFUF ¶7). Based on this petition to enforce, and pursuant to various orders issued by the Northern District of Illinois, on January 22, 2004, Mr. Tucker, through his attorney Thomas V.M. Linguanti, Esq., of the Chicago office of Baker & McKenzie LLP, asserted his attorney-client privilege and instructed SABW not to disclose his confidential communications, including his identity, pursuant to the SABW Summons. (DPFUF ¶10.) Based on the assertions of attorney-client privilege by various taxpayers identified by SABW, the Northern District of Illinois issued an order that provided procedures for those identified but then unnamed taxpayers to attempt to intervene in the summons enforcement action in order to assert that privilege. (DPFUF ¶11.) In compliance with those procedures, on February 26, 2004, Mr. Tucker, through Mr. Linguanti, filed a Motion to Intervene and Motion for Protective Order, which asserted Mr.

Tucker's attorney-client privilege as to the information requested under the SABW summons. (DPFUF ¶12.) Mr. Tucker was identified as "Baker Doe 1" in that motion (and in subsequent filings with and opinions by the court). (Id.) As of the time of that filing, the United States thus had direct knowledge that SABW had identified "Baker Doe 1" as a taxpayer whose identity SABW believed was responsive to the SABW Summons. Accordingly, as of February 26, 2004, the only information that the United States required to resolve the SABW Summons as to Mr. Tucker was the "name, address, and taxpayer identification number" of "Baker Doe 1." (Lindquist Declaration, Exhibit 2.)

Mr. Tucker also brought an action in the United States District Court for the Northern District of Texas against KPMG, LLP ("KPMG") to prevent KPMG from violating its fiduciary duties to Mr. Tucker by disclosing his privileged communications to the IRS in response to a summons issued to KPMG. See Doe 1 v. KPMG, LLP, Dkt. No. 03-2036 (N.D. Tex Filed September 8, 2003). As a result of various developments in this action (the "Texas Action") and the SABW summons enforcement proceeding in Illinois (the "Illinois Action") the United States received the "name, address, and taxpayer identification number" of "Baker Doe 1" (i.e., Mr. Tucker) as requested in the SABW summons.[7]

In compliance with a March 4, 2004 Order in the Illinois Action, Mr. Gregory S. Lynam, Esq., another Baker & McKenzie LLP attorney based in Chicago, provided Mr. Lindquist with engagement letters between the Baker Does and SABW. (Clarke Declaration, Exhibit J.) One of these engagement letters contained a fax banner from KPMG's New York office. (Id. at 4.) Five days later, on March 9, 2004, Mr. Stuart D. Gibson, Esq., the DOJ attorney assigned to the Texas

[7] As in the Illinois Action, in the Texas Action Mr. Tucker sought to protect his interests as a "John Doe" (in Illinois as a "John Doe" Intervenor (Baker Doe 1 as identified above, in connection with one Mr. Robert L. Hechler, "the Baker Does"), and in Texas as a "John Doe" plaintiff (in connection with Mr. Hechler, "the Texas Does").

Action and to a summons enforcement action against KPMG in Department of Justice Tax Division v. KPMG, LLP, Doc. No. 02-0295 (D.D.C) (the "DC Action")), forwarded these engagement letters to Mr. Armando Gomez, Esq., a Skadden, Arps, Slate, Meagher & Flom ("Skadden Arps") attorney representing KPMG in the DC Action. (Clarke Declaration, Exhibit K.) In the transmittal letter that conveyed the engagement letters to Mr. Gomez, Mr. Gibson requested that Mr. Gomez have his client, KPMG, review the engagement letters and provide, inter alia, "a list of participants" in those transactions by close of business on March 12, 2004. (Id. at 1.) Sometime between March 9, 2004 and March 30, 2004, Messrs Gibson and Skadden Arps personnel discussed this matter and on March 31, 2004, in preparation for an April 1, 2004 status conference in the DC Matter, Mr. Robert S Bennett of Skadden Arps provided Mr. Gibson with a letter, responding to, inter alia, Mr. Gibson's March 9, 2004 letter, which explained that "[a]s we have discussed, [the Texas Does] in that matter may have been the recipients of the engagement letters referenced in one of your letters to us dated March 9, 2004." (Clarke Declaration, Exhibit L at 2.)

Plaintiff does not know what Mr. Gibson and Mr. Gomez or other Skadden Arps personnel discussed in the conversation referenced in the March 31, 2004 letter from Mr. Gomez. Plaintiff also does not know what other conversations Mr. Gibson had with Mr. Gomez, Mr. Lindquist, or others prior to or after receiving the SABW engagement letters from Mr. Lindquist. However, sometime prior to April 1, 2004, Mr. Gibson learned that the Texas Does were the Baker Does. In a hearing on April 1, 2004, Mr. Gibson represented that fact to Chief Judge Hogan of the District Court for the District of Columbia as follows:

> [T]here is a hearing in Chicago on a summons enforcement case [the SABW case] in which [the Texas Does] are trying to withhold their names in that case. So they are fighting a multifront war ***and we hope either today or some time next week we'll be able to get those names***.

