# Exhibit I

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,

Petitioner,

v.

SIDLEY AUSTIN BROWN & WOOD LLP, with respect to the matter of the tax liabilities of:

JOHN DOES, United States taxpayers who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

Respondent.

Case No. 03 C 9355

Judge Matthew F. Kennelly

FILED
APR 13 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
APR 14 2004

**UNITED STATES' SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO INTERVENTION**

**INTRODUCTION**

In accordance with the Court's instructions on April 2, 2004, the United States supplements its opposition to intervention in this summons enforcement action, about which the Seventh Circuit has instructed:

> [W]e cannot stress too emphatically that these proceedings are intended to be summary in nature. They occur, after all, at only the investigative stage of any action against a taxpayer, and no guilt or liability on the part of the taxpayer is established.

*United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981). The summons at issue here is a special kind of summons, known as a "John Doe summons"

65

because the identities of the persons about whom information is sought, are unknown to the IRS. *Matter of Does*, 671 F.2d 977, 978 (6th Cir. 1982).

A John Doe summons may be served, pursuant to §7609(f)[1], only with the permission of a district court which has satisfied itself that (A) the summons relates to the investigation of an ascertainable class of persons; (B) there is a reasonable basis for believing that the members of the class may fail or may have failed to comply with any provision of any internal revenue law; and (C) the information sought, *i.e.*, the identities of the class members, is not readily available from other sources. On October 14, 2003, this Court (Conlon, J.) granted the United States permission to serve the John Doe summons at issue upon SAB&W. [Docket no. 1: Govt. Ex. 2 to the petition, *In re John Does*, civil no. 03-C-7226] SAB&W failed to fully comply, and, therefore, on December 29, 2003, the United States filed a petition to enforce the summons. [Docket no. 1]

The summons at issue here seeks only identities. The summons demands that SAB&W produce:

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

[Docket no. 1: Govt. Ex. 1 to petition] As a guide to compliance, the summons provides that "the terms 'organizer" and 'seller' are defined by Treas. Reg. § 301.6112-1(c). . . ." This Treasury Regulation defines an "organizer" and/or a "seller" as any "material adviser" as further defined in subsection 301.6112-1(c)(2). Subsection (c)(2), in turn, defines a material advisor, as is relevant here, as any person who makes a "tax statement"

---

1/ All "§" references are to the Internal Revenue Code, 26 U.S.C.

about a transaction for which he receives or expects to receive a "minimum fee" as provided in the regulations.

The John Doe summons was issued as part of the IRS investigation into the correctness of the returns filed by, and the correct liabilities of, the John Doe taxpayers. [Docket no. 1: petition ¶ 4; Kan Declaration ¶ 4] It is well established that the IRS need not have probable cause to examine the correctness of returns or the correct liabilities of any taxpayer. *United States v. Powell,* 379 U.S. 48, 57 (1964). Indeed, §7601 directs the IRS to conduct such examinations. The IRS need not first prove there is likely a violation of the law. The IRS can "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id., quoting United States v. Morton Salt Co.,* 338 U.S. 632, 642-643 (1950). The Does do not have a basis for insisting that the IRS cannot examine the correctness of their returns and tax liabilities without a showing that they engaged in a potentially abusive tax shelter. Such arguments turn the law on its head.

Before responding to the petition, SAB&W sought an order allowing it to provide notice of the filing of the action to those persons whom it had determined were members of the John Doe class. The United States opposed the motion for notification on the grounds that *BDO Seidman,* 337 F.3d 802 (7th Cir. 2003), established that members of the John Doe class do not have a right to intervene to oppose enforcement of a summons which seeks identity. [Docket no. 5] On January 12, 2004, the Court granted SAB&W's motion over the opposition of the United States and directed the parties to agree upon the form of an order to effectuate the Court's ruling.[2]

---

2/ During the April 2 hearing, the Court suggested that the Government waived any objection to the delay attendant to the Court's consideration of the numerous motions to intervene because the Government's only objection to SAB&W's proposed order was that it failed to include language to the effect that the order (continued...)

