# Exhibit M

ar 1

JH

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

\- - - - - - - - - - - - - - x

DEPARTMENT OF JUSTICE TAX DIVISION, :

Plaintiff, : Case No. MS 02-295

v. :

KPMG, LLP, :

Defendant. :

\- - - - - - - - - - - - - - x

Washington, D.C.
April 1, 2004
10:29 a.m.

Transcript of a Status Hearing
Before the Honorable Thomas Hogan
United States District Judge

APPEARANCES:

For the Government: STUART GIBSON, ESQ.
ISAAC D. PAXMAN, ESQ.

For the Defendant: MICHAEL ARMSTRONG, ESQ.
STEPHEN GARDNER, ESQ.
ROBERT BENNETT, ESQ.
KENNETH GIDEON, ESQ.
MATTHEW D. MICHAEL, ESQ.

Reporter: JON HUNDLEY
Miller Reporting Company
735 Eighth Street, S.E.
Washington, D.C.

P R O C E E D I N G S

THE DEPUTY CLERK: Department of Justice Tax Division v. KPMG, LLP. Miscellaneous Case 02-295. Counsel, come forward and state your appearances for the record, please.

MR. GIBSON: Stuart Gibson, Department of Justice Tax Division, for the United States, Your Honor. With me is Isaac Paxman from the Tax Division, and I also have Michael Halpert, who is the IRS agent, who is assigned to the tax shelter promoter investigation of KPMG.

THE COURT: All right, thank you, Mr. Gibson.

MR. BENNETT: Good morning, Your Honor. KPMG Good morning.

MR. BENNETT: Robert Bennett on behalf of KPMG, and with me is Kenneth Gideon and Matthew Michael.

THE COURT: All right. Is anybody from King & Spalding here, or just Skadden, Arps?

MR. BENNETT: No, Your Honor, we're taking the lead on these matters now.

THE COURT: All right. Thank you.

MR. BENNETT: We are all with Skadden, Arps.

THE COURT: All right. I set this matter down. KPMG had requested a status call on this. This case has a history that everyone is familiar with of the original subpoenas and the objections and the privilege logs that I found inadequate, and we sent that to Judge Atheridge, who when I originally appointed him and asked him to do this, to help us preserve my judicial resources, I assumed he was going to get paid, and then I discovered he couldn't be paid for all the work he had done as a matter of law, unfortunately, and I never had him reinstated as a magistrate judge, so he's donated his time except for his expenses, which I trust have been paid.

The result was then in January the objections and -- that have come in to the Court of a fairly substantial nature from the report and recommendations issued by Judge Atheridge after his very full review of all the documents in question, and now we have those at issue, together with the request for a status conference where KPMG indicates that we ought to explore some potential ways of helping trying to resolve this with the government. The government has taken, I think, a position that perhaps none of these generic, in the

government's view, mass-marketed commercial tax shelters have any privileges attached to them either from tax preparers or legal points of view.

Let me hear -- we are on the case at this point. I don't know what has been produced, what hasn't actually been produced in accordance with the -- whatever parts of the report and recommendations of the Special Master has made, and what -- where the parties are in trying to resolve any of this, and where we can go to help resolve it, and what issues you want me to decide at this point.

I know the IRS has been anxious to get some of these documents, questioning the thousands of documents still being withheld. So let me hear from each side as to where we are at this point. Mr. Gibson.

MR. GIBSON: Thank you very much, Your Honor.

Since Mr. Bennett has come into the case, we have been meeting, and we have been exchanging correspondence. Our first meeting took place the day before Christmas Eve last year after the parties had filed their objections, and since then we have been attempting to narrow the issues that

are necessary for the Court to decide.

I will say, just as a matter of a little past history, the Court may recall that we have filed a motion for reconsideration of the Court's December 22, 2002 order.

THE COURT: Right.

MR. GIBSON: Since then, last April, KPMG produced additional privilege logs with respect to the other eight summonses.

In addition, they have produced a privilege log that is limited to its own privilege claims for those eight summonses as well. They have supplemented that privilege log throughout, those additional privilege logs throughout, and I just wanted to bring the Court up to date on that.

Yesterday we received a letter from Mr. Bennett, and just as background, we have been exchanging correspondence since late December on how best we could narrow the issues in the case to try to limit what the Court -- we would present to the Court in a way that where we could agree we could agree. And yesterday Mr. Bennett had delivered a letter to us reflecting KPMG board of directors' decision of two days ago to waive its attorney-client and attorney work product

privileges with respect to its own documents for the documents that relate to the tax shelters that the IRS is investigating.

They have not waived the privilege with respect to communications with counsel for defense of this lawsuit or the investigation, or with respect to defense of investor claims that have been raised in litigation in prelitigation against KPMG. As the Court may know, a number of investors have filed lawsuits against KPMG.

