# Exhibit P

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN DOE 1 AND JOHN DOE 2, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 3:03-CV-2036-H |
| KPMG LLP | ) | |
| Defendant, | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Intervenor-Defendant. | ) | |

**INTERVENOR-DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT**

**ISSUES PRESENTED**

1. Congress has enacted a statute to protect the confidentiality of information that taxpayers and others provide to the Internal Revenue Service. That statute applies only to information produced to or gathered by the IRS, but not to other federal agencies or to courts. The plaintiffs seek to prevent the public from learning the contents of documents that they and KPMG filed under seal in this case. Does the tax confidentiality statute require the Court to maintain those documents under seal?

2. Long standing common law and First Amendment law recognize a compelling interest in providing public access to court records. A party seeking to seal court records must show a compelling countervailing interest, and present a narrowly-tailored remedy to meet that compelling interest. Have the plaintiffs demonstrated a compelling interest in preventing the public from accessing their identities, including the affidavits they filed in order to justify litigating the case pseudonymously, and to prove their case in chief?

## FACTS-PROCEDURAL POSTURE

In a Memorandum Opinion and Order entered April 12, 2004, the court granted KPMG's and the United States' motions for summary judgment. The Court held – consistent with the vast weight of opinion – that taxpayers who claim tax benefits on filed tax returns are not entitled to prevent the IRS from learning who they are, especially from the accounting firm that prepared their tax returns. In its Order the Court also directed the Clerk to unseal portions of the record that had previously been sealed. Those previously sealed portions of the record include the Declarations of the two plaintiffs, and a voluminous exhibit (Exhibit E) that KPMG filed to support its motion for summary judgment.

According to the plaintiffs, none of the information contained in their Declarations, or in Exhibit E to KPMG's motion for summary judgment, had been provided to the Internal Revenue Service. In fact, the plaintiffs filed this action in order to prevent the IRS from obtaining that information. The plaintiffs have moved to stay this court's order pending appeal, and KPMG and the United States have opposed that motion. The United States has already obtained copies of all three documents.

## ARGUMENT

### I.

### THE INFORMATION THE PLAINTIFFS WISH TO KEEP SECRET IS NOT PROTECTED BY THE TAX CONFIDENTIALITY STATUTE

Congress enacted 26 U.S.C. §6103 to protect the confidentiality of information that the IRS gathers in its role as enforcer of the nation's tax laws. Thus, Congress provided that "tax returns and return information shall be confidential," and "no officer or employee of the United States"

may disclose it, except in accordance with Title 26.[1] As such, that statute limits the government's authority to disclose the tax information that the IRS collects.

In order to understand and apply the general prohibition on disclosure of tax information, it is essential to know what information the statute does and does not cover. The general prohibition and the exceptions all flow from the definitions of "returns" and "return information." Those terms are defined in §§6103(b)(1) and (2), respectively, to include just about every type of tax return that is filed with the IRS, and every piece of information that the IRS gathers or maintains with respect to a civil or criminal liability under Title 26. But the cornerstone of that definition is that, in order to fall within §6103, the information must be, "received by, recorded by, prepared by, furnished to or collected by" the IRS. As the Fifth Circuit has held,

> The plain language of the statute reveals that "return information" must be information which has somehow passed through, is directly from, or generated by the IRS. . . . In sum, section 6103 requires that the source of the disclosed information must have been the IRS in order for there to be a violation of the general prohibition against the disclosure of return information.[2]

Applying the law in this circuit, information that originated with the plaintiffs, and never passed through the government, is not "return information," and does not enjoy the protection of §6103.

In these cases, the courts have consistently held that §6103 does not protect the confidentiality of tax information that was neither gathered nor revealed by the IRS. Thus, in Baskin, the Fifth Circuit held that an agent of a federal grand jury who had obtained information about the plaintiff's income pursuant to a grand jury subpoena, did not violate §6103 when he disclosed that information to the plaintiff's employer. In perhaps the earliest decided case, the Ninth Circuit held that agents of the Naval Investigative Service did not violate §6103 when they

---

[1] 26 U.S.C. §6103(a).

