# In The United States Court of Federal Claims

No. 05-296T

(Filed: June 12, 2006)

__________

| | | |
|---|---|---|
| GRAPEVINE IMPORTS, LTD, and T-TECH, INC., as Tax Matters Partner, | * | TEFRA partnership proceeding; Cross-motions for (partial) summary judgment; Interaction of sections 6229(a) and 6501 of the Internal Revenue Code; *AD Global* holding adopted; Plain meaning rule – section 6229(a) is an alternative minimum period of limitations; *Crnkovich*, *Rhone-Poulenc* and *Andantech* examined; Reliance on headings prohibited – section 7806(b) of the Code; Analogous provisions examined; "Subsequent" legislative history; Interaction problems rejected; Canons of construction; Relationship of sections 6229(d) and 6501; Section 6229(c)(2) and 6501(e)(1)(A); *Colony, Inc.*; Evidentiary hearing. |
| Plaintiffs, | * | |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant. | * | |

__________

**OPINION**

__________

*Michael Todd Welty*, Meadows, Owens, Collier, Reed, Cousins & Blau, L.L.P., Dallas, Texas, for plaintiffs.

*Grover Hart, III*, Tax Division, United States Department of Justice, Dallas, Texas, with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge:**

Preliminarily at issue in this tax case is whether the Internal Revenue Service (IRS) failed timely to issue a notice of Federal Partnership Administrative Adjustment (FPAA), thereby rendering certain partnership items "final" and barring the IRS from proceeding against the partnership and its partners as to those items.

I.

In March of 1996, Joseph J. Tigue and Virginia B. Tigue formed a partnership called Grapevine Imports, Ltd. (Grapevine). On April 19, 2000, Grapevine filed its partnership return (Form 1065) for 1999, showing a net short-term loss of $21,884. On or before April 15, 2000,

the Tigues filed their 1999 joint tax return, which, owing, in part, to transactions involving the partnership, showed a total loss for 1999 of $973,087. The Tigues carried this 1999 loss forward to future taxable years, along with a $1,127,481 net operating loss (NOL) carried forward from 1998. *See* 26 U.S.C. § 172. On August 17, 2001, the Tigues filed their 2000 joint tax return in which the 1998 NOL had the effect of eliminating what otherwise would have been taxable income of $730,161.

On June 19, 2003, the IRS issued a John Doe Summons to the Tigues' tax consultants, Jenkens & Gilchrist (Jenkens). Jenkens resisted this summons, and the United States Department of Justice filed a summons enforcement action in the United States District Court for the Northern District of Illinois. On May 14, 2004, the court ordered Jenkens to honor the summons within three days, and Jenkens complied on May 17, 2004.

On December 17, 2004, the IRS issued an FPAA to Grapevine's tax matters partner, T-Tech, adjusting the partners' basis in Grapevine by $10,000,000 for the 1999 tax year. No statutory notices of deficiency were issued to the Tigues. On March 8, 2005, Joseph Tigue, as the sole owner of T-Tech, remitted deposits of $1,594,205 and $221,170 for tax years 1999 and 2000, respectively, in accordance with section 6226(e) of the Internal Revenue Code of 1986 (the Code). On March 11, 2005, plaintiffs filed their complaint in this court for readjustment of partnership items under section 6226(a) of the Code, requesting that the court either declare the FPAA invalid or, alternatively, order defendant to reverse the adjustments set forth therein.

On October 21, 2005, plaintiffs filed a motion for summary judgment asserting that the FPAA's proposed adjustment was time-barred under section 6229(a) of the Code. Defendant responded with a cross-motion for partial summary judgment. Briefing and argument on both motions followed.

## II.

This case involves several different issues involving the statute of limitations provisions of the Code and, in particular, the interaction between the limitations that apply to partnership proceedings and individuals.

### A.

Although they file information returns under section 701 of the Code, partnerships, as such, are not subject to federal income taxes. Instead, under section 702 of the Code, they are conduit entities, such that items of partnership income, deductions, credits, and losses are allocated among the partners for inclusion in their respective returns. *See United States v. Basye*, 410 U.S. 441, 448 (1973). Prior to 1983, the examination of a partnership for federal tax purposes often was a cumbrous affair. The IRS, if it disagreed with the manner in which a partnership determined its gains and losses, was required to adjust the return of each partner individually. *See* Arthur B. Willis, John S. Pennell & Philip F. Postlewaite, Partnership Taxation

(hereinafter "Pennell") at ¶ 20.01 [2] (6th ed. 1999) (describing pre-1983 procedures). This procedure, which essentially encompassed an audit of each partner in the partnership, was administratively difficult for the IRS, especially when dealing with large partnerships. *Id*. Adding to this burden, the limitations period for making assessments was determined on a partner-by-partner basis. *Id*. Moreover, because any resulting litigation was conducted at the partner level, it was possible to have multiple related proceedings ongoing in the district courts, Tax Court, and Court of Claims, and to have such proceedings produce inconsistent results. *Id*.

The entire statutory scheme for the audit and litigation of partnership tax items was revised by the enactment of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, 648-671 (TEFRA). TEFRA was enacted to "'improve the auditing and adjustments of income tax items attributable to partnerships.'" *Weiner v. United States*, 389 F.3d 152, 154 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005) (quoting *Alexander v. United States*, 44 F.3d 328, 330 (5th Cir. 1995)). It "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *In re Crowell* 305 F.3d 474, 478 (6th Cir. 2002) (citing H.R. Conf. Rep. No. 97-760, at 599-600 (1982)). Under this new scheme, partnerships are required to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to their partners, while individual partners are responsible for reporting their *pro rata* share of tax on their income tax returns. *See* 26 U.S.C. § 701; *Weiner*, 389 F.3d at 154; *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998).

Under TEFRA, the threshold determination whether an item is a "partnership item" or a "nonpartnership item" governs the application of the TEFRA procedures. The treatment of all partnership items are determined at the partnership level. 26 U.S.C. §§ 6211(c), 6221, 6230(a)(1). While TEFRA defines a "partnership item" in technical terms, the provision generally encompasses items "more appropriately determined at the partnership level than at the partner level." *Id*. at § 6231(a)(3). All other items are defined as nonpartnership items, *id*. at § 6231(a)(4), the tax treatment of which is resolved at the individual partner level, using, *inter alia*, the normal deficiency procedures of the Code. *Id.* at §§ 6212(a), 6230(a)(3); *see Crnkovich v. United States*, 202 F.3d 1325, 1328 (Fed. Cir. 2000) (per curiam). If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a Notice of FPAA. 26 U.S.C. § 6226; (c); *Kaplan*, 133 F.3d at 471. Various provisions of the Code define the limitations on assessments made with respect to FPAA adjustments, and the tolling of those periods. *See, e.g.*, 26 U.S.C. §§ 6229, 6501.

For ninety days following issuance of an FPAA, the tax matters partner (TMP) has the exclusive right to file a petition for readjustment of the partnership items in the Tax Court, this court, or a United States District Court. *Id*. at § 6226(a); *see also Monahan v. Comm'r of Internal Revenue*, 321 F.3d 1063, 1065 (11th Cir. 2003). After that period expires, other partners are given sixty days to file a petition for readjustment. 26 U.S.C. § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate in the proceeding. *Id*. at §§ 6224(a), 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax

determination. *Id*. at § 6229(d). The partner may contest the tax liability by paying the assessment and filing a refund action in this court. However, "[n]o action may be brought [in this court] for a refund attributable to partnership items." *Id*. at § 7422(h).

If a partner settles his partnership tax liability with the IRS, the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement. *Id.* at §§ 6228(a)(4), 6224(c)(1). In addition, partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. *Id.* at § 6231(b)(1)(C). Thus, if a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. *See Alexander*, 44 F.3d at 331.

B.

The principal disagreement posed by the pending cross-motions for summary judgment[1] involves the interaction between the special rules of section 6229 of the Code and the general statute of limitations on assessment provided by section 6501 of the Code. Plaintiffs asseverate that section 6229 establishes a limitations period that is separate and apart from that described in section 6501. Not so, defendant retorts, asserting that the two provisions act in tandem and that section 6229 can extend the period for assessment prescribed in section 6501, but can never contract it.

In pertinent part, section 6501(a) of the Code provides, with respect to the income taxes of all taxpayers, that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Section 6501(e)(1)(A) extends this base period to six years if "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return . . . ." By comparison, section 6229(a) provides that, except as otherwise provided in that section, "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions)." Like section 6501(e), section 6229(c) of the Code extends the latter period to six years where the partnership omits from its gross income an amount which is more than 25 percent of the amount of gross income stated in its return.

