IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Sweeney)

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

DECLARATION OF STUART D. GIBSON

I, Stuart D. Gibson, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Senior Litigation Counsel, employed in the Office of Civil Litigation, Tax Division, United States Department of Justice. I have worked at the Tax Division since 1984.

2. I make this declaration to respond to a number of matters alleged in the Supplemental Statement of Undisputed Facts which the plaintiff in this lawsuit contends are not disputed but which are, in fact, either misleading or in dispute.

3. The matters alleged in ¶3 of the Supplemental Statement of Undisputed Facts are not entirely accurate, in the following respects:

a. ¶3 suggests that there was some relationship between the case entitled Department of Justice, Tax Division, v. KPMG LLP, Misc. No. 02-ms-295 (D.D.C.) (the summons case) and the case entitled Doe 1 v. KPMG LLP, Civil Action No. 03-2036 (N.D. Tex.)

(the injunction case). In fact, the two cases were related only in that they involved IRS attempts to obtain information from KPMG. I explain the differences below.

I filed the summons case in July 2002, to compel KPMG to comply with nine of the 25 summonses that the IRS had issued to KPMG in connection with a tax shelter promoter penalty investigation of KPMG. In the injunction case, the plaintiffs sued to enjoin KPMG from providing their identities (among other things) to the Internal Revenue Service, in response to a summons issued in connection with a tax shelter promoter penalty investigation of KPMG. The summons at issue in the injunction case – the so-called Notice 2000-44 summons – was **not** among the nine summonses that were at issue in the summons case. Because the summons case did not involve the Notice 2000-44 summons, I objected when the Doe plaintiffs attempted to intervene in the summons case. Ultimately, the Doe plaintiffs decided not to pursue intervention in the summons case. But when the court permitted the United States to intervene in the injunction case, the Doe plaintiffs did move for reconsideration.

b. ¶3 represents that on March 9, 2004, I forwarded the "Baker Doe" engagement letters to KPMG's attorney in the summons case, Armando Gomez. This phrasing suggests that I knew the letters attached to my March 9, 2004 letter were the "Baker Doe" engagement letters, and that I may have known the identities of the taxpayers to whom the letters related. This is not the case and, in fact, the March 9, 2004 letter was sent in a different context, as described below.

In December 2003, I learned that KPMG had hired the Skadden, Arps law firm as its lead counsel in the summons case, effectively replacing the King & Spalding and Kronish Lieb firms. When they first contacted me, the attorneys at Skadden, Arps told me and others at the Tax

Division that KPMG was interested in changing the tone of its relationship with the IRS from one of confrontation to one of cooperation. Inviting KPMG to demonstrate its good faith, I sent Gomez copies of letters evidencing tax shelters that KPMG had not previously disclosed to the IRS, and asked KPMG to identify all tax shelters and all clients in those tax shelters, which KPMG had not already identified to the IRS. My letter to Gomez of March 9, 2004 reflected my effort to follow up, by suggesting to him that KPMG had not yet identified all tax shelters or clients. The letters attached to the March 9, 2004 letter did not identify the particular tax shelters to which they relate, nor did they identify the participants in those tax shelters. It would be incorrect, therefore, to infer from reading my March 9, 2004 letter or the attachments that either the IRS or the Tax Division knew the identities of the "Baker Does."

4. ¶4 alleges that between March 9 and March 30, 2004, Gomez and I "discussed this matter." The paragraph does not allege what "this matter" is. Between March 9 and March 30, 2004, Gomez and I did discuss KPMG's agreement to cooperate with the IRS, by identifying all the previously undisclosed tax shelters and tax shelter participants. I also discussed with Gomez and Skadden, Arps partner Robert Bennett what we wanted to say to the court at the April 1, 2004 status conference. Bennett's letter to me of March 31, 2004 reflected his attempt to address before the status conference the matters still outstanding from my letter of March 9. His statement to me quoted in ¶4, confirms my recollection that when I wrote the March 9, 2004 letter to Gomez, I was not aware of whether the letters attached to my March 9, 2004 letter had anything to do with the "Baker Does." In fact, Bennett's March 31, 2004 letter to me indicates that he was not entirely certain that the letters attached to my March 9, 2004 letter related to the "John Doe plaintiffs" in the injunction case.