Trans. of Proc., April 1, 2004 (Clarke Declaration, Exhibit M) at 20-21 (emphasis added).)

In the Texas Action, Mr. Tucker submitted various documents to the Court under seal, including his own declaration (Clarke Declaration, Exhibit N), which set forth, inter alia, his name and address. (Id. at 1). KPMG also submitted under seal an additional 2,499 pages of materials that KPMG designated as "Exhibit E." Exhibit E contained tax returns, financial statements, bank statements, workpapers, internal KPMG memoranda, and other similar materials that outlined in great detail: (i) the name, address, and taxpayer identification number of Mr. Tucker; (ii) the names, addresses, and taxpayer identification numbers of the other parties to the transactions in which Mr. Tucker engaged; and (iii) specific information regarding the Mr. Tucker's transactions. Attached hereto as Exhibit O to the Clarke Declaration is an excerpt from these materials. The declaration and other materials in "Exhibit E" contained all of the information expressly requested in the SABW summons with respect to Mr. Tucker. See Exhibit N at 1 (name and address); Exhibit O at "KPMG App. 1002" (taxpayer identification number). On April 12, 2004, the Northern District of Texas unsealed Mr. Tucker's declaration and all 2,499 pages of "Exhibit E," which allowed Mr. Gibson (or one of his agents) to literally walk into the courthouse in Dallas and copy those items (which he did on April 12, 2004). See generally John Doe 1 v. United States, 325 F. Supp. 2d. 746 (N.D. Tex. 2004). Accordingly, as of April 13, 2004, the United States, as an intervenor in the case, had complete copies of the declaration of Mr. Tucker and the 2,499 pages of materials in Exhibit E. See Intervenor-Defendant's Memorandum in Opposition to Plaintiffs' Emergency Motion to Alter or Amend Judgment, dated April 13, 2004 at 2 (explaining that "[t]he United States has already obtained copies of [such] documents") (Clarke Declaration, Exhibit P).

Based on the foregoing disclosure, on April 14, 2004, Mr. Lindquist, (counsel for the United States in the SABW matter), initiated a telephone call to Mr. Linguanti, counsel for Mr. Tucker in the SABW matter, and informed Mr. Linguanti in a telephone voice message that Defendant:

(i) had discovered the identity of Mr. Tucker;

(ii) knew that Mr. Tucker was Baker Doe 1; and

(iii) would not oppose a motion to withdraw Baker Doe 1 from intervention in the SABW matter because the knowledge of the United States with respect to the foregoing matters "resolves your issues in this case."

(Declaration of Thomas V.M. Linguanti, dated June 10, 2006, at 2.) Because the United States possessed the identifying information relating to Mr. Tucker that was requested in the SABW summons, on April 14, 2004, Mr. Tucker, through counsel, filed an unopposed Motion to Withdraw Motion to Intervene and Motion for Protective Order. (DPFUF ¶¶ 13-14.)

During this time Mr. Gibson was involved in informing various personnel at DOJ and the IRS of Mr. Tucker's identity and the "Exhibit E" information that contained all of Mr. Tucker's identifying information. (See, e.g., Emails from David A. Hubbert (Chief of Eastern Region of DOJ Civil Tax) to various DOJ and IRS personnel (including Mr. Gibson), April 12, 2004 (Clarke Declaration, Exhibit Q).) One person copied on that email, Mr. Michael Halpert, is the same agent that timely issued, on April 15, 2004, a Statutory Notice of Deficiency ("SNOD") to Mr. Tucker for the taxable year ended December 31, 2000. (Clarke Declaration, Exhibit R at 6). That SNOD contained the name, address, and taxpayer identification number of Mr. Tucker. (Id.) That SNOD forms the basis for the current litigation between Mr. Tucker and the Service in Tucker v. Commissioner, Tax Court No. 12307-04.

In the Illinois Action, at an April 15, 2004 hearing, during which Mr. Linguanti submitted and the Northern District of Illinois granted the "Baker Does" Motion to Withdraw (DPFUF ¶15.), Mr. Lindquist made the following statement to Judge Kennelly:

> I would like to again request a stay of the statute given this limited intervention. I would note that Judge Barefoot Sanders ***in the case involving the Baker Does*** in Texas did grant a stay pending his ruling on their motion to enjoin enforcement. He did grant enforcement on the 12th.