The Court then issued the "January 12 Order" which included, as Appendix A, a list of transactions which SAB&W determined were responsive to the summons. [Docket no. 6]

SAB&W thereafter reported to the Court that certain persons to whom it had given notice were asserting that the transaction with respect to which they had received advice from SAB&W were not identified on Appendix A. [Docket no. 7] SAB&W's Status Report informed the Court that:

> 6. Respondent will also shortly be filing for supplemental order of notification proposing to the Court and petitioner a supplemental procedure to address the identities of additional former clients of Brown & Wood LLP or respondent who may be within the scope of the Summons but who were not covered by the January 13 Order, including approximately 20 former clients who received the January 13 Notice.

[Docket no. 7, ¶ 6][3]

SAB&W and the United States then asked the Court to issue a supplemental order to "certain persons who fall within the description of the 'John Does' . . . ." SAB&W determined that these "Objecting Former Clients" fell within the description of the John Doe class. [Docket no. 8, ¶7] The Court entered the proposed Agreed Order which provided that notice was to be given to the "Objecting Former Clients," *i.e.*, those former clients who engaged in "listed transactions" or other "potentially abusive tax shelters" and paid a fee to SAB&W (or its predecessor Brown & Wood LLP) in

---

2/ (...continued)
should be clear that it did not provide a right to intervene. [4/2/04 Tr. at 30]. The docket reflects, however, that the January 12 Order was agreed to only as to form, after the Court overruled the United States' objection to SAB&W's motion for notification. [Docket nos. 5 & 6] The United States should not be penalized for respecting the Court's decision to grant SAB&W's motion over the United States' objection and then working cooperatively with SAB&W to present an Order which both sides could agree represented the Court's decision.

3/ SAB&W referred to the January 12 Order as the January 13 Order.

connection with their participation in the transaction.[4] [Docket no. 61]

On April 2, 2004, this Court correctly concluded that the Does do not have a right to intervene under Rule 24(a) of the Federal Rules of Civil Procedure, as they do not have a statutory right to intervene under §7609 and they do not have a colorable claim of privilege in their identities. The Court has asked for this supplemental memorandum to further address whether the Court should permit intervention under Rule 24(b)(2). For the reasons that follow, the United States submits that the Court should not permit intervention under Rule 24(b)(2).[5]

## ARGUMENT

### I. There Can Be No Permissive Intervention Under Rule 24(b)(2) In A Summons Enforcement Action.

### A. *Donaldson* Precludes Permissive Intervention.

In *Donaldson v. United States*, 400 U.S. 517 (1971), the Supreme Court considered the right of someone other than the summoned person to intervene in a summons enforcement action under Rule 24(a)(2). The Court held that absent a "protectable interest," there is no right to intervene. *Donaldson*, 400 U.S. at 530. The *Donaldson* Court expressly rejected the prior law of the Seventh Circuit set down in *United States v. Benford*, 406 F.2d 1192, 1194 (7th Cir.1969), which held that a taxpayer could intervene in a summons enforcement action based on the fact that it was his liability

---

4/ As noted above, the payment of a "minimum fee" is one of the elements of a "material advisor," which, in turn, is an organizer or seller. The other element is the making of a "tax statement." Accordingly, the February 6 Order [Docket no. 61] did not expand the John Doe class beyond the description in the summons.

5/ During the April 2 hearing (4/2/04 Tr. at 26) the Court stated that "The government, in its submissions, has avoided any discussion of Rule 24(b)." The United States' Opposition to Intervention, however, did discuss why permissive intervention was inappropriate. [Docket 51 at 7 - Argument I.C.]

that was under examination. *Id.* at 530; *see also United States v. National State Bank*, 454 F.2d 1249, 1250 n.3 (7th Cir. 1972). As expressed by the Supreme Court, "Donaldson's only interest--and of course it looms large in his eyes--lies in the fact that those records presumably contain details of Acme-to-Donaldson payments possessing significance for federal income tax purposes." *Id.* at 530-531. The Does, like Donaldson, have an interest in the proceeding only because, presumably, compliance with the summons may result in a determination that they have an additional tax liability. The Supreme Court held that such an interest is not a sufficient basis for intervention. *Id.* The Seventh Circuit reached the same conclusion in *BDO Seidman*, 337 F.3d at 813.