But this is a welcome development, and we expect and we understand that there will soon be produced documents, KPMG will soon be producing documents that it had previously asserted its own privilege to withhold. KPMG's counsel has made it clear to us that this is a waiver as to the IRS only and not to be construed as a general waiver, and we suggested to Mr. Bennett that his client produce the documents directly to the Internal Revenue Service, and I think that that's going to be the procedure that we will follow.

I would also suspect that the number of documents that they are withholding on those two very narrow limitations would be very small, although I'm sure Mr. Bennett would be able to

ar



address that.

Given that significant development, Your Honor, there are a few issues that remain for the Court to decide.

KPMG, from the outset, had withheld the identities of some of its tax shelter clients.

THE COURT: Right.

MR. GIBSON: And KPMG has made it very clear to us that it is serving as a proxy for those clients who claim that they are entitled to withhold their identities from the Internal Revenue Service. Working -- the IRS has worked internally and with other sources to try to narrow the list of clients that it does not know, and we are down to one. We are down to one on these eight summonses, and I want to just put a little footnote in a second on that.

The one is a corporate client that participated in a tax shelter called CLAS. That's C-L-A-S, and that's one of the summonses that is before the Court. We fully briefed this issue, Your Honor. It was briefed with the original briefing.

THE COURT: Right.

MR. GIBSON: It was briefed with the

motion for reconsideration, and I did want to point out to the Court, we did cite the John Doe v. Wachovia Corporation case that was decided in the Western District of North Carolina last year, but I also wanted to point out that the Seventh Circuit has weighed in on this in United States v. BDO Seidman, 337 F.3d 802, and the Supreme Court has denied certiorari in that case this year. So that is good law.

And the United States District Court for the Northern District of Illinois has also weighed in. Of course, they are in the Seventh Circuit, so they applied the BDO case, in a case called United States v. Arthur Andersen that was decided last year as well.

So that is an issue that is ripe for the Court to decide, a fairly simple question of law.

I did say that I wanted to just footnote one other thing.

We had indicated in our objections to the Special Master's reports last December, Your Honor, that there were two individual tax shelter investors who had been attempting to withhold their identities from the IRS, and they have filed a lawsuit in the Northern District of Texas, which is

currently pending before Judge Barefoot Sanders. The United States intervened in that lawsuit last week because we are concerned about the imminent expiration of the statute of limitations.

For this Court's purposes, we have taken the position, inconsistent with KPMG, that, number one, those identities are not privileged. KPMG has filed a motion for summary judgment in that case, as a matter of fact, Your Honor, just last Friday. And, two, that those identities are subject to a summons that the IRS issued that is not before this Court. That is the notice 2000-44 summons that we referenced in our objections that we filed last December. We are pursuing those remedies before Judge Sanders in Dallas and he has really expedited the briefing schedule. We entered the case last Thursday on a motion to intervene, and we have until tomorrow to file dispositive motion on the complaint, and the Does have until 4 o'clock Monday after to file their opposition. I suspect and I hope that we will get a prompt ruling from Judge Sanders. As I say, we are very concerned about the imminent expiration of the statute of limitations because the first year for which they claim benefits was -- tax benefits from

this tax shelter was 2000, and if they have filed April 25, 2001, the statute is going to run two weeks from today, and we estimate the amount of tax benefits to be claimed by those two individuals to be somewhere between $4-12 million.

That's my footnote. So that's one issue.

The second issue that remains before the Court is something that the Court just alluded to, which is the issue of whether purchasers of a generically marketed tax shelter have a privilege at all under section 7525(a) in communications that they have with the promoter. And again, that is an issue on this record that has been fully developed and it is ready for decision by the Court.

I will note, and obviously Mr. Bennett can speak for himself, but we actually had a conversation this morning, and Mr. Gideon indicated that they also believe that the Court needs to rule on that issue.

THE COURT: Do I need to -- you think the record is sufficient? You don't need to bring any evidence in about this type of marketing practices and evidence that's been generated from other matters and cases or hearings that have gone on about how this -- the government alleges this

program was advanced by KPMG, and Brown and Woods?

MR. GIBSON: We have offered evidence, Your Honor, in terms of three declarations from the special agent, the declaration of Mr. Jacoboni, and public record information that has been made available by the Senate Permanent Subcommittee on Investigations.

THE COURT: You have offered that?

MR. GIBSON: We offered that, Your Honor, and we provided that to the Court with our objections that we filed in December. We believe the Court can take judicial notice of the actions of the congressional committee.

So that is the second issue that the Court -- that is before the Court that we believe the Court needs to rule on.

There is a subset of that issue, and this is not ripe for decision, and we are trying to work this out. The other eight summonses for which KPMG produced indexes last spring, they have asserted on behalf of some corporations a 7525 privilege for participating in certain tax shelter transactions, and some of those tax shelter transactions are what we call listed transactions under section 6112(c) of the Internal Revenue Code.