[2] Baskin v. United States, 135 F.3d 338, 342 (5th Cir. 1998) (citations omitted).

disclosed a retained copy of a tax return that they had seized from the plaintiff while searching his bunk, observing that "there is no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information."[3] Because the information they disclosed came from the taxpayer, and not from the IRS, it did not constitute "return information" under the definition in §6103(b)(2). In yet another case, the U.S. District Court for the District of Columbia refused to enjoin the Department of Justice from disclosing information about the plaintiff's taxes that it had obtained from third-party witnesses and from the plaintiff during the discovery phase of a tax lawsuit.[4]

Here the plaintiffs seek to maintain under seal their identities, the declarations they filed in support of their motion to litigate this case pseudonymously, and a voluminous set of documents that KPMG filed in support of its cross motion for summary judgment. None of this information originated with the IRS, or even with the government. By definition, these are not returns or return information. As such, they do not fall within the general prohibition on disclosure in §6103(a). The plaintiffs have not demonstrated any statutory basis to keep the public from having access to them. Therefore, the Court should reject their claim that § 6103 protects this information from public disclosure.[5]

---

[3] Stokwitz v. United States, 831 F.2d 893, 896 (9th Cir. 1987), cert. denied, 485 U.S. 1033 (1988).

[4] Church Universal & Triumphant v. United States, 1995 WL 271578 (D.D.C. 1995). See also, Ryan v. United States, 74 F.3d 1161, 1163 (11th Cir. 1996); Thomas v. United States, 890 F.2d 18, 21 (7th Cir. 1989).

[5] Although not relevant here, there is one particular exception in §6103 that would clearly permit the public disclosure of returns and return information in the context of a lawsuit like this one. Section 6103(h)(4)(A) authorizes the United States to disclose returns and return information in a judicial proceeding pertaining to tax administration, where the taxpayer is a party to the proceeding. Indeed, this statute enables the government is able to litigate all manner of tax cases – including tax refund suits, summons enforcement cases, and criminal tax prosecutions – in public.

II.

**THE PUBLIC'S INTEREST IN OPEN JUDICIAL PROCEEDINGS OUTWEIGHS THE PLAINTIFFS' INTEREST IN PRESERVING THEIR ANONYMITY**

The courts have long recognized strong common law and First Amendment interests in maintaining open an court system, and open access to judicial records. The Fourth Circuit recently summed up this history in an unpublished opinion, notable for its comprehensive discussion of the issue:

> We recognize the long-established common law right of access to judicial records filed in court. See, e.g., In re Application and Affidavit for a Search Warrant, 923 F.2d 324, 326 (4th Cir.), cert. denied, 500 U.S. 944 (1991); Stone v. University of Maryland Medical System Corp., 855 F.2d 178, 180 (4th Cir. 1988); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). It is a common law right that has been recognized by the Supreme Court. See Nixon v., Warner Communications, Inc., 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (footnotes omitted). Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater. See, e.g., Smith v. United States District Court for Southern Dist., 956 F.2d 647, 650 (7th Cir. 1992) (appropriateness of making court files accessible is accentuated when government is a party) (citing FTC v. Standard Financial Management Corp., 830 F.2d 404, 410 (1st Cir. 1987); United States v. Beckham, 789 F.2d 401, 413 (6th Cir. 1986) (a district court must set forth "substantial reasons" for denying access to court materials, and "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.") (citing United States v. Criden, 648 F.2d 814, 822 (3d Cir. 1981)).[6]

Thus, the Court must begin its analysis with the key consideration that there is a strong presumption and interest in maintaining open access to the court's records. There is no reason at

[6]Under Seal v. Under Seal, 27 F.3d 564 (table) (4th Cir. 1994), a copy of which is attached to this memorandum.

all why the public is not entitled to know who filed any given this lawsuit, including this one, and why they filed it. The now-unsealed declarations provide that information, and very little else. Moreover, the subject of abusive tax shelters, and the IRS's ability to enforce the tax laws against people who participate in them, is very much in the public spotlight these days – even more so as we approach Thursday's tax filing deadline. The public clearly has an interest in learning of cases where tax shelter participants seek to prevent the IRS from learning their identities.

The plaintiffs claim that much of the information in Exhibit E is their very personal, private financial information, and that the government should have no interest in making that information available to the public at large. That might be true as a general proposition. But the fact remains that taxpayers who choose to litigate their tax liabilities against the government must often place just this type of personal financial information in the court's files, as part of making their case in court. Indeed, tax cases are not routinely tried in secret, nor are the files in tax cases routinely sealed. Nor should these files be sealed, without some compelling reason.