In *AD Global Fund, L.L.C v. United States*, 67 Fed. Cl. 657 (2005), this court held that the issuance by the IRS of an FPAA challenging the reporting of partnership items, as a prelude to making individual partner assessments, suspended the running of the three-year statute of

[1] Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

limitations on income tax assessments in section 6501(a). On November 8, 2005, Judge Miller held that certification of an interlocutory appeal of her ruling was appropriate. *AD Global Fund, L.L.C. v. United States*, 68 Fed. Cl. 663 (2005). On January 9, 2006, the Federal Circuit agreed and granted the partnership's petition for an interlocutory appeal. *AD Global Fund, L.L.C. v. United States*, 167 F. App'x 171, 2006 WL 171766 (Fed. Cir. 2006).

C.

The undersigned agrees with much of Judge Miller's extensive analysis and wholly adopts her ultimate conclusion. This court adds the following observations, essentially in the nature of a concurrence.

1. As the court found in *AD Global, supra*, "[t]he legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible." *United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). As such, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985); *see also United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 138 (1989). This inquiry requires the court to "begin[ ] with the statutory text, and end[ ] there as well if the text is unambiguous." *BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183 (2004). In this regard, the Supreme Court has instructed that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373-74 (1986); *Yocum v. United States*, 66 Fed. Cl. 579, 586-87 (2005). Somewhat contrary to the observations made in *AD Global*, this court finds that the language in section 6229(a) is susceptible of a straight-forward textual exegesis.

The conclusion that section 6229(a) is a minimum period, not an independent limitations period exclusive of section 6501, flows from statutory language indicating that the period for assessing a tax under subtitle A of the Code "shall not expire before . . . ." By virtue of this language, section 6229(a) ensures that the statute of limitations will not terminate during the specified period, but does not indicate when the assessment period ends. Supporting this view, various lexicons define the word "before" as meaning "earlier in time" and "previous to in time; earlier than." The American Heritage Dictionary of the English Language 161 (4th ed. 2000); *see also* Meriam-Webster On Line, http://www.m-w.com/dictionary/before (as viewed on June 12, 2006). Thus, the phrase "shall not expire before," by its very terms, contemplates that the limitations period may expire "after" three years from the date of the partnership return. *See* William S. McKee, William F. Nelson & Robert L. Whitmore, Federal Tax'n of Partnerships and Partners ¶9.07[6][b] (2006) ("[l]iterally, § 6229(a) does not say that no taxes with respect to partnership items shall be assessed after the uniform assessment period described in § 6229(a) expires"). Therefore, if, as plaintiffs contend, section 6229(a) creates its own separate statute of limitations, it is one without an endpoint – an oxymoron, to be sure, ***unless***, as appears true,

section 6229(a) is merely a safe harbor that augments section 6501. Plaintiffs' interpretation, indeed, becomes even more tangled if one focuses on the pesky word "not" in the statutory phrase – to adopt their position, one must take language indicating when the statute will ***not*** expire and elliptically treat it as defining when it ***will*** expire. Suffice it to say, the language of section 6229(a) is too clear to rearrange in this fashion.

As evidence of this, courts dealing with the issue presented have construed section 6229(a) as merely guaranteeing a minimum, or extended, period of assessment that complements the period provided in section 6501. For example, the Federal Circuit in *Crnkovich*, 202 F.3d at 1326, adopted this court's opinion in that case, which dealt with the treatment, under sections 6229(a) and (f), as well as section 6501(a), of an alleged settlement agreement under section 6231(b)(1)(C).[2] There, the court described the interplay between these sections, thusly –

> [T]he three and one-year limitations periods in I.R.C. §§ 6229(a) and (f) do not unambiguously define an end date for making an assessment in that they instead use the phrase "shall not expire before." The failure in section 6229 to define an end date leaves open the possibility that the applicable limitations period may expire ***after*** the periods set forth therein. Under this interpretation, the statute of limitations in Section 6501 would control if it expires after expiration of the three and one-year periods in Section 6229. Section 6229 would serve only to extend the assessment period under Section 6501.

*Id*. at 1335 n.7 (emphasis in original). More recently, the Tax Court, after extensively analyzing this issue, reached the same conclusion in *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r of Internal Revenue*, 114 T.C. 533, 542 (2000) (emphasis in original), there opining that "[s]ection 6229 provides a ***minimum*** period of time for the assessment of any tax attributable to partnership items . . . notwithstanding the period provided for in section 6501, which is ordinarily the ***maximum*** period for the assessment of any tax." That opinion later was approved by the D.C. Circuit in *Andantech L.L.C. v. Comm'r of Internal Revenue*, 331 F.3d 972, 976 (D.C. Cir. 2003), in which the court of appeals affirmed a Tax Court decision that had relied upon *Rhone-Poulenc*.[3]

---

[2] In language patterned after section 6229(a), section 6229(f) of the Code indicates that that if an item becomes a nonparternership item by reason of one of the events described in section 6231(b), "the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date which is 1 year after the date on which the items become nonpartnership items." Section 6231(b)(1)(C) indicates that a partnership item shall become a nonpartnership item if the Secretary of the Treasury or the Attorney General "enters into a settlement agreement with the partner with respect to such items."

[3] In *Andantech*, *supra*, the D.C. Circuit explained:

> There is nothing about the court's reasoning in *Rhone-Poulenc*, nor in its reliance on that case here that gives us pause. The language of § 6501 plainly refers to all

In arguing to the contrary, plaintiffs cite, as supposedly authoritative, a variety of cases in which courts have stated that the period for assessing a tax with respect to a partnership item was three years from the date the partnership return was filed. *See, e.g.*, *Weiner*, 389 F.3d at 154-55; *Callaway v. Comm'r of Internal Revenue*, 231 F.3d 106, 110 (2d Cir. 2000). Each of these references is either plainly or at least arguably *obiter dicta* – for example, the court held that it lacked jurisdiction to consider this issue in *Weiner,* while *Callaway* involved a non-partnership item. Moreover, in terms of persuasiveness, each of these references is unaccompanied by critical analysis, suggesting that the courts were not focused on the issue involving the interplay between sections 6229(a) and 6501.[4] Indeed, these are not the only opinions to make glancing,

---

> the assessments made pursuant to the chapter, and specifically notes that § 6229 may be used to extend the period in case of partnership items. Likewise, the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term "shall not expire" that the provision is intended to dictate a minimum period, but not an absolute restriction. . . . [W]e find the reasoning and analysis first applied by the Tax Court in *Rhone-Poulenc*, then followed in the present case reasonable, persuasive, and ultimately convincing . . . .

331 F.3d at 977.

[4] Plaintiffs offer *Callaway, supra,* as perhaps their strongest case, but, in fact, that decision may be internally inconsistent. There, the partner in a partnership and his wife filed joint returns. The TMP of the partnership entered into an agreement with the IRS to extend indefinitely the statute of limitations on the partnership's 1986-1988 returns. Thereafter, the partner died. On December 23, 1991, the estate of the deceased partner filed a request for a prompt assessment, under section 6501(d), of any taxes it owed, which, under that section, gave the IRS 18 months from the date of the request to assess any taxes. Under section 6231(c)(1)(E) of the Code, the request also had the effect of converting partnership items of the estate into nonpartnership items. The IRS completed a TEFRA audit of the partnership and, on October 5, 1992, issue an FPAA. A challenge to the FPAA was filed in this court, but, in 1995, the action was dismissed and the FPAA sustained. In July of 1996, the IRS asserted deficiencies against the estate and the decedent's wife, which led to an action in the Tax Court.