5. I agree that I said the things attributed to me in ¶5. Those statements were made toward the end of the April 1, 2004 status conference in the summons case, in the course of my responding to questions from the court (Hogan, C.J.), about the status of the injunction case. The questions were posed in the context of what matters remained for decision in the summons case, and what matters were still in dispute in litigation over KPMG-marketed tax shelters. My reference to the Baker Does "fighting a multifront war" in the quotation in ¶5 referred to the fact that the Baker Does had filed suit in Texas to enjoin KPMG from disclosing their identities to the IRS, and had also intervened in a summons enforcement case that the IRS had filed against Sidley Austin Brown & Wood (SABW) in Chicago, where they sought to prevent the IRS from obtaining their identities and documents from SABW in that case. At the time I made the statement, KPMG had been temporarily enjoined from disclosing the identities of the Baker Does, and the court in Chicago had not yet decided whether to compel SABW to comply with the IRS summons.

6. I agree that Tucker had filed certain documents in the injunction case, including a declaration and other documents, as represented in ¶6. I agree that Tucker's sealed declaration contains his name and address. Those documents – including Tucker's identity and address – were filed under seal, and remained sealed by Order of Judge Barefoot Sanders of September 11, 2003, until Judge Sanders unsealed the documents in his Memorandum Opinion and Order of April 12, 2004.

7. I agree that KPMG filed 2,499 pages of documents under seal in the injunction case, as represented in ¶7. Those documents were filed on March 26, 2004 as Exhibit E to KPMG's Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary

Judgment. The documents in Exhibit E contain the information represented in subparagraphs (i) and (ii) of ¶7. As to subparagraph (iii), the documents that KPMG filed under seal contain some, but by no means all, of the information concerning the KPMG tax shelter that Tucker participated in. I do not know whether the 2,499 pages file by KPMG under seal in the injunction case are responsive in any way to the IRS summons issued to SABW, which was still pending before the court in Chicago on April 12, 2004, the date that Judge Sanders unsealed the record in the injunction case.

8. I had no role in the SABW summons litigation, nor do I know what information was sought about Tucker in the summons issued to SABW. Therefore, I do not know whether the declaration of Tucker, and the documents contained in Exhibit E, both filed under seal, contained "all of the information expressly requested in the SABW summons," as asserted in ¶8.

9. On the morning of April 12, 2004, Judge Sanders issued a 15-page Memorandum Opinion and Order in the injunction case. In his Order Judge Sanders denied the plaintiffs' motion for summary judgment, and awarded summary judgment to KPMG and the United States. Among other things, the Order also directed the Clerk to unseal the declarations of the plaintiffs filed September 9, 2003, and Exhibit E of KPMG's Appendix. I learned of the entry of that Order shortly after it was issued. As soon as I learned of the Order, I arranged for an employee of the Office of the United States Attorney in Dallas to go to the office of the Clerk of the U.S. District Court for the Northern District of Texas in Dallas, look through the documents that had been unsealed, identify the two John Does who were the plaintiffs, and let me know their identities. As a result, I learned Tucker's identity by mid-afternoon on April 12, 2004, and I provided that information that afternoon to an agent at the Internal Revenue Service. Because of

the problems inherent in trying to copy nearly 2,500 pages of a file in the Clerk's office, my recollection is that the United States Attorney's Office did not obtain a copy of Exhibit E until April 13, 2004, and I did not receive that copy until sometime later during the week of April 12, 2004.

10. Shortly after the Court issued its Order, on April 12, 2004, the plaintiffs in the injunction case filed a Notice of Appeal, along with an Emergency Motion asking the District Court to stay its ruling, and re-seal the documents pending appeal. According to the plaintiffs, they were informed by the district court that the court did not intend to rule on that motion until after April 12, 2004.

11. By facsimile on the afternoon of April 12, 2004, the plaintiffs in the injunction suit transmitted to the Fifth Circuit Court of Appeals in New Orleans, a Certificate of Interested Persons, in advance of filing an Emergency Petition for Writ of Mandamus in the injunction suit. By facsimile later in the day on April 12, 2004, the plaintiffs in the injunction suit transmitted to the Fifth Circuit Court of Appeals an Emergency Petition for Writ of Mandamus. In their Emergency Petition, the plaintiffs in the injunction suit asked the Fifth Circuit to stay the April 12, 2004 Order of the District Court unsealing the documents containing the plaintiffs' identities. At the time they filed that mandamus petition, the United States had already obtained the identities of the plaintiffs in the injunction case. To the best of my recollection, however, the United States had not yet obtained the documents comprising Exhibit E to the KPMG Appendix.

12. On April 13, 2004, the United States filed its opposition to the emergency motion filed in the District Court. In that opposition, the United States observed that it had already obtained the plaintiffs' identities and had made copies of Exhibit E. Later that day, the parties

reported this development to the Court, and as a result the plaintiffs withdrew their emergency motion in the District Court and their emergency mandamus petition in the Fifth Circuit Court of Appeals.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C., on this 22d day of February, 2007.

STUART D. GIBSON
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
Post Office Box 403
Ben Franklin Station
Washington, DC 20044