Trans. of Proc., April 15, 2004 (Clarke Declaration, Exhibit S) at 10 (emphasis added).) Accordingly, both Mr. Lindquist and Mr. Gibson knew that the Baker Does were the Texas Does, and knew that they had all of the information requested in the SABW Summons.

On June 29, 2004, SABW sent to Mr. Lindquist via electronic mail a list of taxpayers that included Mr. Tucker's name and address. (DPFUF ¶20.)

On March 3, 2005, SABW hand delivered to Defendant a supplemental production of materials that included the names Sligo and Epsolon. (DPFUF ¶23.)

### D. The Tax Attributable to the Partnership Items At Issue in This Proceeding Was Assessed on March 22, 2006.

On March 22, 2006, the IRS assessed the tax attributable to the partnership items at issue in this proceeding. (Clarke Declaration, Exhibit T.)

## III. ARGUMENT.

At first blush, this case appears relatively complex. It is not. With the exception of Defendant's specious fraud allegations (addressed in Section III.C, infra), the Court need only resolve two questions: (i) whether the three year period of limitations on assessment under section 6501(a) was still open at the time the FPAA was issued; and (ii) whether that matters.

**A. The Section 6501 Period Expired on April 15, 2005, Two Months Prior to Issuance of the FPAA.**

The facts stipulated by Defendant compel the conclusion that the Section 6229 Period, as defined herein, is closed. Nonetheless, Defendant argues that the period referenced in section 6229 both (i) "operates a potential extension of time of the general statute of limitations contained in § 6501, depending on the date of the filing of the partnership return" (Defendant's Motion at 13) and (ii) actually "refers to the general limitations period established by § 6501" (Defendant's Motion at 25.). Plaintiff does not wish to play word games with Defendant and neither should the Court. The relevant points are that Epsolon's 2001 return "was filed on behalf of Epsolon Limited on April 10, 2001" (Defendant's Response ¶1) and that "the FPAA issued on June 17, 2005" (Defendant's Response ¶5). Thus, the "Section 6229 Period" (defined as the three year period explicitly described in the text of section 6229(a) itself, whether a "potential extension" of the section 6501 period or its own standalone period), expired on April 15, 2006. Even if Defendant's argument that the period referenced in section 6229 is a "minimum period" is correct (a theory that is currently the subject of the AD Global appeal and that is refuted in detail in Section III.B, infra), the Court must determine whether the three year section 6501(a) period was open when the FPAA was issued on June 17, 2005. If it was, then the Court must determine the relevance of that fact (see Section III.B, infra). If it was not, then, as explained further in Section III.C, infra, the Court should grant Plaintiff's Motion or, at a minimum, grant Plaintiff partial summary judgment on the question of whether the three year period of section 6501(a) was open at the time that the FPAA was issued.

1. The Natural Expiration of the Section 6501 Period Was April 15, 2005.

The parties agree that the natural expiration of the Section 6501 Period was April 15, 2005. (See Section II.B and II.C.1, supra.) Specifically, Defendant acknowledges that the

Section 6501 Period "but for the suspension of § 7609(e)(2), would have expired on April 15, 2005." (Defendant's Motion at 22.)

2. <u>The SABW Summons Did Not Toll the Section 6501 Period.</u>

The essential question regarding the status of the section 6501 period at the time the FPAA was issued is whether the SABW Summons tolled that period through and including the date on which the Service issued the FPAA. Defendant argues that the period of limitations on assessment was tolled beginning on April 15, 2004, one year prior to when the period of limitations for 2001 otherwise expired (Defendant's Motion at 22.), and continued until March 3, 2005, when SABW provided miscellaneous information regarding certain entities that were in some way connected with Mr. Tucker's transactions. (<u>Id</u> at 23.) Defendant takes this position, with no supporting analysis, even though Defendant knew not later than April 14, 2004, that SABW had identified Mr. Tucker as a taxpayer who engaged in one of the transactions referenced in the summons, and knew Mr. Tucker's address and taxpayer identification number (as well as substantial additional information regarding Mr. Tucker, his transactions, and all related entities). Defendant's position has no basis in law.

a. As of April 14, 2004, Defendant Possessed All of the Information Requested from SABW With Respect to Mr. Tucker.

Section 7609(e)(2) provides in relevant part that "[i]n the absence of the resolution of [a] summoned party's response to [a] summons . . . the running of any period of limitations . . . shall be suspended." The only items requested in the SABW summons with respect to a particular taxpayer were "the name, address and taxpayer identification number" of that specific taxpayer. (DPFUF ¶4.) The factual record in this case establishes that the SABW Summons was fully resolved as of April 14, 2004 with respect to Mr. Tucker. (<u>See</u> Section II.C.2, <u>supra</u>.) SABW determined that Mr. Tucker's identifying information was responsive to the summons and

Defendant was, in that context, provided with Mr. Tucker's name, address, and taxpayer identification number. All of this happened on or before April 14, 2004. Accordingly, there was no "absence of . . . resolution" (section 7609(e)(2)) with respect to the SABW Summons on or after April 14, 2004, and the suspension period in section 7609(e)(2) could not have become operative as to Mr. Tucker.