*Donaldson,* which addressed intervention as of right, leaves no room for permissive intervention under Rule 24(b) in a summons enforcement action. *United States v. Newman*, 441 F.2d 165, 173-174 (5th Cir.1971). Absent a "protectable interest," such as a "colorable claim of privilege," intervention is not permitted. In rejecting *Benford*, 406 F.2d at 1194, *Donaldson* closed the door on intervention, whether by right or permission, merely because the taxpayer was concerned with the outcome or because the taxpayer's liability is the subject of the investigation.[6] The Does' desire to keep their identities from the IRS simply because they do not want the IRS to examine their tax returns is not grounds to intervene. Thus, for example, the 27 White & Case Does state that they seek permissive intervention because "it is their tax liability that is at stake." [Docket no. 53 at 2] Such rationale is no different than the now-rejected rationale of *Benford*. Absent a protectable interest or statutory right to intervene pursuant to §7609, *Donaldson* remains controlling law and precludes

6/ As the Court recognized, Congress has since provided for intervention in some circumstances, not found here, in §7609. [4/2/04 Tr. at 10-12]

intervention in a summons enforcement action.[7]

**B. Intervention Will Unduly Delay The Proceedings.**

Rule 24(b) provides, in relevant part, "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of rights of the original parties."[8] *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991). The Supreme Court has already determined that the delay attendant with intervention is "undue" in the context of an ongoing investigation or examination, as is the case here. The Supreme Court observed:

> We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. Were we to hold otherwise, as he would have us do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move.

*Donaldson*, 400 U.S. at 535.

Here, SAB&W, by seeking the notification order, and the Does by moving to intervene on the grounds that *BDO Seidman* was distinguishable (which this Court correctly ruled is not the case), have already unduly delayed the proceedings. The notice procedure requested by SAB&W and the multiple motions to intervene delayed this Court's decision by almost 3

---

7/ The Chamberlain Does recognized that the only way to distinguish this case from *Donaldson*, was on the ground, now correctly rejected by this Court, that identity is privileged. [Docket no. 54 at 14]

8/ During the hearings on April 1 (4/1/04 Tr. at 13-15) and April 2 (4/2/04 Tr. at 29-30), the Court focused on a perceived lapse of time from the Does' participation in the transactions (which was not disclosed to the IRS) until the United States sought leave to serve the John Doe summons, and then from the service of the John Doe summons on October 15, 2003, to filing of the enforcement action on December 29, 2003, as a basis for denying the motion to require the Does to extend the statutes of limitations. [Docket 62] We submit that under Rule 24(b), the date on which the United States sought leave to serve the John Doe summons or commenced this action is not relevant to the question of whether the Does should be permitted to intervene, as Rule 24(b) directs the Court's attention to delay or prejudice caused by the intervention.

months, while statutes of limitations on assessment may be running.[9] Any delay in obtaining the Does' identities may ultimately shorten the time the IRS will have to complete its examinations of the taxpayers and assess additional tax due, if any.[10]

### II. In Any Event, The Does Identities Are Responsive to the Summons.

The Does seek to intervene to challenge the conclusion reached by SAB&W that their identities are responsive to the summons. This challenge has two parts:

(a) the Does allege they did not engage in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter;"

(b) the Does allege that the transaction in which they engaged was not "organized" or "sold" by SAB&W.

In addition, on April 2, the Court raised a corollary question of whether the February 6 Order impermissibly broadened the scope of the summons. We address each of these questions below.

#### A. The Does' Transactions.

As to the Does' first contention, while the Does deny that the transactions in which they participated are responsive to the summons, they do not in their declarations identify their transaction in any specific way that would allow the United States or the Court to test their allegations. SAB&W

---

9/ Of course, if the returns filed by the Does and/or the entities involved in the transactions were false or fraudulent, the statute of limitations will not expire as such assessments can be made at any time. §6501(c)(1).

10/ In the similar context of a stay pending appeal from enforcement of a summons, the Second Circuit (Friendly, J.) held that it was appropriate to condition a stay "on terms designed to expedite the appeal and, if necessary and appropriate, to protect against the running of any applicable statute of limitations." Turner, 309 F.2d 69, 72 (2d Cir. 1962). Should this Court permit intervention, it should condition such intervention on suspensions of the statutes of limitations.

has determined that the transactions in which the Does engaged fall within the scope of the summons.[11] The Does' contention that they should be allowed to intervene to litigate whether the transactions in which they engaged are within the scope of the summons, without disclosing the entire transaction, must be rejected.[12]