Section 7525(b) of the Code expressly makes the tax practitioner privilege inapplicable to communications involving the direct or indirect participation by a corporation in a tax shelter. And it specifically references the definition of tax shelter in section 6662(d)2(C)(iii) of the Code, and that contains a much more expansive definition of what a tax shelter is. It basically says it's any plan or arrangement that has as one of its principal purposes the avoidance or evasion of taxes.

We have communicated with Mr. Bennett over the last couple of months about that issue, and he reports to us this morning that they are in the process of identifying those documents and those clients and communicating with those clients about whether they wish to continue to assert that privilege in light of section 7525(b).

This record is not developed enough for the Court to make that call, although I will say that if the Court determines that these -- that the participants in these shelters don't have a 7525(a) privilege, the 7525(b) issue then becomes moot.

There is one other issue that the Court needs to decide, and this almost goes without

saying, except that I need to say it, and that is we still need an order from the Court directing KPMG to comply with the summonses in whatever form the Court determines, because that's what generates the legal obligation to comply under which we could then seek sanctions if there's not compliance.

THE COURT: All right.

MR. GIBSON: So that's where we are right now, three, possibly four, issues for the Court to rule on, fully developed record on three of them.

THE COURT: All right. I appreciate that. Thank you for that review, Mr. Gibson. It was helpful to have you in.

Mr. Bennett or other counsel want to address the Court where you are in this and your view of this situation. MR. BENNETT: I agree with everything that Mr. Gibson says. I think it is obvious there has been a sea change in the landscape here.

I do want to address very briefly a point, and then I'm going to ask my partner, Mr. Gideon, who was at one point chief counsel of the IRS, on some of the more intricate tax issues, Your Honor.

The one -- just so you clearly understand, the one company that we have not identified, we

really can't. It's a Morgan Lewis client, and we are under instructions by letter of January 26, 2004 that we are not authorized to release that. So we are just really a stakeholder on that.

The second --

THE COURT: I think you had indicated, I thought I remembered reading through your thing that you had your filing with the Court -- you were talking about a coeval relationship, I guess, as a reference here, because you had certain information of any clients of the law firm, the law firm instructed you to the information relating to their clients is withheld on the grounds of privilege, and there's one left of that group, you're saying?

MR. BENNETT: That's right.

THE COURT: You requested that they consent to the production, but that one has been refused.

MR. BENNETT: Yes.

THE COURT: All right.

MR. BENNETT: And then the second, with Judge Sanders, we're actually under an order of the Court dated September 11th, 2003, instructing us that we cannot -- we cannot disclose it. So Mr. Gibson appreciates the difficult situation that we

are in on that, and actually we are sort of taking the same position before that Court. We are in agreement on that.

Your Honor, I would ask Mr. Gideon to address you on the third point dealing with the generic -- he's been directly involved with that issue.

THE COURT: All right. Thank you. And I appreciate the new counsel coming in and helping to try to resolve this matter. But I will decide whatever else has to be decided shortly, though. Go ahead.

MR. GIDEON: Thank you, Your Honor. And I think that to reiterate, we are in substantial agreement about what needs to be done.

I just want to clarify the -- what's remaining on the 7525 issue, and also I believe, Stuart, there's the issue of attorney-client privilege claims that are pending with respect to the clients themselves.

In other words, the waiver that has been referred to will take care of claims by KPMG, but now we are talking about the claims that were asserted by KPMG on behalf of the clients asserting their privileges and there were privileges in

addition to 7525, specifically the attorney-client privilege.

And to just refresh the Court's recollection on that, both you and the Magistrate, Your Honor, had sustained some of those claims. And so obviously absent your changing your mind on that, we would not be in a position to produce those.

In addition, though, where we are in substantial agreement, in order to produce even those that you ruled were not privileged, and that the Magistrate reached the same conclusion on, we still need an order. And so I think that the -- both parties are in agreement that the entry of an order would be useful to resolve exactly what the status of those documents would be, and the only thing that I would state is I don't believe that whatever decision the Court made with respect to the 7525(a) issue that Mr. Gibson alludes to would necessarily govern the attorney-client issue as well.

But the parties' position is fully stated in the objections that are of record, and so I think that the main point we want to make is that it is ripe for the entry of an order.

The only other point that may be worth reminding Your Honor is there are eight other summonses. The Court has really paid attention and extensively examined one of them. I think that our view would be that once we know what the Court is going to do about the one it has, then we would like the opportunity to confer with Mr. Gibson because we might be able then to craft an order consistent with the Court's ruling that would deal with the other summonses as well.

And I believe those are really the points that I wanted to address.

THE COURT: All right. Well, thank you very much. I appreciate that.