Here there may be good reason not to open Exhibit E to public scrutiny – at least not now. The plaintiffs did not offer the exhibit, so they cannot be said to have assumed the risk that they would lose. Moreover, it can be argued persuasively that KPMG did not have to file Exhibit E in order to win the case, and that the court did not have to rely upon the information contained in Exhibit E to decide the case. Certainly, the United States did not rely upon the information in Exhibit E to argue its motion. If the Court were to determine that the plaintiffs' interest in the privacy of the information contained in Exhibit E outweighs the public's interest in open judicial proceedings, there is ample ground to support a decision to maintain Exhibit E under seal.

Thus there is no basis whatsoever to continue to shield from public view the plaintiffs' identities, or their motives for filing this lawsuit, as they articulated in their declarations. Exhibit

E, however, may well contain the types of personal and sensitive information properly kept private.[7]

## CONCLUSION

The information that the plaintiffs wish to keep out of the public record is not "return information" and is not protected from disclosure by 26 U.S.C. §6103. The public has a strong interest in open judicial proceedings. For these reasons, the Court should deny the plaintiffs' emergency motion to alter or amend the judgment, and the United States has submitted a proposed form of Order denying the motion. In the event the Court determines that the plaintiffs' interest in the privacy of the information contained in Exhibit E outweighs the public's interest in open judicial proceedings, the United States has submitted an alternative form of order that would deny the motion, but permit Exhibit E to remain under seal.

Dated: April 13, 2004

Respectfully submitted,

STUART D. GIBSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
(202) 307-6586
(202) 514-6866 (fax)

OF COUNSEL:

JANE J. BOYLE
United States Attorney

[7] See, e.g., Rule 12, Misc. Order No. 61, (U.S.D.C. N.D. Tex.) (Feb. 21, 2003).

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

UNDER SEAL, Plaintiffs-Appellees,
v.
UNDER SEAL, Defendant-Appellant.

No. 94-1171.

Argued April 14, 1994.
Decided June 27, 1994.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis III, District Judge. (CA-92-475-A)

Argued: James Severson, McCutchen, Doyle, Brown & Enersen, San Francisco, CA. On brief: Stephen W. Robinson, McGuire, Woods, Battle & Booth, Washington, DC, for Appellant.

Argued: Douglas Neal Letter, Civil Division, United States Department of Justice, Washington, DC; John Michael Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA. On brief: Frank W. Hunger, Assistant Attorney General, Helen Fahey, United States Attorney, Civil Division, United States Department of Justice, Washington, DC; Elaine C. Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA, for Appellee.

E.D.Va.

AFFIRMED.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

OPINION

PER CURIAM:

**1 The question in the instant appeal is whether the district court acted within its discretion in refusing to impose a permanent seal on a *qui tam* complaint filed under the False Claims Act, 31 U.S.C. § 3730(b), alleging fraud and false claims against a government contractor. The underlying suit has been settled between the United States and the contractor, with the latter paying $300,000 to the government. The contractor has moved to seal the complaint in an effort to prevent the disclosure of the identity of the *qui tam* relator.

The *qui tam* action was filed in April of 1992. It alleged that the manufacturer sold to the federal government computer equipment that was other than new, in violation of its contracts with the General Services Administration. The person who brought the suit had been an in-house attorney for the manufacturer, before filing his *qui tam* complaint.

Several related suits arose out of and preceded the *qui tam* action, including a suit for wrongful termination by the former employee and a suit brought by the manufacturer to enjoin him from revealing privileged information. The litigation between the two private parties was conducted under seal, both in the district court and in this Court.

After the *qui tam* action was settled, the United States applied to have the seal lifted for most of the district court record in the *qui tam* case. The manufacturer has filed with the district court a Motion to Maintain Confidential Information Under Seal, and a Motion to Dismiss or in the Alternative for Summary Judgment, arguing that the former employee is not a proper relator and that he may not, therefore, recover any portion of the settlement amount. [FN*] The United States opposed the motion for a permanent seal, contending that the district court record is subject to a common law right of public access, and that it should therefore be available to the public.

During the course of argument below, the manufacturer agreed to public disclosure of the settlement agreement, and even the government's issuance of a press release about the case. It objected, however, to any disclosure of the name, identity, and position of the relator.

On January 21, 1994 the district court issued the ruling on appeal here. The court denied the manufacturer's motion seeking to keep the *qui tam*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

complaint under seal. The district court stayed the immediate effect of its order so that the manufacturer could seek relief through appeal.