On appeal, the Second Circuit held that when the estate's partnership items were converted into nonpartnership items those items acquired the same character with respect to the wife. *Callaway*, 231 F.3d at 116-19. The court found that as a result of the conversion, the nonpartnership items were subject to the statute of limitations provisions of section 6501, but limited by the one-year rule in section 6229(f)(1). It thus held that the limitation period for assessing taxes attributable to the converted nonpartnership items expired on December 23, 1992, that is, one year after the conversion. *Id.* at 122. While this holding treated section 6229(f)(1) as if it established a separate statute of limitations that trumped the limitations in section 6501, the court, in a footnote, suggested otherwise. There, it hypothesized a situation in which the partner

yet mistaken, references to section 6229(a). Thus, in *Rhone-Poulenc*, the Tax Court acknowledged that several of its prior opinions contained *dicta* contrary to its ruling, 114 T.C. at 543 (citing *Boyd v. Comm'r of Internal Revenue*, 101 T.C. 365, 370 (1993)). But, that court also noted *dicta* in its cases that was consistent with the result it reached. *Rhone-Poulenc*, 114 T.C. at 542-43; *see, e.g., Harris v. Comm'r of Internal Revenue*, 99 T.C. 121, 131 (1992) ("The section 6229 limitations period acts to extend the limitations period otherwise available under section 6501 when such period has otherwise expired."), *aff'd*, 16 F.3d 75 (5th Cir. 1994); *Estate of Quick v. Comm'r of Internal Revenue*, 110 T.C. 172, 181-82 (1998), *as supplemented*, 110 T.C. 440 (1998). Be that as it may, assuming a proper analysis here involves more than judicial nose-counting, it remains that the passing remarks in these cases neither detract from, nor particularly advance, plaintiffs' position. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 351 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").[5]

In concluding that the language of section 6229(a) was ambiguous, Judge Miller, in *AD Global*, relied not only on some of the aforementioned cases, but upon the heading of that section, *to wit* – "Period of limitations for making assessments." However, section 7806(b) of the Code strictly instructs that the heading of a section is utterly without legal significance, stating:

> [n]o inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title, nor shall any table of contents, table of cross references, or similar outline, analysis, or descriptive matter relating to the contents of this title be given any legal effect."

---

had died on December 8, 1989, and the estate had filed a request for prompt assessment a day later. Under this scenario the court indicated that "[u]nder section 6229(f) the limitations period on assessment attributable to the [converted partnership items] could not have expired ***sooner*** than December 9, 1990." *Id*. at 122 n.20 (emphasis in original). The court held that, under this scenario, the actual limitations period was controlled by section 6501 – section 6501(d) would control the period for the estate, while section 6501(a) would control that for the partner's wife. The court concluded that "under this fact scenario, section 6229(f) does not provide the limiting date for either spouse." *Id*. Thus, in the hypothetical, the court did not treat section 6229(f) as establishing a separate limitations period. Apart from this, it should be recognized that the issue presented in *Callaway* is very similar to that considered by the Federal Circuit and this court in *Crnkovich, supra.* Therefore, if the former decision is persuasive, as plaintiffs' claim, the latter is all the more binding.

[5] Searching vainly for some authority to bolster their position, plaintiffs make various assertions based upon IRS internal materials that are not citable as precedent under 26 U.S.C. § 6110(k)(3). The court will not consider those materials. *See Vons v. United States*, 51 Fed. Cl. 1 (2001).

26 U.S.C. § 7806(b). Case law makes amply clear that this provision prohibits courts from relying on the heading of a section in construing the language therein. *See In re Juvenile Shoe Corp. of Am.*, 99 F.3d 898, 901 (8th Cir. 1996); *Nordby Supply Co. v. United States*, 572 F.2d 1377, 1378 (9th Cir.) (per curiam), *cert. denied*, 439 U.S. 861 (1978); *Motor Fuel Carriers, Inc. v. United States*, 420 F.2d 702, 707 (Ct. Cl. 1970); *Cinergy Corp. v. United States*, 55 Fed. Cl. 489, 503 n.22 (2003); *see also United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 223 (1996) (recognizing this principle); 13 Mertens Law of Fed. Income Tax'n § 46:15 n.15 (2006) ("[t]he title of the provision has no legal effect in construing the statute").[6] Of course, in many ways, this is much ado about nothing, for even if one were to credit this title, it does not indicate that the period prescribed in section 6229 is, in any way, exclusive.[7]

2. In this regard, the language of section 6229(a) is far from unique. The same essential words – "shall not expire before" – are employed in a dozen or more Code provisions, including several others within section 6229, all of which work either to suspend or extend periods of limitation otherwise applicable.[8] These provisions have consistently been construed to be

---

[6] In this regard, the Code incorporates, in part, the "wise rule that the title of a statute . . . cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947); *see also United States v. Minker*, 350 U.S. 179, 185 (1956). Section 7806 derives from the Act of Feb. 10, 1939, ch. 2, § 6, 53 Stat. 1a, which provided a similar restriction in the interpretation of the 1939 Code. Since that Code was a compilation of prior laws, the codifiers' characterization of statutory effect was deemed an uncertain guide to congressional meaning. *See United States v. Dixon*, 347 U.S. 381, 385-86 (1954).

[7] If the court were to credit this title, notwithstanding section 7806(b), it seemingly also would have to give effect to the cross-reference in section 6501(n)(2), which provides that "[f]or extension of period in the case of partnership items (as defined in section 6231(a)(3)), *see* section 6229." However, reliance on such cross-references is precluded by section 7806(a) of the Code.

[8] *See, e.g.*, 26 U.S.C. §§ 45H(f)(4)(A) (additional limitations period for assessments relating to credit for production of low sulfur diesel fuel); 118(d)(1) (same for assessments relating to contributions to capital); 183(e)(4) (same for assessments relating to activities not engaged in for profit); 409(n)(2)(C) (same for assessments relating to tax credit employee stock ownership plans); 453(e)(8) (same for assessments relating to first disposition of property associated with installment sale); 617(a)(2)(C) (same for assessments relating to elections or revocation of elections relating to certain mining exploration expenditures); 1033(a)(2)(C)(i) (same for assessments relating to property compulsorily or involuntarily converted); 1042(f)(1) (same for assessments relating to sale of qualified replacement property); 2032A(f)(1) (same for assessments relating to disposal of property used in farming or trade or business), 6229(e)(2)(B) (same for assessments relating to unidentified partners); 6229(f)(1) (same for assessments relating to items that become nonpartnership items); 6241(c)(2)(C) (same for assessments relating to adjustments in partner's distributive share of partnership item); 6251(c) (same for assessments relating to certain administrative adjustments of partnership items); 6330(e)(1)

ameliorative, not prohibitive, that is, they do not represent exclusive statutes limiting the IRS, but rather minimum periods that Congress has prescribed to ensure that the IRS has sufficient time to perform certain tasks, including scrutinizing particular types of transactions. This view is well-demonstrated in a broad universe of legislative history,[9] regulations,[10] and cases.[11] This court

---

(suspension of certain limitation periods pending hearing before levy); 6503(c) (suspension of certain limitation periods where taxpayer outside the United States); *see also* 26 U.S.C. §§ 1314(b), 6230(a)(3)(A); 26 U.S.C. § 1034(j) (1996). This same language also has been employed to extend limitations provisions in numerous tax transition provisions. *See, e.g.*, Pub. L. 99-514, Title XVIII, § 1879(q), 100 Stat. 2085, 2912 (1986); Pub. L. 95-600, as amended by Pub. L. 96-222, title I, § 101(a)(14)(A), (D), 94 Stat. 194, 204-05 (1980); Pub. L. 95-30, Title III, § 301(d), 91 Stat. 126, 152 (1977)

[9] As to § 617(a)(2)(C): H.R. Rep. No. 89-1337, at 2783 (1966) ("The provisions of such sections will not limit the assessment of deficiencies during any period of limitations otherwise provided by or pursuant to law but only provide an additional period for the assessment of a deficiency."); S. Rep. 89-1377, at 2783 (1966) (same); as to § 2032A(f): H.R. Rep. 94-1380, at 27 (1976) ("[t]the bill provides for an extension of the statutory period for assessment"); as to § 6503(c): S. Rep. 89-1708, at 3745-46 (1966) (section provides for "suspension of the period of limitations during the period of the taxpayer's absence from the country rather than that of the property").

[10] *See* 26 C.F.R. §§ 1.118-2(e) (§ 118(d)(1) extends limitations period where taxpayer treats amount as contribution to capital); 1.617-1(c)(3) (describing § 617(a)(2)(C) as relating "to [an] extension of the period of limitations for the assessment of any deficiency attributable to an election or revocation of an election under section 617(a)"); 1.617-1(c)(1) (same).