Although Defendant made no such argument in Defendant's Motion, in Defendant's Response to Plaintiff's Status Report ("Response to Status Report"), Defendant asserts for the first time in this case that "[t]he government's argument is that the statute of limitations is tolled pursuant to § 7609(e)(2) until resolution of the summoned party's response to the summons"). (See Response to Status Report at 2). Thus, Defendant now argues that even if Defendant was in possession of all of the information requested by the SABW Summons with respect to Mr. Tucker on or before April 15, 2004, such summons was not resolved with respect to Mr. Tucker because that information was not provided by SABW itself. Defendant's position is wrong.

When Defendant has in its possession the precise information that it has requested in a summons, that summons is satisfied and is moot. See, e.g., Powell v. United States, 379 U.S. 48, 58 (1964) (holding that in order for a summons to be enforced Defendant must show that "the information sought is not already within the Commissioner's possession"); United States v. Garrett, 571 F.2d 1323, 1328 (5th Cir. 1978) ("actual possession of the information by the IRS" defeats the summons). When Defendant already has the specific information requested by the summons (regardless of the source from which it received that information), the summons is resolved. Because Defendant possessed all of the information requested by the summons with respect to Mr. Tucker on or before April 14, 2005, including the designation by SABW of Mr. Tucker (i.e., Baker Doe 1) as a taxpayer who engaged in a transaction that was referenced in the

summons, the summons was resolved as of April 14, 2005, and the necessary prerequisite to the suspension of the period of limitations under section 7609(e)(2) simply was not satisfied.

b. Only "the Name, Address and Taxpayer Identification Number" of Mr. Tucker Was Necessary to Fully Resolve the SABW Summons With Respect to Mr. Tucker.

Defendant suggests that the disclosure of Mr. Tucker's identifying information to Defendant (the only items specifically requested by the SABW Summons in the context of any taxpayer) did not operate to resolve (or otherwise moot) the SABW Summons with respect to Mr. Tucker. (See Defendant's Motion at 23 (only when the "full information requested by the summons" was provided did tolling cease.) Any such assertion is contrary to the plain terms SABW Summons itself and is otherwise erroneous.

The only information requested by the SABW Summons was "the name, address and taxpayer identification number for each United States taxpayer" who participated in certain transactions characterized by the Service as abusive or potentially abusive. (DPFUF ¶4.) As Mr. Lindquist repeatedly represented to the Northern District of Illinois "[t]he summons at issue here ***seeks only identities***" and "***the summons seeks only the [intervening John Does'] identities***." (Clarke Declaration, Exhibit I at 2, 9 (emphasis in original).)

Mr. Lindquist's repeated assertions that the SABW Summons was narrowly drawn to seek only the identities of the Does cannot be reconciled with Defendant's current position that additional information was necessary to resolve the SABW summons. (Defendant's Motion at 22-23.) The SABW Summons itself plainly indicates that it requests only "the name, address and taxpayer identification number" of Mr. Tucker. Because Defendant possessed that information no later than April 14, 2004, the summons was resolved as to Mr. Tucker by that date. Defendant's argument that the summons requested unidentified additional information relating to Mr. Tucker has no basis in fact. For example, the SABW Summons did not request

with respect to a given taxpayer the names of any entities through which such taxpayer may have invested. Accordingly, any lack of disclosure of the name (and other identifying information) of Mr. Tucker's wholly owned S corporation (Sligo), the name (and other identifying information) of Plaintiff Epsolon, or the names of any taxpayers that participated in his transactions, by April 14, 2004, cannot support Defendant's argument that the summons was not satisfied as to Mr. Tucker as of that date. Because the SABW Summons did not request any information other than the identification of Mr. Tucker, Defendant's implication that other items of information were not provided to Defendant necessarily can have no bearing on the resolution of that summons.

Further, due to the disclosure of the contents of "Exhibit E" in the Texas Action, not later than April 14, 2004, Defendant possessed voluminous specific material with respect to Mr. Tucker's transactions. Specifically, Defendant possessed the returns filed by Sligo and Epsolon. (See Clarke Declaration, Exhibit O at "KPMG App. 977, et. seq.") Sligo's tax return set forth that entity's name, address, and taxpayer identification number. (Id. at "KPMG App. 977.") Epsolon's return clearly identified Cumberdale Investments Ltd. (Id. at "KPMG App. 988"), and brokerage account statements identified Lehman Brothers (Id. at "KPMG App. 1184, 1192"). The materials in "Exhibit E" also identified Raypoint Ltd. (Id. at "KPMG App. 1366.") Accordingly, any and all information even remotely relevant to the SABW Summons (even though clearly not requested therein) actually was provided to and was in the possession of Defendant no later than April 14, 2004.