Further, the summons seeks only the Does' identities, which this Court has correctly concluded are not privileged. The Does' contention that they can litigate whether their transaction is within the scope of the summons turns what the Seventh Circuit has said is to be a "summary proceeding" which occurs, in this case, before the IRS even knows the names of the taxpayers , into a series of merits trials for each Doe. For example, the Fulbright Does admit that they engaged in transactions involving option contracts [Docket no. 30, Fulbright Doe Declaration ¶ 2] The Government's petition and the Kan Declaration reference transactions involving option contracts, such as those described in Notice 2000-44, as some of the "listed transactions" or other "potentially abusive tax shelters" when describing the John Doe class. [Docket no. 1] The Fulbright Does contend that their transaction is not within the scope of the summons because it, allegedly unlike the transactions described in Notice 2000-44, had a potential to earn a profit. Such naked assertions cannot prevent the disclosure of non-

---

11/ At least some of the Does admit that the transaction in which they engaged bears some similarity to the "listed transactions" within the scope of the summons. For example, Martin Doe 1 states that his transaction is similar to one described in the United States' petition and the Kan Declaration, except that his transaction has economic substance. [Declaration of Martin Doe 1 ¶ 9] If such assertions could preclude examination by the IRS, no taxpayer would ever have his returns examined. Martin Doe 3 does not even assert such a distinction. [Declaration of Martin Doe 3 ¶ 8]

12/ The 27 White & Case Does, for example, do not support at all the suggestion in their memorandum that their identities are not within the scope of the summons with a sworn statement.

privileged identity that will allow the IRS to examine the validity of the transaction. Such a result runs afoul of both *Donaldson* and *Kis.*

**B. Organization and Sale.**

As to the Does' latter contention, that SAB&W was not organizing and selling potentially abusive tax shelters, the Does have not denied (by way of declaration or otherwise) that SAB&W provided a "tax statement" for which it was paid a "minimum fee."[13] For example, Baker Does 1&2 admit that they engaged Brown & Wood to provide legal advice on the tax aspects of transactions developed by another promoter. And, while Baker Does 1and 2 deny that the fee paid to Brown & Wood was contingent on the success of the "opinion," Baker Does 1and 2 do not deny that the fee paid exceeded the "minimum fee" contemplated by the regulations (which, assuming Baker Doe 1 is an individual, is either $10,000 or $50,000 depending on the nature of the transaction). Further, while the Does assert that SAB&W was not organizing or selling, they do not specify what facts and circumstances would give them personal knowledge as to SAB&W's activities.[14]

**C. The February 6 Order.**

On April 2, 2004, the Court suggested that a possible basis for permissive intervention was the question of whether the February 6 Order expanded the scope of the John Doe class, and if it did, whether the Does'

13/ Indeed, the premise of the motions to intervene was that SAB&W had provided privileged "advice" about the tax aspects of the transaction, *i.e.*, a "tax statement" as defined by the regulations. None of the Does have disputed that they paid at least the required "minimum fee" to SAB&W. [*See for example*, Declaration of Baker Doe 1] It also should be noted, that while the Fulbright Does deny paying a fee to SAB&W in connection with the transaction, they do not deny paying such a fee for the tax opinion.

14/ Indeed, several taxpayers have brought suit against SAB&W and alleged that they were unaware at the time services were rendered or payment was made that SAB&W was involved in the organization and sale of potentially abusive tax shelters. [See Govt. Exs. 23, 24 & 26].

could intervene to challenge the disclosure of their identities on the grounds that their identities were beyond the scope of the summons.

The February 6 Order did not change the scope of the summons. It merely changed the scope of the notice provided in accordance with the January 12 Order to cure the fact that Appendix A to that order was narrower than the John Doe class described in the summons. Thus, while the February 6 Order may have expanded the noticee class covered by the January 12 Order, it did not expand that class beyond the description of the John Doe class in the summons.

The summons demands that SAB&W produce:

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by Sidley Austin Brown & Wood LLP and its predecessor, Brown & Wood LLP.