Mr. Gibson, do you want to respond to that briefly?

MR. GIBSON: Just very briefly, Your Honor. Mr. Gideon is right that there are a few attorney-client privilege claims that are still pending. Again, ripe for decision by the Court. And I also agree that the decision in 7525(a) doesn't necessarily resolve the attorney-client issue, although it would certainly advise the resolution of that issue.

And I also agree that it appears that once

the Court rules on the privilege claims in the one privilege log that we have, it would greatly facilitate our ability to try to go through the remaining privilege logs, and see what we agreed and didn't agree on.

I can't say, standing here today, that it gets rid of the entire case, but it would certainly guide the resolution of the rest of the case, and we would like to be able to do that very promptly once the Court rules.

THE COURT: All right, I appreciate that, and the necessity to move ahead on the case and get these rulings done, even with the somewhat detailed objections I received to the Special Master's rulings, and we will do that.

What I'm going to suggest to the parties is that it may help the Court if each side wants to give me a proposed order as to the issues the way they see them they should be resolved, and then depending how I come down, I can use the orders as a template to assist the Court in drafting the language appropriately on the privilege issues or not, and the remaining issues we have discussed.

It does seem to the Court that the change of counsel has evidenced some more compliance now

in KPMG to the subpoenas and their ability to make decisions to waive some of their own privileges assists in moving this along. I think the generic issue we need to get -- and I need to review the evidence again on that as well as look at the other privilege issues that have been raised, and then the few attorney-client issues that remain.

Is the government in agreement with the KPMG statement that Judge Sanders issued an order that these individual names cannot come out until he rules? Is that what the situation is?

MR. GIBSON: Well, it's a little more complicated than that. Last September these two John Does filed a lawsuit against KPMG in Dallas and they asked for a temporary restraining order, and a preliminary injunction, basically to prohibit KPMG from disclosing those names, and just for the Court's background, KPMG has disclosed the names of every other participant in that tax shelter to the IRS.

Without the IRS going and filing a lawsuit to enforce the notice 2000-44 summons and getting an order and allowing the Does to come in and participate as intervenors, shortly after that lawsuit was filed, KPMG and the Does entered into a

consent -- basically it was a consent order, and it basically said -- it took the onus off Judge Sanders from having to have a hearing and decide whether to issue a preliminary injunction, but it basically said you are not allowed to disclose these names until I rule on the case.

THE COURT: I see.

MR. GIBSON: And unfortunately that was six months ago. We thought that they would submit prompt things and it wasn't until the 5th of March that the John Does filed a motion for summary judgment in that case, and in our view it was an attempt by them to run out the clock. They have insisted that it's not, but it doesn't really matter what their intent is if they succeed.

So we are pursuing that with all due haste, Your Honor. We hope we get a decision by next week.

I will say that my understanding is this afternoon there is a hearing in Chicago on a summons enforcement case to one of the other promoters of that particular tax shelter, in which these two John Does are trying to withhold their names in that case. So they are fighting a multifront war and we hope either today or some

time next week we'll be able to get those names.

THE COURT: All right. Thank you. I appreciate your coming in. Then if you will submit to me, today being April Fool's Day, I would like you to maybe submit by income tax day, but perhaps before then -- you could do it in a week, I think, would be best -- proposed orders from each side on the remaining issues you wish me to address. I'm not talking about every single document, but generically, so that I can look at the language and make sure we're in accordance with the tax codes that apply.

So I will go ahead and issue a ruling, I would hope, as I said, by tax day, I'll issue a ruling as I'm filing my income tax return, I'll file a ruling in this case.

All right. Thank you, gentlemen, for coming, and I appreciate that.

MR. GIBSON: Could I just seek a little clarification what the Court wants us to do?

THE COURT: Sure.

MR. GIBSON: Does the Court want us to submit an order that would, if we won on the issues --

THE COURT: Yes.

MR. GIBSON: -- that would implement the Court's ruling --

THE COURT: Yes.

MR. GIBSON: -- not that would be the Court's ruling?

THE COURT: Right. Exactly. And that -- yes, exactly, and to make sure we have it right, if I accept your point of view of the world, and I'll get one from Mr. Bennett as well on that. But you both requested an order to be issued to satisfy the needs to produce these documents, and we'll see which way we go on the issues.

MR. GIBSON: Thank you.

THE COURT: All right. Thank you for coming in.

[Whereupon, at 10:53 a.m., the hearing was concluded.]

# *CERTIFICATE*

I, **JON HUNDLEY**, the Official Court Reporter for Miller Reporting Company, Inc., hereby certify that I recorded the foregoing proceedings; that the proceedings have been reduced to typewriting by me, or under my direction and that the foregoing transcript is a correct and accurate record of the proceedings to the best of my knowledge, ability and belief.

**JON HUNDLEY**