The district judge explained in a hearing on the motions that he did not find compelling the claim that a permanent seal was required to protect the manufacturer from possible harm if the fact that the *qui tam* complaint had been filed by one of the company's attorneys was disclosed.

The district court's Order precluded the government, during the pendancy of the appeal, from

> publicly disclosing the complaint in this matter, the identity of the putative relator and the former employment relationship that existed between [the manufacturer] and the putative relator. But this stay does not preclude the government from publicly announcing the settlement of the *qui tam* action and disclosing the settlement agreement, provided that the information covered by the stay is not disclosed.

**2 The manufacturer has appealed, essentially claiming that the revelation that the relator was formerly an in-house counsel at the company would cause it embarrassment. It also has asserted that the complaint contains privileged attorney-client information, since its allegations are derived from information the employee learned while he was in-house counsel. Additionally, the manufacturer has claimed that if the seal is not imposed on the complaint, the seals imposed in the prior cases between the two private litigants (the manufacturer and the erstwhile employee) will be undermined. Finally, it has been claimed that the government has shown an insufficient interest to support its desire to lift the stay.

We review the district court's decision not to order a permanent seal of the complaint under an abuse-of-discretion standard. *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir.1993).

We recognize the long-established common law right of access to judicial records filed in court. *See, e.g., In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 326 (4th Cir.), *cert. denied*, 500 U.S. 944 (1991); *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178, 180 (4th Cir.1988); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). It is a common law right that has been recognized by the Supreme Court. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (footnotes omitted). Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater. *See, e.g., Smith v. United States District Court for Southern Dist.*, 956 F.2d 647, 650 (7th Cir.1992) (appropriateness of making court files accessible is accentuated in cases where the government is a party) (citing *FTC v. Standard Financial Management Corp.*, 830 F.2d 404, 410 (1st Cir.1987)); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir.1986) (a district court must set forth "substantial reasons" for denying requests for access to court materials, and "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.") (citing *United States v. Criden*, 648 F.2d 814, 822 (3d Cir.1981)).

There are exceptions to the strong presumption of public access. *Rushford*, 846 F.2d at 253 ("presumption of access, however, can be rebutted if countervailing interests outweigh the public interests in access"). However, the party seeking to overcome the presumption of public access "bears the burden of showing some significant interest that outweighs the presumption." *Id.* (citation omitted).

It has first been argued that the complaint should be sealed in order to protect attorney/client privileges. The information contained in the complaint is little different from that contained in the settlement agreement, which, significantly, is a matter of public record. The same central claims-- that the manufacturer a) sold to the Government used instead of new goods, and b) sold to the Government for full price the same goods it sold to its commercial customers in a remanufactured program for a 30% discount--are contained in both the complaint and the settlement agreement. Rather, it is the relator's identity and his former role as in-house counsel that the manufacturer seeks to keep from the public: "the Complaint's assertions are not merely charging allegations; they are, and of necessity would be interpreted to be, his [the possible relator's] legal conclusions about the confidential information he received." Appellant's Reply Brief at 4.

**3 We are unpersuaded that the release of the relator's identity would cause the manufacturer any harm that could rise to a level necessary to overcome

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the presumption of openness. To the extent that anything in the complaint is based on privileged information, that information is largely contained in the settlement agreement. Certainly, the identity of the relator is not confidential under the attorney-client privilege.

The main concern appears to be the suffering of reputational harm, if it is discovered that one of the appellant's lawyers initiated a *qui tam* action against the corporation. But as the Sixth Circuit observed in *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir.1983), *cert. denied*, 465 U.S. 1100 (1984), "[s]imply showing that the [sealed] information would harm [a] company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Accord Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir.1985). There has been no showing that the manufacturer's reputation would be harmed by the release of information now sealed. More than enough information is already public, in the form of the Settlement Agreement, to create what is asserted would be reputational harm.

Next it has been argued that a release of the complaint would undermine prior decisions of the district court and this Court sealing the proceedings in the related cases between the two private parties. The manufacturer has claimed that armed with the information contained in the complaint a diligent person could ascertain the identities of the parties in the other actions.

We are persuaded that there is already sufficient public information from which a researcher could learn the identities of the parties. Therefore, the harm alleged is actually illusory.

More important, the earlier decisions rendered by the district court and by us did not directly involve the government. Where the government is involved in the litigation, there is an undeniable public interest in the records of the proceedings.