[11] As to § 183(e)(4): *Wadlow v. Comm'r of Internal Revenue*, 112 T.C. 247, 251-52 (1999) (§ 183(e)(4) effectuates a suspension of the statute of limitation); *Crawford v. Comm'r of Internal Revenue*, 97 T.C. 302, 307 & n.3 (1991) (under § 183(e)(4), "[t]he usual period for assessing tax is extended to accommodate the delayed determination;" noting "[n]umerous Code provisions specially extend period of limitations otherwise applicable"); *Follum v. United States*, 1999 WL 250746 at *6 (W.D.N.Y.), *aff'd*, 199 F.3d 1322 (2d Cir. 1999); as to § 1033(a)(2)(C)(i): *Myers v. United States*, 1972 WL 3167 at *11 (S.D. Cal. 1972); *Au Hoy v. Comm'r of Internal Revenue*, 58 T.C. 201, 205 (1972); as to § 1034(j): *Pilaria v. Comm'r of Internal Revenue*, 84 T.C.M. 305, 308 (2002) ("section 1034(j) in turn grants the Commissioner an extended period of time within which to assess any deficiency attributable to gain from the sale or exchange property that the taxpayer has characterized as his principal residence"); *Scherr v. Comm'r of Internal Revenue*, 61 T.C.M. 2049, 2052 (1991); as to § 2032A(f)(1): *LeFever v. Comm'r of Internal Revenue*, 100 F.3d 778, 789-90 (10th Cir. 1996); *Stovall v. Comm'r of Internal Revenue*, 101 T.C. 140, 150-51 (1993); as to § 6229(e)(2)(B): *Costello v. United States*, 765 F. Supp. 1003, 1006-07 (C.D. Cal. 1991) ("That section tolls the regular statute of limitations on assessment of taxes against partners in cases where a partner's name is not furnished on the partnership return."); as to § 6330(e)(1): *Holliday v. Comm'r of Internal*

catalogued some of these authorities in *AD Global*, ultimately concluding that "[p]laintiff has not cited to the court's satisfaction any provision in which Congress uses the 'shall not expire before' language to trump section 6501(a)'s more general rule on the time limit of assessments." 67 Fed. Cl. at 675.

Had Congress intended to establish an absolute bar in section 6229(a), it surely knew how to do so using language commonly employed in other Code provisions. Unlike section 6229(a), the latter limitation provisions leave little doubt as to their import, as they clearly indicate that a given action must occur "within" a certain number of years after a tax event. *See* 26 U.S.C. §§ 6501(a) ("the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."); 6502(a) (prescribing certain collection techniques available "only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax"); *see also, e.g.*, 26 U.S.C. §§ 6531 (period of limitations on criminal prosecutions); 6532(b) (period of limitations on suits to recover erroneous refunds); 6696(d)(1) (period for assessing certain penalties). Several courts, indeed, have been struck by the stark contrast between section 6229(a) and these other clear statutes of limitations. In this regard, for example, *Crnkovich* distinguished section 6229(a) from section 6501(a), noting that the latter section "unambiguously states that the IRS has only three years to make an assessment ('any tax . . . ***shall be assessed*** within 3 years.')." 202 F.3d at 1335 n.7; *see also AD Global*, 67 Fed. Cl. at 673 (section 6229(a) "does not use language traditionally associated with statutes of limitations"); *Rhone-Poulenc*, 114 T.C. at 545 ("if Congress had intended to create a completely separate statute of limitations for assessments attributable to partnership and affected items, the drafters of section 6229 would have tracked the language of section 6501(a)"); Pennell, *supra*, at ¶ 20.08[1] ("This language of [section 6229(a)] pointedly is different from the language in the general limitation statute that states that tax 'shall be assessed within three years' from the stated date.").

3. Accordingly, plaintiffs' textual arguments do not withstand close scrutiny. And they stumble on still harder ground in the face of the statute's legislative history. While the court in *AD Global* found that history generally unhelpful, this court believes that it strongly supports the reading of that section that derives from its plain meaning.

For one thing, the legislative history confirms that an overriding purposes of TEFRA was to facilitate the audits of large partnerships. As noted by the Third Circuit, "[t]he TEFRA partnership provisions were enacted . . . in response to the 'mushrooming administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners.'" *Rhone-Poulenc Surfactants and Specalities, L.P. v. Comm'r of Internal Revenue*, 249 F.3d 175, 178 (3rd Cir. 2001) (*quoting*

---

*Revenue*, 88 T.C.M. 41, 43 (2004); as to § 6503(c): *McAuley v. United States*, 525 F.2d 1108, 1112 (9th Cir. 1975) (§ 6503(c) provides for suspension of the period of limitations for collection of the tax where taxpayer is outside of U.S. for more than six months); *United States v. Verlinsky,* 459 F.2d 1085, 1087-88 (5th Cir. 1972) (same); *In re Gore*, 182 B.R. 293, 304 (Bkrtcy. N.D. Ala. 1995) (same).

*Boyd*, 101 T.C. at 368).[12] Yet, under plaintiffs' interpretation of section 6229(a), the IRS most likely would have not more, but less time to assert deficiencies against individual partners than before the passage of TEFRA, particularly in situations involving tax shelter partnerships with numerous partners. That is because plaintiffs claim that, under section 6229(d), the issuance of an FPAA does not suspend the individual statute of limitations under section 6501(a). Under this view, the IRS would be obliged either to (i) issue the FPAA, complete all litigation with respect thereto (with the partnership incentivized to delay that litigation), and issue an individual notice of deficiency all prior to the running of the section 6501(a) limitations period; or (ii) attempt to bypass the TEFRA partnership rules altogether and issue the partner an individual notice of deficiency prior to resolving the partnership issues. The Tax Court, in fact, has indicated that the latter scenario is not authorized by the Code. *See GAF Corp. v. Comm'r of Internal Revenue*, 114 T.C. 519, 527-28 (2000). Accordingly, one must conclude that if plaintiffs are right, Congress misfired – that is, it enacted provisions that decrease compliance, while making the administration of the tax laws more difficult than before TEFRA. But, of course, plaintiffs' interpretation finds no support in the language Congress actually enacted – language that, in fact, appears to be consonant with the purposes identified in the legislative history.

Indeed, since 1992, various Congressional tax-writing committees have repeatedly stated they intended section 6229(a) to be an extension of the limitations period in section 6501, rather than a separate period of limitations. The earliest vintage of these comments may be found in two 1992 reports of the House Ways and Means and Senate Finance Committees, respectively, dealing with bills that would have modified section 6229. These reports describe "current law" by stating that "[t]he period for assessing tax with respect to partnership items generally is the longer of the periods provided by section 6229 or section 6501." H.R. Rep. No. 102-631, at 142, 145 (1992); 138 Cong. Rec. S, 11,288 (1992) (Technical Explanation of Finance Committee amendment); *see also* H.R. Conf. Rep. No. 102-1034, at 883, 885 (1992); H.R. Conf. Rep. No. 102-461, at 517, 520 (1992). The same statements were reiterated by the House Committee in 1993 and 1995. *See* H.R. Rep. No. 103-353 (1993); H.R. Rep. No. 104-280(II), at 443, 445 (1995). To be sure, the bills that the 1992, 1993 and 1995 reports accompanied were not enacted. But, the same statement characterizing current law reappeared, *haec verba*, in multiple committee reports filed in 1997, when provisions from these earlier bills amending section 6229 were finally enacted by Congress as part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, §§ 1233(b), 1235(a), 111 Stat. 788, 1024-25. *See* S. Rep. No. 105-33, at 256, 258 (1997); H.R. Rep. No. 105-148, at 589, 591 (1997); H.R. Conf. Rep. 105-220, at 680, 682 (1997). Critically, it is

---

[12] *See also* H.R. Conf. Rep. No. 97-760, at 599-600 (TEFRA designed "to promote increased compliance and more efficient administration of the tax laws."); Tax Compliance Act of 1982 and Related Legislation: Hearing on H.R. 6300 Before the House Comm. on Ways and Means, 97th Cong., 2d Sess. 80-81 (1982) (statement of John E. Chapoton, Assistant Sec'y of the Treasury for Tax Policy); Staff of the Jt. Comm. on Tax'n, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (hereinafter "TEFRA Blue Book"), at 267-68 (Comm. Print. 1982); *Maxwell v. Comm'r of Internal Revenue*, 87 T.C. 783, 787 (1986).

the version of 6229, as amended in 1997, that applies to the case *sub judice*. *See* Pub. L. 105-34, at § 1233(d) (effective date provision).