As a result, there can be no doubt that the SABW summons was "final[ly] resol[ved]" as to Mr. Tucker not later than April 14, 2004. By that date, Defendant possessed the information requested in the SABW Summons with respect to Mr. Tucker, as well as voluminous additional information that identified and described Mr. Tucker, his relationships with other entities, and

virtually all aspects of his transactions. Accordingly, section 7609(e)(2) did not operate to suspend the period of limitations under section 6501 for Mr. Tucker's 2001 taxable year.

### B. AD Global and Grapevine Are Wrongly Decided, the Section 6501 Period Does Not Control the Assessment of Tax With Respect to Partnership Items and, Even if it Does, an FPAA Does Not and Can Not Extend That Period.

Assuming that this Court determines that the Section 6501 Period was closed on the date the FPAA was issued (June 17, 2005), the Court need not await the issuance of the Federal Circuit's ruling in AD Global. If, to the contrary, the Court determines that the Section 6501 Period remained open on June 17, 2005, it is Plaintiff's view that the Court should await the resolution of that appeal. Given that appeal, it is not in the best interests of the parties or the Court (from a resource perspective) to actively address this issue. In such event, Plaintiff moves that the Court defer ruling on Plaintiff's Motion and Defendant's Motion, and grant to Plaintiff discovery rights to identify further evidence relating to its alternative legal arguments. Notwithstanding the foregoing, Plaintiff submits the following as a response to Defendant's position on this issue.

#### 1. The Holdings in AD Global and Grapevine That Section 6229 Is Not a Separate And Exclusive Period of Limitations Are Wrong.

The facts of the instant case show why the lower Court's holding in AD Global Fund v. United States, 67 Fed. Cl. 657 (2005) and Grapevine are incorrect. Those decisions conclude that section 6229 does not refer to a separate statute of limitations relating to partnership items but, instead, to an extension of the section 6501 period. 67 Fed. Cl. at 694; Grapevine Slip Op. at 18. As applied to this case, the plain statutory interaction between the provisions of the Code governing assessment of tax with respect to partnership items and the provisions of the Code governing the assessment of tax with respect to non-partnership items make the right answer clear.

Section 6221 and, among other provisions, section 6225 provide the rules relating to the assessment of tax with respect to partnership items under the Code. Section 6221 provides that "the tax treatment of any partnership item . . . shall be determined at the partnership level." Section 6225 provides for assessments with respect to partnership items. In relevant part, that provision establishes that, "no assessment of a deficiency attributable to any partnership item may be made . . . before "the close of the 150th day after the day on which" an FPAA was issued. Defendant concedes that these two provisions "prohibit the IRS from assessing a tax liability attributable to partnership items" if their terms are not satisfied. (Defendant's Motion at 25.)

Sections 6212 and 6213, among others provisions, provide the rules with respect to the assessment of tax with respect to non-partnership items under the Code (these rules are commonly referred to as the "deficiency" procedures of the Code). Specifically, section 6212 authorizes the mailing of a statutory notice of deficiency "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A." Section 6213 provides that "[e]xcept as otherwise provided . . . no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until [a statutory notice of deficiency under section 6212] has been mailed to the taxpayer." Similar to section 6225 in the partnership assessment procedures, section 6213 in the deficiency procedures mandates that the assessment of any tax with respect to any such deficiency is suspended for the period beginning with the issuance of the statutory notice of deficiency and ending, generally, 90 days after the mailing of that notice (unless the taxpayer petitions the Tax Court for review of that statutory notice).

Two provisions, section 6503 and 6230, integrate the partnership assessment procedures (set out in sections 6221 and 6225) and the deficiency procedures (set out in sections 6212 and 6213). Section 6503 determines how the issuance of a statutory notice of deficiency affects the section 6501 period of limitations on assessment. Specifically, section 6503 mandates that "[t]he running of the period of limitations provided in section 6501 or 6502 ***(or section 6229, but only with respect to a deficiency described in paragraph (2)(A) or (3) of section 6230(a))*** on the making of assessments . . . shall . . . be suspended for the period during which the Secretary is prohibited from making the assessment [under section 6213]." (Emphasis added.) Section 6503 thus makes clear that the "running of the period of limitations provided . . . in section 6229" is not suspended by the issuance of a statutory notice of deficiency. Said differently, the running of that period ***is not suspended by the operation of the deficiency procedures***. The reason for this is obvious in light of the plain text of section 6230 and its integration with section 6229.