[Govt. Ex. 1 to petition] As a guide to compliance, the summons provides that "the terms 'organizer" and 'seller' are defined by Treas. Reg. § 301.6112-1(c). . . ." As explained in the Introduction, above, by referencing the regulations, the summons provides that an "organizer" or "seller" is anyone who issues a "tax statement" for a "minimum fee." The January 12 Order was, according to the Objecting Former Clients (as they were labeled by SAB&W), narrower than the summons because the January 12 Order specifically referenced only 18 transactions in "Appendix A." The February 6 Order, in contrast, provided that the notice covered any participants in transactions which were or later became a "listed transaction" or other "potentially abusive tax shelter" who paid a fee to SAB&W. This description parallels the summons in scope. The addition of the payment of a fee is merely one prong of "organization" and "sale," (in line with the

reference in the summons to the regulation and the definition of "material advisor.") Since it did not appear that the Objecting Former Clients were objecting on the grounds that they did not receive a "tax statement," *i.e.*, advice about the tax aspects of the transaction, it was not necessary to include this other prong. Indeed, the motions to intervene were premised on the allegation that the Does had received tax advice about the transactions.

The Court referenced the allegations of the Schiff Does as one of the reasons for the Court's concerns that the February 6 Order had impermissibly broadened the scope of the summons. [April 2 Tr. at 26]. The Schiff Does fail to describe the transaction(s) in which they engaged with any detail in the Declaration. The motion to intervene filed on their behalf, however, provides enough information to demonstrate that the Schiff Does' identities are responsive to the summons. At ¶ 14, the motion [Docket no. 16] states:

> The government might argue that Notice 2001-45 has some aspects in common with the transactions entered into by Taxpayer. That Notice, however, was promulgated in 2001. Because, as set forth in detail below, the relevant inquiry for application of the privilege is whether Taxpayer had a reasonable expectation of confidentiality at the time of the communication with its lawyer, this Notice is irrelevant. SAB&W provided its legal advice to Taxpayer in 2000, before this Notice was promulgated. The "listed transaction" prong of the government's Petition, therefore, is clearly not applicable to Taxpayer.

This passage is telling: first, it refers to a "listed transaction" specifically referenced in the United States' petition to enforce. Second, it contends that the fact that the Does engaged in a transaction described as a "listed transaction" is irrelevant. The scope of the John Doe class clearly includes persons who "participated in a transaction which was or later became a 'listed transaction.'" The fact that the Does may have engaged in

the transaction before it was listed does not put them outside the class definition.

## CONCLUSION

The Court should deny the Does' motions to intervene.

PATRICK J. FITZGERALD
United States Attorney

CRAIG OSWALD
Assistant U.S. Attorney

JOHN LINDQUIST
JENNIFER GAZAILLE COHEN
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: 202/307-6561
FAX 202/514-5238

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the United States' Response In Opposition To Intervention is being served by facsimile and U.S. Mail this April 13, 2004, upon the following:

Thomas Linguanti
Gregory S. Lynam
Baker & McKenzie
130 E. Randolph Dr., Ste. 3500
Chicago, IL 60601
FAX 312/616-7345

Michael I. Saltzman
Kathleen M. Pakenham
Daniel M. Smith
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2728
FAX 212/354-8133

Harvey Silets
Katten Muchin Zavis Rosenman
525 W. Monroe, Ste. 1660
Chicago, IL 60661-3693
FAX 312/902-1061

Ronald Safer
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606
FAX 321/258-5600

Steven S. Brown
Daniel T. Hartnett
Royal B. Martin
Martin, Brown & Sullivan, Ltd.
321 South Plymouth Court
Chicago, IL 60604
FAX 312/360-5026

Robert E. McKenzie
Richard K. Hellerman
Shekar Adiga
Arnstein & Lehr LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
FAX 312/876-0288

Jasper G. Taylor III
Prescott B. Pohl
Richard Lee Hunn
Fulbright & Jaworski LLP
1301 McKinney, Ste. 5100
Houston, TX 77010-3095
FAX 713/651-5246

George W. Connely
Juan F. Vasquez, Jr.
Chamberlain, Hrdlicka, White, Williams & Martin
1200 Smith St., Ste. 1400
Houston, TX 77002
FAX 713/658-2553

William F. Conlon, Esq.
Sidley Austin Brown & Wood, LLP
10 South Dearborn
Chicago, Illinois 60603
FAX 312/853-7036

For JOHN LINDQUIST
JENNIFER GAZAILLE COHEN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: 202/307-6561
FAX 202/514-5238