We note that the *qui tam* statute itself, which makes some provision for temporary sealing of records while a case is in progress, contemplates that thereafter the records should be released. The pertinent provision requires the initial filing of the Complaint to be made under seal and *in camera;* after the United States has made its election whether or not to proceed "the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure." 31 U.S.C. § 3730(b)(3). Indeed, *qui tam* actions are most often litigated in open court even in circumstances more sensitive to adverse publicity than are present here. *See, e.g., United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir.1989) ( *qui tam* action litigated absent seal of pseudonyms in context of claim for $231 million, during period of leveraged buy-out of defendant).

**4 Finally, the case of *James v. Jacobson*, 6 F.3d 233 (4th Cir.1993), which the manufacturer labels "directly analogous" to the instant case is, in fact, nothing of the sort. There, we reviewed and vacated an order denying the parties' request to proceed at trial anonymously. In that case, however, the court considered the question of whether the plaintiffs should be able to proceed anonymously in order to protect their minor children from the "perhaps severely damaging" emotional trauma that could arise from public disclosure of the identities of the plaintiffs who sued a fertility doctor for lying to them about the medical procedures they underwent. *Id.* at 241. Without anonymity, the minor children would have learned that the man they knew as their father was not actually their biological father.

Obviously the present case is not analogous. The reputational harm asserted here, even were it shown, would not come close to overcoming the burden of public access. In addition, the presence of the government in the instant case suggests an even greater presumption in favor of a public record.

Finally, the argument that the government has "no reason" to require the complaint's unsealing is simply irrelevant. The burden is not on the government to demonstrate its interest, but on the private party to show why its interest should overcome the public's interest in its right to access to judicial records. Such burden has here not been met.

Accordingly, the judgment is

*AFFIRMED.*

FN* Only the district court's ruling with respect to the Motion to Maintain Confidential Information Under Seal is before this court. Consequently, we refer to the former employee as the "relator" only for the sake of convenience, but make no determination as to his status.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

27 F.3d 564 (Table), 1994 WL 283977 (4th Cir.(Va.)), 22 Media L. Rep. 1922 Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN DOE 1 AND JOHN DOE 2, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 3:03-CV-2036-H |
| KPMG LLP, | ) | |
| Defendant. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Intervenor-Defendant. | ) | |

**ORDER DENYING EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT**

This matter is before the Court upon the emergency motion of the plaintiffs to alter or amend the Judgment entered in this case on April 12, 2004, by re-sealing the documents that the Court had ordered unsealed. The United States opposes the motion. Upon consideration, and for the reasons discussed in the memorandum filed by the United States, the Court determines that there is no right to maintain the previously sealed documents under seal.

Accordingly, it is this ____ day of April, 2004, ORDERED that the plaintiffs' Emergency Motion to Alter or Amend Judgment is DENIED.

______________________________
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN DOE 1 AND JOHN DOE 2, | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 3:03-CV-2036-H |
| KPMG LLP, | ) | |
| Defendant. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Intervenor-Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**<u>EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT</u>**

This matter is before the Court upon the emergency motion of the plaintiffs to alter or amend the Judgment entered in this case on April 12, 2004, by re-sealing the documents that the Court had ordered unsealed. The United States opposes the motion. Upon consideration, and for the reasons discussed in the memorandum filed by the United States, the Court determines that there is no right to maintain the sealed documents under seal, but that the plaintiffs' interest in the privacy of the information contained in Exhibit E outweighs the public's interest in open judicial proceedings.

Accordingly, it is this ____ day of April, 2004, ORDERED that the plaintiffs' Emergency Motion to Alter or Amend Judgment is GRANTED in PART and DENIED IN PART. The Clerk is hereby ORDERED to re-seal Exhibit E to KPMG's Cross Motion for Summary Judgment, but to maintain in the public record all other documents filed in this case. All the parties to this lawsuit, their respective counsel, and the Internal Revenue Service may have access to Exhibit E.

______________________________
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that the foregoing **INTERVENOR-DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT** and two alternative proposed forms of Order were served upon counsel for the parties this 13th day of April, 2004, by sending copies to them by facsimile as follows:

ROBERT H. ALBARAL
Baker & McKenzie
2300 Trammel Crow Center
2100 Ross Avenue
Dallas, TX 75201
(214) 978-3099

TIMOTHY W. MOUNTZ
Baker Botts LLP
2100 Ross Avenue
Dallas, TX 75201
(214) 661-4423

KEVIN M. DINAN
King & Spalding LLP
1730 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 626-3737

Stuart D. Gibson