In *AD Global*, Judge Miller treated these reports, including the 1997 reports, as "subsequent" legislative history, and indicated that they would "not be accorded any weight." 67 Fed. Cl. at 685. In this regard, she undoubtedly relied, albeit *sub silentio*, on the premise that "[t]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 348-49 (1963); *see also Russello v. United States*, 464 U.S. 16, 26 (1983). But, in this court's view, this is not a case in which that rule should apply. At the least, the 1997 reports must be accorded significant weight as they represent the contemporaneous views of the Congress that enacted the amended version of section 6229 applicable to this case.[13] Those views thus were expressed neither with respect to failed legislation, *cf. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994), nor in the course of Congress' amending some entirely different provision of the Code, *cf. Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1347 & n.1 (Fed. Cir. 2001). *See also* T. Alexander Aleinikoff, Updating Statutory Interpretation, 87 Mich. L. Rev. 20, 41 n.96 (1988). Rather, they were made – successively, in the House, Senate and Conference reports – by the same Congress that enacted intertwining amendments to the very provision being applied here. In analogous settings, courts repeatedly have accorded "great" or "significant" weight to an amending Congress' interpretation of the underlying statute – as well they should.[14]

---

[13] To be sure, Congress did not amend subsection (a) of section 6229 as part of the 1997 Act. However, it modified subsection (f) and added subsection (h) to the statute, both of which reference the period described in subsection (a). Accordingly, Congress did not merely express its views regarding a prior statute, but actually acted upon those views in modifying provisions that interact directly with section 6229(a).

[14] *See, e.g., Bufferd v. Comm'r of Internal Revenue*, 506 U.S. 523, 530 n.10 (1993); *Bowen v. Yuckert*, 482 U.S. 137, 148-52 (1987) (interpreting the Social Security Act in light of the Social Security Disability Benefits Reform Act of 1984); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380-81 & n.8 (1969); *United States v. Kay*, 359 F.3d 738, 752 (5th Cir. 2004); *Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 929 n.26 (5th Cir. 2000); *United States v. Waste Indus., Inc.*, 734 F.2d 159, 166 (4th Cir. 1984); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 539-40 (1992) (Blackmun, J., concurring, in part, and dissenting, in part); 2B Norman J. Singer, Sutherland: Statutes and Statutory Construction (hereinafter Sutherland) § 49.11 (6th ed. 2000) ("Where a former statute is amended . . . a number of courts have held that such amendment or subsequent legislation is strong evidence of legislative intent of the first statute."). As noted by one commentator, "where the operation of the statute being enacted depends in turn upon the construction of a prior statute, [the] specific and official expression [in committee reports] of what the prior statute is assumed to mean is integral to the current enactment and should be treated as authoritative and controlling." Bradford L. Ferguson, Reexamining the Nature and Role of Tax Legislative History in Light of the Changing Realities of the Process, 67 Taxes 804, 821 (1989); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1465 n.4 (2d Cir. 1993).

Moreover, even were we not dealing with the reports that accompany amendments of the very section at issue – as in the 1992, 1993 and 1995 reports – it is simply untrue that subsequent legislative history is wholly irrelevant, at least where it sheds light on allegedly ambiguous language. As the Supreme Court stated in *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980), "while the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight and particularly so when the precise intent of the enacting Congress is obscure." *See also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974); *Heublein*, 996 F.2d at 1465; *United States v. Ne. Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 741 (8th Cir. 1986), *cert. denied*, 484 U.S. 848 (1987); *Hinck v. United States*, 64 Fed. Cl. 71, 81 n.17 (2005), *aff'd*, 446 F.3d 1307 (Fed. Cir. 2006). Of course, owing to the preferred method of interpreting a statute through its plain language, subsequent legislative history is less readily employed where the language of a statute is clear and unambiguous; but, it certainly constitutes a prophylactic against adopting a tortured reading of an otherwise plain statute. *See Zedner v. United States*, 126 S.Ct. 1976, 1985-86 (2006); *S.E.C. v. J.W. Barclay & Co., Inc.*, 442 F.3d 834, 842 & n.10 (3d Cir. 2006); *Yang v. Cal. Dept. of Soc. Servs.*, 183 F.3d 953, 960-61 (9th Cir. 1999); *Pennington Seed, Inc. v. United States*, 10 F.3d 6, 11 (D.C. Cir. 1993). And, in that regard, this earlier legislative history serves a useful purpose here.

In the case *sub judice*, the views of "subsequent" Congresses are far from "hazardous," as they only reinforce the intent of the originally-enacting legislature. In the case of the 1997 reports, those views, of course, were not subsequent at all, but the contemporaneous views of the Congress that passed the operative version of the statute. As such, unlike most of the tangential legislative history that was profferred to Judge Miller in *AD Global*, the legislative history referenced above, particularly that of 1997, could not be clearer and is entitled to significant weight. And it leaves no doubt that section 6229 augments, but does not supplant, the basic statute of limitations of section 6501 of the Code.[15]

---

[15] As the plaintiff did in *AD Global*, *see* 67 Fed. Cl. at 690, plaintiffs emphasize language in the Joint Committee's Summary of TEFRA that states: "The period of limitations for assessments attributable to partnership items generally is the later of 3 years from the filing of the partnership return or the last day for filing such return . . . ." Staff of the Jt. Comm. on Tax'n, 97th Cong., 2d Sess., Summary of the Revenue Provisions of H.R. 4961 (the Tax Equity and Fiscal Responsibility Act of 1982) at 61 (1982). While the Supreme Court in *Fed. Power Comm'n v. Memphis Light, Gas & Water Div.,* 411 U.S. 458, 472 (1973), referred to a particular "Blue Book" as a "compelling contemporary indication" of congressional intent, the Federal Circuit more recently stated that "[a]s a post-enactment explanation, the Blue Book interpretation is entitled to little weight." *Fed. Nat'l Mortgage Ass'n v. United States*, 379 F.3d 1303, 1309 (Fed. Cir. 2004). These two opinions are reconcilable, as they merely reflect that the relative value of a given Blue Book stems from the extent to which it accurately provides a compass to more definitive sources of legislative history, such as committee reports. *Estate of Hutchinson v. Comm'r of Internal Revenue*, 765 F.2d 665, 669-70 (7th Cir. 1985) (Blue Book explanations are entitled to weight when consistent with other evidence of legislative intent); *see also AD Global*, 67 Fed. Cl. at 678 n.27 (citing additional cases cautioning about relying on such summaries absent independent support in legislative history). Here, an examination of legislative history

4. Redoubling their efforts to inject ambiguity into the statute that does not exist, plaintiffs assert that not treating section 6229 as a fixed statute of limitations creates a number of interaction problems with other TEFRA provisions. Of course, since the statutory language appears clear and the legislative history even more so, it is far from apparent that this court could depart from the language that Congress actually enacted even if it created disfunctionality. As the Supreme Court has admonished –

> But the fact that Congress might have acted with greater clarity or foresight does not give courts a ***carte blanche*** to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). . . . "Going behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982) (quoting *Piper v. Chris-Craft Indus*., 430 U.S. 1, 26 (1977)). When even after taking this step, nothing in the legislative history remotely suggests a congressional intent contrary to Congress' chosen words, . . . any further steps take the courts out of the realm of interpretation and place them in the domain of legislation.

*United States v. Locke*, 471 U.S. 84, 95-96 (1985) (parallel citations omitted); *see also United States v. Lund*, 853 F.2d 242, 247 (4th Cir. 1988). In short, "[w]e can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit." *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 236 (1955); *see also United States v. Correll*, 389 U.S. 299, 306-07 (1967) (The courts "do not sit as a committee of revision to perfect the administration of the tax laws.").[16] Fortunately, like the Carrollian Jabberwock, the interaction concerns raised by plaintiffs ultimately prove a fiction.

Those concerns fall into four, somewhat overlapping, categories. In several instances, plaintiffs strain further the language of various subsections of sections 6229 and 6501 in an effort to raise specters that simply do not exist. Applied as written, all of the cited provisions work smoothly with an interpretation that treats section 6229(a) as an alternative minimum period of

---

fails to unearth anything in reliable sources that supports the language employed in the above quote from the TEFRA Blue Book. By comparison, the Blue Book for the 1997 Act – again the statute applied herein – repeats the accompanying 1997 reports in stating: "The period for assessing tax with respect to partnership items generally is the longer of the periods provided by section 6229 or section 6501." *See* Staff of Jt. Comm. on Tax'n, 105th Cong., 1st Sess., General Explanation of Tax Legislation Enacted in 1997, at 372, 375 (1997).