Section 6230(a), which is titled "[c]oordination with deficiency proceedings," provides that there are only three partnership assessment situations in which the deficiency procedures apply: (i) "affected items which require partner level determinations;" (ii) "items which have become nonpartnership items;" and (iii) the abatement of certain assessments which deal with assertions of so-called innocent spouse relief. The first two categories of items, so-called "substantive affected items" and "converted items" are the same two items cross-referenced in section 6503 as "paragraph (2)(A) . . . of section 6230(a)" (the final category is not pertinent to the instant case). Section 6230 is perhaps the most important partnership assessment provision with respect to this issue. It establishes that tax assessments with respect to items other than those listed in section 6230(a) are not required to "go through" the deficiency procedures. See also Treas. Reg. §301.6231(a)(6)-1. When combined with the plain language of section 6229(d),

which provides that the section 6229 period remains open after the Service issues an FPAA and a partnership proceeding is commenced (and for one year thereafter), section 6230 demonstrates that there is no need for section 6501 to be kept open independent of section 6229 in order to assess tax against a partner with respect to a partnership item. The contrary conclusion in Grapevine (relied on by the Court to justify the holding in that case) that the Service would be required to issue both a timely FPAA and timely SNODs to each partner in order to protect the Government's ability to assess the tax (Slip Op. at 12) is simply wrong and is not the law.

The foregoing analysis reveals that: (i) the deficiency procedures do not apply to the assessment of tax with respect to partnership items; (ii) the partnership assessment procedures (and only the partnership assessment procedures) must be followed in order to assess tax with respect to partnership items; and (iii) any extension of the section 6501 period operated by section 6503(a)(1) upon issuance by a statutory notice of deficiency does not toll the "running of the period of limitations provided . . . in section 6229." In light of that statutory construct, Defendant's tax assessment is too late. Defendant purports to have assessed tax with respect to the partnership items at issue herein on March 22, 2006. (Clarke Declaration, Exhibit T.) Defendant did not issue an SNOD prior to assessing that tax because, as Defendant admits, Defendant must instead satisfy only the partnership assessment procedures of sections 6221 and 6225. However, in order to follow those procedures, under Defendant's analysis, Defendant must be able to timely assess tax under section 6501. Section 6503(a)(1) itself clearly provides that section 6501 is suspended only upon the issuance of a valid statutory notice of deficiency. Only an FPAA was issued in this case. The United States Tax Court determined that the document styled as a statutory notice of deficiency was invalid. (Defendant's Response ¶¶ 9-10.) Defendant can point to no provision that suggests that section 6501 is extended by the

issuance of an FPAA, and such a notion is contrary to both the plain structure of the Code's separate partnership and non-partnership assessment procedures and also to the plain language of section 6503 itself, which contains no provision that might extend section 6229 upon the issuance of an FPAA. The section 6501 period of limitations closed, at the very latest, on or about March 3, 2006 (one year after, even under Defendant's view, the date the SABW summons was satisfied (see Section III.A, supra)). Accordingly, Defendant's assessment of tax with respect to the partnership items at issue in this proceeding was untimely.

2. The Holdings in AD Global and Grapevine That the Issuance of an FPAA Tolls Section 6229 Are Wrong.

Defendant attempts to answer the foregoing conundrum – that there is no provision in the Code that suggests that the issuance of an FPAA tolls section 6501 – by reading into section 6229(a) words and principles that, as a matter of statutory construction, simply are not there. Following on AD Global (67 Fed. Cl. at 694-695) (and now presumably Grapevine, Slip Op. at 20-21), Defendant argues that the reference in section 6229(a) to "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to a partnership item" actually is a reference "to the general limitations period established by § 6501" and not to the Section 6229 Period. (Defendant's Motion at 25.) This position allows Defendant to argue that section 6229(d), which provides for a suspension "of the period specified in subsection (a)" in the event an FPAA is issued (such suspension to last for the period during which an FPAA proceeding is brought and is litigated and for one year thereafter), actually suspends section 6501 because the reference to "the period" in section 6229(a) is actually a reference to section 6501(a). (Defendant's Motion at 25.) Defendant, this Court in AD Global, and this Court in Grapevine all fail to address the one simple argument that compels the conclusion that this position is wrong.