[16] This is not to say that a court should – or this court would – blithely adopt an interpretation of one section of the Code that renders another superfluous. *See Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973).

limitations.[17] On other counts, plaintiffs assert that adoption of defendant's interpretation would render other Code provisions superfluous. But, a careful review reveals that each of the identified provisions actually serve independent purposes and are not surplusage.[18] In yet other instances, plaintiffs erect strawman propositions – principally, that the TEFRA provisions were intended to create absolute uniformity in the tax treatment (and limitations periods) of partners – that are overstatements. The failure of the TEFRA provisions, as interpreted by defendant, to live up to these false expectations thus demonstrates nothing. *See AD Global*, 67 Fed. Cl. at 676.[19] Perhaps most ironic of these claims are those premised upon sections 6229(f) and (h), which were amended and enacted, respectively, by the 1997 Act. Plaintiffs manage to invoke these provisions while donning blinders to the accompanying legislative history, which, of course, explicitly indicates that Congress interpreted section 6229(a) in the precise fashion that defendant contends. This approach obviously is a *non sequitur*. But, it serves to emphasize the relevance and importance of what plaintiffs elsewhere erroneously denigrate as "subsequent"

---

[17] In this regard, plaintiffs make much of the fact that certain paragraphs in section 6229 refer to the period in subsection (a) as "expir[ing]," *see* 26 U.S.C. §§ 6229(e)(2)(B), 6229(f)(1), or "running," *see* 26 U.S.C. § 6229(h). But, each of these provisions also makes sense if the period in subsection (a) is a treated as a minimum period, as defendant contends. *See Rhone-Poulenc*, 114 T.C. at 544 (reaching a similar conclusion).

[18] For example, plaintiffs assert that defendant's reading of section 6229(a) would render section 6229(b)(3) superfluous. The latter paragraph provides that "[a]ny agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items." Plaintiffs contend that, if, as defendant argues, section 6501(a) applied to partnership items, then an agreement to extend that period would automatically apply to partnership items, even without section 6229(b)(3). However, as the Tax Court noted in *Rhone-Poulenc*, 114 T.C. at 549-50, extension agreements under section 6501(c)(4) do not necessarily apply to entire tax years, but may apply to particular items on a return, with section 6229(b)(3) providing a "default rule" for interpreting such extensions. Under these circumstances, the court concluded that treating section 6229(a) as providing a minimum period for assessment does not render section 6229(b)(3) "superfluous." *Id.*; *see also AD Global*, 67 Fed. Cl. at 676 (relying upon *Rhone-Poulenc* in finding this reading of section 6229(b)(3) "possible"). Moreover, plaintiffs do not explain why, if they are correct, there is a need for a provision, such as section 6229(b)(3), that plainly targets the interaction between section 6229(a) and section 6501. *See Rhone-Poulenc*, 114 T.C. at 550 (discussing this).

[19] Even a cursory reading of the Code reveals that Congress recognized that partner-specific limitations issues could arise that would require certain partnership issues to be dealt with on an individual partner basis. For example, section 6226(d)(1)(B) permits individual partners to intervene in a partnership proceeding to assert that the period for assessing tax against them has expired. Different limitations provisions might also apply to individual partners in the case of fraudulent partnership returns, *see* 26 U.S.C. § 6229(c)(1), and to those partners in bankruptcy, *see* 26 U.S.C. § 6229(h).

legislative history. In short, as every other court to consider these claims has found, plaintiffs' supposed interaction problems are little more than gewgaw and gimcrack, holding none of the interpretative value plaintiffs would offer. *See AD Global*, 67 Fed. Cl. at 676 (finding similar interaction arguments to be "unpersuasive"); *Rhone-Poulenc*, 114 T.C. at 544-45 ("None of the cited sections are inconsistent with our interpretation that section 6229 provides an alternative minimum period of limitations.").

Moreover, as the Tax Court noted in *Rhone-Poulenc*, plaintiffs' interpretation of section 6229 brings its own interpretational baggage. Under that interpretation, a partner who does not file a tax return could escape taxation on partnership items or items affected thereby. Under section 6501(c)(3) of the Code, the period for assessing taxes does not run with respect to nonfilers. Section 6229(c)(3) provides that where no partnership return is filed, the tax attributable to partnership items (or affected items) may be assessed at any time. However, unlike section 6501, section 6229 does not contain any provision that would toll the limitations period in section 6229(a) for a partner who fails to file his individual return. Accordingly, if plaintiffs are right, a nonfiling partner might escape taxation on partnership items altogether or at least would have the potential benefit of requiring the IRS to conduct an audit without return information, obviously a result that Congress did not intend to confer on nonfilers. *See Rhone-Poulenc*, 114 T.C. at 550 ("Section 6229 contains no [provision holding open the limitations period] for partners who fail to file their own returns. This is undoubtedly because the applicable section 6501 period never begins to run for a nonfiling partner.").[20]

5. Finally as to this issue, the court notes that considerable portions of the parties' briefs are dedicated to whether the question presented is illuminated by various canons of construction, particularly several unique to the Code. Judge Miller, of course, based her opinion, in part, on one these canons – that statute of limitations must be strictly construed in favor of the United States. *See AD Global*, 67 Fed. Cl. at 693 *(citing Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391 (1984) (involving a construction of section 6501(a)); *see also E.I. duPont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)). Plaintiffs, for their part, invoke cases indicating that tax statutes ought not be extended "by implication beyond the clear import of the language used." *Gould v. Gould*, 245 U.S. 151, 153 (1917). But, while plaintiffs attempt to cast the latter canon as all-encompassing – trumping virtually all other interpretative rules – that notion is belied not only by the specific ruling and facts in *Badaracco*, but also by the Supreme Court's insistence that: (i) the Code's definition of income should be "given a liberal construction . . . in recognition of the intention of Congress to tax all gains except those specifically exempted," *Comm'r of Internal Revenue v. Glenshaw Glass*, 348 U.S. 426, 430 (1955), *see also Irwin v. Gavit*, 268 U.S. 161, 168 (1925); (ii) that deductions "depend[] upon

---

[20] Under plaintiffs' view, similar coordination problems would result if the partnership filed its information return on time, while a partner filed his return late. While, under section 6501(a), the statute of limitations on assessment against the partner would not run until 3 years after he filed his return, the IRS, under plaintiffs' misconceived interpretation of section 6229(a), could be required to make an assessment against such an individual relating to partnership items even before he filed his return.

legislative grace" and are allowed "only as there is clear provision therefor," *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934), *see also INDOPCO, Inc. v. Comm'r of Internal Revenue*, 503 U.S. 79, 84 (1992), which rule also has been applied to tax credits, *see Inland Steel Co. v. United States*, 677 F.2d 72, 79 (Ct. Cl. 1982) (per curiam); and (iii) that "exemptions from taxation are to be construed narrowly," *Bingler v. Johnson*, 394 U.S. 741, 752 (1969), *see also Comm'r of Internal Revenue v. Jacobson*, 336 U.S. 28, 48-49 (1949).[21] In short, a flight of Supreme Court cases suggests that there is precious left in the Code that is subject to plaintiffs' generic rule. At all events, most certainly, the rule plaintiffs invoke is not broad enough to require a court to adopt a statutory construction that finds no support in the language of the relevant statute or the structure of the Code, that is flatly contradicted by the relevant legislative history, and that has been rejected by every court to consider the matter squarely. And ***that*** is this case.

While the court believes that Judge Miller chose wisely among the available canons, the foregoing analysis suggests that this case does not hang on such a fine distinction. Rather, while the statute undoubtedly could be clearer, the issue here still comes down to a much more staunch interpretative rule, one that is applicable to all forms of federal legislation, even taxing acts – "'the plain, obvious and rational meaning of a statute is always to be preferred.'" *Old Colony R.R. Co. v. Comm'r of Internal Revenue*, 284 U.S. 552, 560 (1932) (quoting *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925)). As this court once said, in words that resonate equally here, "the welter of construction canons aside, the objective here must be to effectuate, rather than defeat, the obvious intent of the Congress. And, in the case *sub judice*, the court need do nothing to the words of the relevant statutes, but to accept them." *Yocum*, 66 Fed. Cl. at 588.

III.

Accordingly, the court concludes that defendant's interpretation of sections 6229 and 6501 of the Code is manifestly correct. It remains to determine whether the adjustments listed in the IRS' 1999 notice of FPAA are barred by section 6501. More specifically, at issue is whether

[21] *See generally*, Steven R. Johnson, "The Canon that Tax Penalties Should be Strictly Construed," 3 Nev. L.J. 495, 495-96 (2003) (summarizing these and other canons applicable to tax statutes).

the limitations period under that section has expired as to the Tigues' 1999 and 2000 tax years.[22] The court will consider these tax years in reverse order.

A.