Section 6229(b)(1) provides that "the period described in [section 6229](a) (including an extension period under this subsection) may be extended:" (i) "with respect to any partner, by an agreement [with] such partner;" and (ii) "with respect to all partners, by an agreement entered into by the Secretary and [the tax matters partner ("TMP")]." Under this rubric, regardless of whether section 6501 provides an additional means to assess tax against Defendant, "the period described in [section 6229](a)" must be the so-called "minimum period" (as defined by Plaintiff herein as the Section 6229 Period) and not the Section 6501 Period as alleged by Defendant (see Defendant's Motion at 24-26.) This necessarily is the case because if section 6229(a) actually referred to section 6501(a), the TMP, pursuant to section 6229(b)(1)(A) ***could extend the periods of limitations under section 6501 for all partners in the partnership for all items reported on those partners individual returns***. This clearly erroneous result is a natural corollary of Defendant's position because, if "the period for assessing any tax imposed by subtitle A" in section 6229(a) actually refers to the section 6501 period then a TMP could extend the section 6501 period for all partners in the partnership.[8] Such a reading must be incorrect based on both the clear statutory language in section 6501(c)(4), which limits such agreements to agreements between "the Secretary and the taxpayer," and the absence in the Code of any statutory rights or obligations vested in the TMP of a partnership with respect to any other partner's non-partnership items.

Moreover, the extension by the TMP of the section 6501 periods of limitations of all partners also is undermined by 6229(b)(3) in a manner apparently not envisaged by this Court in

---

[8] The Court in Grapevine applies Defendant's interpretation of "the period" language in section 6229(a) to sections 6229(b)(1) and (b)(3) but fails to notice the fundamental problem this causes with the statute. Slip Op. at 21 n.24. That problem quite clearly shows that Defendant's reading must be in error.

AD Global or Grapevine.[9] That provision prevents an agreement under section 6501(c)(4) from applying to "the period described in (a)" unless such agreement expressly provides that it applies to tax attributable to partnership items. Under Defendant's theory, a TMP could extend "the period described in subsection (a)" referenced in section 6229(b)(1) (pursuant to Defendant's theory, the Section 6501 Period) for all taxpayers, but that extension would not apply to "the period described in subsection (a)" referenced in section 6229(b)(3) ***unless it specifically mentioned partnership items***. Under Defendant's theory then, pursuant to an agreement to extend the section 6229 period, a TMP could extend the section 6501 periods for each partner with respect to all partnership and non-partnership items. Such an agreement would ***not*** apply to partnership items unless it specifically stated that it did. If it did not specifically include partnership items ***it would apply only to non-partnership items, over which the TMP has absolutely no control or interest***. This cannot be correct. As the Supreme Court and this Court often have emphasized, "[s]tatutory construction . . . is a holistic endeavor[,] a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." United Savings Association of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365, 371 (1988); accord Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383 (Fed. Cir. 1998) (same). Defendant's reading of section 6229 fails this test.

The necessary conclusion reached by application of Defendant's analytical construct to the relevant statutory provisions is summarized as follows:

---

[9] The Court in Grapevine addresses some minor interpretative issues with section 6229(b)(3) (Slip Op. at 16 n.18) but does not consider or address this fundamental problem.

1. Defendant can prevail only if the reference to the "period for assessing any tax imposed by subtitle A" in section 6229 actually refers to the Section 6501 Period because only then will section 6229(d) apply to suspend "the running of the period specified in "[section 6501(a)]."

3. "The period" referenced in section 6229(a) cannot be a reference to the Section 6501 Period because, if it was, section 6229(b)(1) would allow a TMP to extend the "period described in subsection (a)" (under Defendant's theory the Section 6501 Period) ***with respect to all partners in the partnership for all items (partnership and non-partnership) and, as a default rule pursuant to section 6229(b)(3), such an extension would apply only to non-partnership items (items over which the TMP has absolutely no control or responsibility).***

The foregoing analysis demonstrates that the only way in which Defendant's position that section 6501 covers partnership items can be correct is if the reference to "the period for assessing any tax imposed by subtitle A" in section 6229(a) is actually to the "potential extension" period. Under that theory, the issuance of an FPAA only tolls the "period specified in subsection (a)" (citing section 6229(d)) and that period is the Section 6229 Period and not the Section 6501 Period. Under this view, Defendant cannot prevail herein because the FPAA was issued over two months after that period, which expired on April 15, 2005, was already closed.