Recall that section 6501(a) generally requires the IRS to assess taxes within three years after an individual's return is filed. Since the Tigues' 2000 individual return was filed on August 17, 2001, the limitations period for assessing tax against them normally would have expired on August 17, 2004. However, under section 7609(e) of the Code, that period was suspended when Jenkens did not satisfy the summons it received within 6 months. Under the statute, that suspension lasted from December 19, 2003, *i.e.*, six months after the summons was issued, until May 17, 2004, when Jenkens honored the summons. Of course, that delay only extended the limitations period under section 6501(a) to January 17, 2005.

Defendant, however, asserts that this limitations period was further suspended when the IRS issued an FPAA to Grapevine's partners on December 14, 2004. In this regard, it relies upon section 6229(d) of the Code, which states –

---

[22] In *Rhone-Poulenc*, 114 T.C. at 534-35, the Tax Court explained how an individual's limitations period could be relevant in a TEFRA partnership case in the following fashion –

> The Internal Revenue Code prescribes no period during which TEFRA partnership-level proceedings, which begin with the mailing of the notice of final partnership administrative adjustment, must be commenced. However, if partnership-level proceedings are commenced after the time for assessing tax against the partners has expired, the proceedings will be of no avail because the expiration of the period for assessing tax against the partners, if properly raised, will bar any assessments attributable to partnership items. Generally, in order to be a party to a partnership action, a partner must have an interest in the outcome. If the statute of limitations applicable to a partner bars the assessment of tax attributable to the partnership items in issue, that partner would generally not have an interest in the outcome. See sec. 6226(c) and (d). However, we have held that a partner may participate in such action for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired and that we have jurisdiction to decide whether that assertion is correct.

*See also Columbia Bldg., Ltd. v. Comm'r of Internal Revenue*, 98 T.C. 607, 611-13 (1992) (footnote omitted); *see also* 26 U.S.C. § 6226(d)(1)(B) (allowing a partner to intervene in a partnership proceeding to assert an individual statute of limitations). Similar considerations apply in this refund forum. Contrary to plaintiffs claim, *Slovacek v. United States*, 36 Fed. Cl. 250, 255-56 (1996), is not to the contrary.

> If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended –
>
> > (1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and
> >
> > (2) for 1 year thereafter.

As noted above, however, plaintiffs claim that this subsection only refers to the limitations period in 6229(a), and not the one in section 6501(a), leading it to conclude that section 6229(d) has no impact in staying the separate statute of limitations in section 6501(a).

In arguing this, plaintiffs assert that the phrase in subsection (d) that suspends "the running of the period ***specified in subsection (a)***" does not refer to section 6501. They offer, for purposes of this assertion, certain definitions of the term "specific" or "specify" that require an "explicit" definition. *See*, *e.g.*, Black's Law Dictionary 726 (5th ed., abridged 1983). But, there is nothing about the use of the term "specified" that suggests that Congress could not – and did not – intend the reference in section 6229(d) to refer back to section 6501. Rather, more broadly, the term "specified" means to mention "definitely" or "fully" or "in detail" and thus does not require that there be an explicit reference to a particular Code section.[23] Indeed, while plaintiffs assert that Congress should have made a direct reference to section 6501(a) if it desired to extend that period, it appears that the reference Congress actually employed is the only way that it could ensure that section 6229(d) applied to the longer of the two limitations periods potentially involved in a given case – that of section 6501(a), as potentially extended by 6229(a). *See AD Global*, 67 Fed. Cl. at 675 ("Congress could have made reference to the 'period described in subsection (a)' as a shorthand method of describing the section 6501 period, as modified by section 6229."). The latter view of the statute, of course, accords with the legislative history of the 1997 Act which, again, states that, under section 6229(a), "the period for assessing tax with respect to partnership items generally is the longer of the periods provided by section 6229 or section 6501." S. Rep. No. 105-33, at 256, 258; H.R. Rep. No. 105-148, at 589, 591; H.R. Conf.

---

[23] *See* XVI The Oxford English Dictionary 159-60 (2d ed. 1998) (specified: "[t]hat is or has been definitely or specifically mentioned, determined, fixed, or settled;" specify: "[t]o mention, speak of, or name (something) definitely or explicitly; to set down or state categorically or particularly; to relate in detail"); *see also Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 125 (2005) (foreign-flagged cruise ship treated as "specified public transportation" for purposes of Americans with Disabilities Act, even though not specifically listed in definitional section); *Manges v. Mustang Tool Co.,* 658 S.W.2d 725, 729 (Tex. App. 1983) (specified means "particularized in such a manner as to set forth in intelligible detail").

Rep. 105-220, at 680, 682.[24] Accordingly, as have other courts, this court rejects plaintiffs' construction of section 6229(d) and concludes that, as the result of that provision, the issuance of the FPAA in this case suspended the running of the section 6501(a) statute of limitations as it applies to the Tigues.[25]

B.

But, what of the Tigues' 1999 taxable year? The three-year statute of limitations of section 6501(a) potentially associated with that year clearly ran before the issuance of the FPAA here. Defendant, however, invokes an exception to this rule contained in section 6501(e)(1)(A) of the Code (first introduced as § 275(c) of the Revenue Act of 1934, 48 Stat. 680, 745), which applies a six-year assessment limitations period to any taxpayer that nonfraudulently "omits from gross income an amount properly includible therein which is in excess of 25 percent" of the reported gross income. *See Badaracco*, 464 U.S. at 392. In 1954, Congress made several changes to this provision. *See* H.R. Rep. No. 83-1337, at A414 (1954); S. Rep. No. 83-1622, at 584-85 (1954). First, under section 6501(e)(1)(A)(i), it defined "gross income" to mean the "total of the amounts received or accrued from the sale of goods or services . . . prior to diminution by the cost of such sales or services." Second, it crafted a safe harbor under section 6501(e)(1)(A)(ii), stating the amount omitted from gross income shall not include "any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." Language paralleling section 6501(e)(1)(A) – but without the special rule and exception adopted in 1954 – may be found in section 6229(c)(2), which extends the period in section 6229(a) from 3 years to 6 years "[i]f any partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return." *See also* 26 U.S.C. § 6248(c)(2) (providing a similar rule for certain large partnerships).

1. In *Colony, Inc. v. Comm'r of Internal Revenue*, 357 U.S. 28 (1958), the Supreme Court, resolving an intercircuit conflict, held that the 1939 Code predecessor to section 6501(e) did not apply to an understatement of reported gross profits caused by errors in calculating the basis of the property sold. *Id.* at 33. In that case, Justice Harlan, writing on behalf of a 7-2

---

[24] A similar analysis disposes of plaintiffs' arguments with respect to sections 6229(b)(1) and (b)(3), dealing with certain extensions by agreement. The reference to section 6229(a) in those paragraphs similarly should be read to refer to the longer of the periods provided by sections 6229(a) and 6501(a) and, so read, causes no interaction problems.

[25] *See AD Global*, 67 Fed. Cl. at 694 ("The foregoing analysis compels the conclusion that the applicable period of limitations that has been suspended is the period prescribed in I.R.C. § 6501(a)."); *Rhone-Poulenc*, 114 T.C. at 552-53 (noting that 6229(d) "suspends the running of any applicable period of limitations," whether the minimum period under 6229(a) or the period provided by section 6501(a)).

majority, found the statutory language ambiguous and thus turned to the legislative history of the provision. Based upon that history, the Court rejected the Commissioner's claim that the statute addressed any significant error that caused the amount of gross income to be understated, stating that this theory was not persuasive "[f]or if the mere size of the error had been the principal concern of Congress, one might have expected to find the statute cast in terms of errors in the total tax due or in total taxable net income." *Id*. at 36. The Court further reasoned –

> We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years [now three years] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return.

*Id*. It concluded that "[t]o accept the Commissioner's interpretation and to impose a five-year [now six-year] limitation when such errors affect 'gross income,' but a three-year limitation when they do not, not only would be to read § 275(c) more broadly than is justified by the evident reason for its enactment, but also to create a patent incongruity in the tax law." *Id*. at 36-37. The Supreme Court finally observed that its conclusion was "in harmony" with the recently enacted (as part of the 1954 Code) "unambiguous language" of section 6501(e)(1)(A). *Id*. at 37.

In the wake of *Colony*, courts have reached differing conclusions regarding its scope and continuing viability. Commenting on *Colony*, the First Circuit, in a case involving the sale of partnership interests, noted that –

> The result may seem surprising because section 275 did not speak of gross ***receipts*** at all but of gross ***income***, and taxpayer Colony had under-reported gross income by more than 25 percent by overstating the basis. Gross income on land sales is normally computed as net gain after subtracting the basis. 26 U.S.C. §§ 61(a)(3), 1001(a); 26 C.F.R. § 1.61-6 (2001). However, Justice Harlan read section 275 in light of legislative reports and debates giving examples of cases where an income ***receipt*** was entirely omitted from the return. Although these could have been deemed merely examples, *Colony* read them as reflecting the limits of section 275.