**C. Defendant's Fraud Allegations Are Specious and Baseless and Ultimately Unimportant to the Matter Before the Court.**

Defendant posits that "[i]f the Court were to determine that the general 3 year statute of limitations contained in §6501(a) was not open on the date the FPAA was issued," i.e., if the Court were to determine ***that Plaintiff wins, then*** the Court should withhold that judgment pending discovery concerning potential fraud. (Defendant's Motion at 26 (emphasis added).) Stated differently, Defendant wants this Court to grant Defendant a license to fish – for fraud. Defendant's allegations of potential fraud are specious and Defendant has no basis for making them. A case related to the instant one is set for trial September 6th in the United States Tax Court (Tucker v. Commissioner, Docket No. 12307-04). In that case, the Service has issued

extraordinarily voluminous and detailed discovery. In response to that discovery, approximately 3,000 pages of documents have already been submitted to the Government (and, Defendant admits, provided to counsel for Defendant in this case (Response to Status Report at 3)). Not only has there been no ***discovery*** of fraud in that case, there have been no ***allegations*** of fraud in that case. This is for good reason. There is no basis for any such allegations, there or here. Contrary to Defendant's arguments in its Response to Status Report (at 3), the assertion by ***third party witnesses*** of their Fifth Amendment rights when deposed in that case certainly does suggest any basis for a fraud claim. As the Supreme Court has long held, the fundamental right to be exempt from testimonial compulsion was regarded "then, as now, as a privilege of great value, ***a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded or tyrannical prosecutions***." Twining v. New Jersey, 211 U.S. 78, 91 (1908) (emphasis added); see also Ohio v. Reiner, 532 U.S. 17, 21 (U.S. 2001) ("one of the Fifth Amendment's basic functions is to protect ***innocent men*** who otherwise might be ensnared by ambiguous circumstances") (emphasis added) (internal citations omitted).

Moreover, it is interesting to note that Defendant does not allege anywhere in its filings that the supposedly fraudulent conduct would allow it to pursue Epsolon under section 6229(c)(1). That provision is the directly analogous "fraud" provision for partnership items to the section 6501(c)(1) provision for non-partnership items. This omission is illustrative of the nonsensical nature of Defendant's entire position with respect to section 6501. (See generally Section III.B, supra.) If fraud is present, section 6229(c)(1)(A) will hold open the section 6229 period indefinitely. Section 6501 simply has no place in the analysis.

Finally, as Plaintiff briefly mentioned in its Status Report, section 6223(f) would not prevent the IRS from issuing a second FPAA to Epsolon based on a discovery of fraud at ***any***

later point in time. That provision specifically exempts the "no second FPAA" rule in the case of a fraudulent return. Accordingly, there is no reason to "keep this case around" while Defendant fishes for fraudulent conduct (particularly when Defendant does not wish to head out on its fishing trip until after the stay in this case is lifted). Defendant's response to this assertion (in its Response to Status Report) is disturbing. Defendant admits that "[t]he government is not attempting to add items to the FPAA with respect to fraud" but rather only "seeking to defend against plaintiff's assertion that the FPAA was untimely." (Response to Status Report at 3.) This statement implies that Defendant is requesting the right to pursue fraud allegations against Mr. Tucker solely in an attempt to hold open the statute of limitations on assessment and not because of any actual fraudulent conduct on the part of Mr. Tucker. This pursuit of fraud solely to toll Plaintiff's period of limitation, when no prima facie case is even attempted by Defendant, flies in the face of the long-standing principle that "[f]raud is never presumed but must be determined from clear and convincing evidence, considering all the facts and circumstances of the case, and the presumption of Commissioner's correctness does not extend to his determination that fraud existed." Griffiths v. Commissioner, 50 F.2d 782, 786 (7th Cir. 1931).

Defendant's allegations of fraud are baseless, specious, and not supported by any prima facie evidence. Given the unlimited statute of limitations allowed to Defendant, and no prohibition on further proceedings if Defendant at some later date develops a credible claim of fraud, the Court should grant Plaintiff's Motion and deny Defendant's Motion in its first and second alternatives.

## IV. CONCLUSION.

For the reasons set forth above, Plaintiff respectfully prays that this Court grant Plaintiff's Motion deny Defendant's Motion in each alternative, determine that the FPAA is untimely, and therefore hold that the partnership items as reported on Epsolon's Partnership Return for 2001

have become final and may not be adjusted by the Service. In the first alternative, Plaintiff respectfully prays that this Court withhold judgment on Plaintiff's Motion and Defendant's Motion pending the resolution of the Federal Circuit's ruling in the appeal of AD Global, grant Plaintiff relief under R. Ct. Fed. Cl. 56(f) and grant Plaintiff discovery rights. In the second alternative, Plaintiff respectfully prays that this Court grant Plaintiff partial summary judgment that the three year periods of section 6229 and 6501 are expired.

Respectfully submitted,

/s/ A. Duane Webber
A. Duane Webber
Attorney of Record

George M. Clarke III
Of Counsel

Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7000

David G. Glickman
Robert H. Albaral
Of Counsel
Baker & McKenzie LLP
2300 Trammel Crow Center
2001 Ross Avenue
Dallas, TX 75201
(214) 978-3000

Attorneys for Plaintiff,
Epsolon Limited

Dated: June 12, 2006