*CC & F W. Operations L.P. v. Comm'r of Internal Revenue*, 273 F.3d 402, 406 (1st Cir. 2001) (citation omitted). The First Circuit further indicated that "[w]hether *Colony*'s main holding carries over to section 6501(e)(1) is at least doubtful," suggesting that Justice Harlan's gross receipts test only applies to sales of goods and services covered by section 6501(e)(1)(A)(i), but not to other types of income. *Id*. at 406 n.2. And, indeed, various Tax Court cases have limited

the rationale in *Colony* to the sale of goods or services by a trade or business. *See, e.g.*, *Insulglass Corp. v. Comm'r of Internal Revenue*, 84 T.C. 203, 210 (1985); *Schneider v. Comm'r of Internal Revenue*, 49 T.C.M. 1032, 1034-35 (1985).[26]

2. Citing several of these opinions, defendant asserts that, despite the Supreme Court's reference to section 6501(e)(1)(A), the limiting construction placed on *Colony* by various courts finds support in the language of the 1954 Code. In fact, two features that were added by the 1954 Code to the language from section 275 of the 1939 Code buttress this claim. First, section 6501(e)(1)(A)(i) provides a gross receipts test similar to that adopted in *Colony*, but, by its terms, makes this test applicable only "[i]n the case of a trade or business." To conclude, as plaintiffs do, that the *Colony* gross receipts test applies, under section 6501(e)(1), to every sort of sale is to render surplusage Congress' reference to that same test as applying "[i]n the case of a trade or business." That result, however, would violate the canon that "a legislature is presumed to have used no superfluous words." *Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58 (1878).[27] Second, as part of the 1954 Code, Congress added a paragraph (2) to section 6501(e), which provides a rule covering estate and gift taxes, corresponding to the income tax rule. That paragraph, however, unlike section 6501(e)(1)(A), specifically refers to the omission of "items" includible in the gross estate or total gifts,[28] apparently to make clear that the six-year period was not to apply because

---

[26] Among other things, these cases emphasize that the term "gross income" has a well-accepted meaning in the Code and, apart from the exception contained in section 6501(e)(1)(A)(i), ought to include, among other things, gains deriving from dealings in property. *See Insulgass*, 84 T.C. at 210 ("In the case of a trade or business, 'gross income' is equated with gross receipts. Otherwise, 'gross income' means those items listed in section 61(a), which includes, among other things, gains derived from dealings in property.").

[27] *See also Babbitt v. Sweet Home Ch. of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (noting a "reluctance to treat statutory terms as surplusage"); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 (1979); *Nat'l Data Corp.& Subs. v. United States*, 50 Fed. Cl. 24, 27 (2001), *aff'd*, 291 F.3d 1381 (Fed. Cir.), *cert. denied*, 537 U.S. 1045 (2002).

[28] Section 6501(e)(2) provides, in pertinent part –

> In the case of a return of estate tax under chapter 11 or a return of gift tax under chapter 12, if the taxpayer omits from the gross estate or from the total amount of the gifts made during the period for which the return was filed items includible in such gross estate or such total gifts, as the case may be, as exceed in amount 25 percent of the gross estate stated in the return or the total amount of gifts stated in the return, the tax may be assessed or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

of differences as to the valuation of property.[29] Of course, under other interpretative canons, the presence of the words "items" in paragraph (2) suggests that word ought not be implied into section 6501(e)(1)(A), as the latter refers only generally to omissions of "an amount" "from gross income." As stated in a prominent treatise, "where the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." 2A Sutherland at § 46.05; *see also Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1067 (9th Cir. 1998); *Am. Fed. of Labor and Congress of Indus. Orgs. v. Fed. Election Comm.*, 177 F. Supp. 2d 48, 58 (D.D.C. 2001), *aff'd*, 333 F.3d 168 (D.C. Cir. 2003). The legislative history of the 1954 Code, however, does not shed much light on the significance of these changes, at least in terms that would be helpful in deciding the applicability of the *Colony* rationale herein.

3. So where does this leave us? Were this court writing on a *tabula rasa*, it might well conclude that either section 6501(e)(1)(A) or 6229(c)(2) is triggered even where an item of income is partially reported. But, that is not the state of affairs, and this court has no desire to consider whether *Colony* was supplanted by the 1954 Code, unless the facts here so require.

It is plausible that, even under a broader reading of *Colony*, an item of income was omitted here. Various cases hold that such an omission occurs if the item "is not shown in a manner sufficient to enable the Government, upon a reasonable inspection, to detect the error." *Cardinal Life Ins. Co. v. United States*, 425 F.2d 1328, 1330 (5th Cir. 1970); *see also Phinney v. Chambers*, 392 F.2d 680, 685 (5th Cir.), *cert. denied*, 391 U.S. 935 (1968) ("if an item of income is shown on the face of the return or an attached statement that is ***not*** shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it ***is*** the omission of 'an amount' properly includable in the return"). Where, as here, the United States seeks to invoke the six-year rule, the ordinary presumption of correctness does not apply and defendant bears the burden of proving, by a preponderance of the evidence, that it is entitled to invoke that exception. *See Lazarus v. United States*, 142 F. Supp. 897, 898 (Ct. Cl. 1956); *Armes v. Comm'r of Internal Revenue*, 448 F.2d 972, 974 (5th Cir. 1971); *Vallone v. Comm'r of Internal Revenue*, 88 T.C. 794, 815 n.19 (1987); *Stratton v. Comm'r of Internal Revenue*, 54 T.C. 255, 284, 289 (1970). While this requirement does not shift the ultimate burden of proof to defendant, it requires defendant to come forth with *prima facie* evidence that an understatement sufficient to trigger the statute has occurred. *Armes*, 448 F.2d at 974-75; *United States v. Hodgekins*, 805 F. Supp. 653, 660 (N.D. Ind. 1992), *aff'd*, 28 F.3d 610 (7th Cir. 1994); *Fazi v. Comm'r of Internal Revenue*, 105 T.C. 436, 447-48 (1995).[30]

---

[29] In this regard, the Blue Book for the 1954 Code states, with respect to the new estate and gift provision, that "[b]y referring to 'items' omitted, the new provision makes it clear that the six-year period is not to apply merely because of differences between the taxpayer and the Government as to the valuation of property." Staff of the Joint Comm. on Tax'n, Summary of the New Provisions of the Internal Revenue Code of 1954, at 130 (1955).

[30] The Tax Court explained the mechanics of how the burden of going forward with the evidence works and when it shifts in *Adler v. Commissioner*, 85 T.C. 535, 540 (1985) (citations omitted):

Both the partnership and individual returns at issue in this case are somewhat complicated and opaque, making it difficult to determine whether a critical item of income was omitted from either. This difficulty stems, in part, from the fact that the court must comprehend not only what is present on those returns, but perhaps what should have been there and is not, both of which inquiries require the court to better understand the underlying transactions. Moreover, in applying the general rule under section 6501(e)(1)(A), the court must also consider whether, under section 6501(e)(1)(A)(ii), it must exclude from consideration an omission if there was adequate disclosure of the "nature and amount of such item." Despite noble attempts by counsel to describe the transactions and returns in their briefs and at oral argument, the court believes that, in the case *sub judice*, the complex factual underpinnings of these issue have not yet adequately been explored or developed. Accordingly, the court will schedule an evidentiary hearing on this matter, which may, as appropriate, include expert testimony.[31]

IV.

Based on the foregoing, the court **DENIES** plaintiffs' motion for summary judgment The court **GRANTS**, in part, defendant's cross-motion for partial summary judgment. The resolution of the remaining limitations issues involving the 1999 partnership return and the corresponding return of the Tigues shall occur after an evidentiary hearing, as described above.

---

> The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable. The burden or proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations.

*See also United States v. Askegard*, 291 F. Supp. 2d 971, 977 (D. Minn. 2003); *Stern Bros. & Co. v. Burnet*, 51 F.2d 1042 (8th Cir. 1931), *aff'g*. 17 B.T.A. 848 (1929).

[31] Because it is unclear whether a six-year statute of limitations applies here, this court need not reach, at this time, the question whether assessments could occur as to the Tigues' 2000 taxable year even if barred for their 1999 taxable year.

On or before July 7, 2006, the parties shall file a joint status reporting indicating how this case should proceed, with an appropriate proposed schedule.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge