No. 05-999 T
(Judge Margaret Sweeney)

---

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

EPSOLON LIMITED, BY AND THROUGH
SLIGO (2000) COMPANY, INC.,
TAX MATTERS PARTNER,

Plaintiff

v.

THE UNITED STATES,

Defendant

# REPLY OF THE UNITED STATES TO PLAINTIFF'S RESPONSE AND REPLY TO CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT, AND ALTERNATIVE RULE 56(f) MOTION

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

---

Page

## TABLE OF CONTENTS

Reply of the United States to Plaintiff's Response and Reply to Cross-motion of the United States for Partial Summary Judgment, And Alternative Rule 56(f) Motion . . . . . 1

I. **Introduction** . . . . . 2

II. **II. *AD Global* and *Grapevine* Were Correctly Decided** . . . . . 5

A. **Section 6229 operates as a possible extension of the statute of limitations of § 6501** . . . . . 6

B. **Issuing the FPAA suspends the statute of limitations of § 6501(a)** . . . . . 8

III. **The statute of limitations is suspended by 7609(e)(2) until the response by Sidley Austin to the summons is resolved** . . . . . 10

A. **The plain meaning of the statute suspends the statute of limitations until the summoned party's response is resolved** . . . . . 10

B. **Adopting plaintiff's position would alter Congress' statutory scheme and frustrate the Congressional purpose underlying § 7609(e)(2)** . . . . . 12

C. **The holding of *United States v. Powell* does not prevent the application of the suspension of § 7609(e)(2) to Mr. Tucker** . . . . . 16

IV. **Plaintiff's Rule 56(f) motion.** . . . . . 19

V. **The Government's Rule 56(f) Motion** . . . . . 20

**Conclusion** . . . . . 22



2263087.1

Page

# TABLE OF AUTHORITIES

**CASES:**

*AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657 (2005) . . . . . . . . 3, 4,5,6, 7,8, 10

*Andantech, L.L.C. v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003) . . . . . . . . . . . 5, 6,10

*Grapevine Imports v. United States*, 71 Fed. Cl. 324 (2006) . . . . . . . . . 3, 4,5, 6,7, 8,9,10

*Powell v. United States*, 379 U.S. 48 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5,6, 7,8,10,12

*Schumacher v. United States*, 72 Fed. Cl. 95 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. First National State Bank of New Jersey*, 616 F.2d 668 (3rd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Schwartz*, 469 F.2d 977 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . 18, 19

**Page**

**Statutes:**

Internal Revenue Codes of 1986 (26 U.S.C.):

§ 6501 . . . . . . . . . . *Passim*

§ 6503 . . . . . . . . . . 9, 17

§ 6229 . . . . . . . . . . *Passim*

§ 7605 . . . . . . . . . . 17

§ 7609 . . . . . . . . . . *Passim*

**Miscellaneous:**

H.R. Conf. Rep. 99-841, 1986-3 C.B. (vol. 4), at 809 . . . . . . . . . . 15

H.R. Conf. Rep. No. 101-964 (1990) . . . . . . . . . . 17

United States Court of Federal Claims Rules:
R. 56 . . . . . . . . . . 16, 19, 20, 21,22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Sweeney)

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

# REPLY OF THE UNITED STATES TO PLAINTIFF'S RESPONSE AND REPLY TO CROSS-MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT, AND ALTERNATIVE RULE 56(f) MOTION

Plaintiff has moved for summary judgment on the question of whether the FPAA was timely and the United States has cross-moved for summary judgment on that issue.[1] The FPAA was issued when the statute of limitations of § 6501(a)[2] for assessing taxes attributable to partnership items was open for Mr. Tucker's 2001 taxable year, because of the suspension of the statute of limitations contained in § 7609(e)(2). For "*any person* with respect to whose liability the summons is issued," that section suspends the statute of limitations for a period beginning 6 months after an IRS summons is served, and ending on the date on which "the *summoned party's*

[1]Although reference is made in this Reply to the "partnership" and various purported entities, defendant does not concede that, under the applicable law, a viable partnership or the alleged entities existed.

[2]All references to code sections will be to Title 26, U.S.C., unless otherwise designated.

response to the summons" is finally resolved. In the event the Court determines that the three-year statute of limitations of § 6501(a) was not open at the time the FPAA issued, the United States will need to conduct discovery on the question of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax, which would permit the application of the unlimited statute of limitations of § 6501(c)(1).

## I. Introduction

The Government's opening brief and proposed findings present the necessary timeline which establishes that the statute of limitations was open at the time the FPAA issued with respect to the transaction at issue in this case. There is no genuine issue as to any fact material to that timeline. Both Mr. Tucker's return for the taxable year ending December 31, 2001, and the partnership return for that period were deemed filed on April 15, 2002.[3] Sixteen months later, on October 15, 2003, a summons was served on the accounting firm of Sidley Austin Brown & Wood ("Sidley Austin").[4] That summons required Sidley Austin to produce:

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction' or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor Brown & Wood LLP.[5]

---

[3]See Pl. Proposed Findings 1, and 6, and the government's responses thereto.

[4]Def. Prop. Finding 3.

[5]Def. Prop. Finding 4.

Not until March 3, 2005, did Sidley Austin finally resolve its response to the summons.[6] Pursuant to the 3-year statute of limitations of 26 U.S.C. § 6501, Mr Tucker's taxable year 2001 would have been open to April 15, 2005.[7] As a result of the summons served on Sidley Austin, however, the statute of limitations was suspended beginning on April 15, 2004 – six months after the service of the summons.[8] As of the date the statute of limitations was suspended, April 15, 2004, there remained one year left to run on the statute. The suspension was not lifted until March 3, 2005, at the earliest. Therefore, the statute of limitations for Mr. Tucker's 2001 taxable year was open at least until March 3, 2006. As a result, the FPAA was timely when mailed nine

---

[6]It is possible that the period of suspension continued beyond March 3, 2005, if Sidley Austin did not fully comply with the terms of the enforcement order, which required the production of multiple taxpayers' names and associated data. So far as we know, Sidley Austin never provided Mr. Tucker's social security number, nor the taxpayer identification numbers of the entities. For purposes of this case, however, the date of March 3, 2005, is the earliest date upon which the suspension could have ended, assuming that Sidley Austin fully complied with the enforcement order at that time. If further information is later discovered by Sidley Austin and turned over to the Government, then the date of the later production will be the date of final resolution on which the suspension terminates.

[7]As set forth in the Government's opening brief, and below, the general limitations period for determining whether the FPAA was timely issued is the three-year period of § 6501 with respect to the individual partner of the partnership. Section 6229 provides for an extension of that period in the event the partnership return is filed after the partner's return. *Schumacher v. United* States, 72 Fed. Cl. 95 (2006); *Grapevine Imports v. United* States, 71 Fed. Cl. 324 (2006); *AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657 (2005). *AD Global* was appealed and is pending in the Federal Circuit on this issue.

[8]Pursuant to § 7609(e)(2), the statute of limitations is suspended for a period beginning 6 months after service of the summons, and ending on the date of final resolution of the summoned party's response.

months earlier on June 17, 2005.[9] Further, issuance of the FPAA again suspended the running of the statute of limitations for assessment.[10]

Plaintiff has attempted to cloud the issue with supplemental proposed findings contending that the Government had the information that had been requested by the Sidley Austin summons in its possession by April 13, 2004. The information is alleged to have been part of 2,499 pages of documents that were unsealed in Dallas, Texas, with respect to a different summons issued to KPMG. As shown below, that contention is irrelevant to the real issue here, which is when did Sidley Austin, as the summoned party, finally resolve its response to the summons served upon it. Further, several of plaintiff's proposed findings are, at best, misleading, and some are inaccurate, as shown by the declaration of Stuart Gibson and the supplemental declaration of John Lindquist submitted herewith. None of plaintiff's supplemental proposed findings actually state that Sidley Austin provided the Government with all of the information demanded by the summons served upon it. Nor could they.[11] As a result, any disputes the Government has with respect to plaintiff's supplemental proposed findings are not material to the issue regarding the statute of limitations.

---

[9]Section 7609(e)(2)

[10]Section 6229(d)(1); *Grapevine Imports v. United* States, 71 Fed. Cl. 324 (2006); *AD Global Fund, LLC v. United States*, 67 Fed. Cl. 657 (2005)(appeal pending); *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533 (2000).

[11]*See* Declaration of John Lindquist, filed with the Government's Cross Motion, and the Supplemental Declaration of John Lindquist, paras. 28-37, filed with the Government's Response to Plaintiff's Supplemental Proposed Findings.

## II. *AD Global* and *Grapevine* Were Correctly Decided.

The Government has shown in its opening brief that the period for assessing taxes attributable to partnership items is the 3-year statute of limitations of § 6501, and that § 6229(a) operates as a possible extension of § 6501. The language of § 6501(a) establishes a 3-year statute of limitations for assessment of taxes:

> (a) GENERAL RULE.– Except as otherwise provided in this section, the amount of any tax imposed by this title **shall be assessed within** 3 years after the return was filed...the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." [Emphasis added.]

Section 6229 refers to a minimum period within which the general time for assessment shall not expire for purposes of assessing taxes attributable to partnership items:

> (a) GENERAL RULE.– Except as otherwise provided in this section, **the period for assessing** any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year **shall not expire before** the date which is 3 years after the later of–
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions)." [Emphasis added.]

All of the courts that have considered this issue agree that § 6501 establishes the general limitations period within which all tax shall be assessed.[12] Section 6229, on the other hand, provides only a minimum period within which the § 6501 period for assessments attributable to

---

[12]*Andantech, L.L.C. v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003) ; *Schumacher v. United States*, 72 Fed. Cl. 95 (2006); *Grapevine Imports v. United States, 71* Fed. Cl. 324 (2006); *AD Global v. United States,* 67 Fed. Cl. 567 (2005), appeal pending; *Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 542 (2000).

partnership items shall not expire.[13] In their opinions, these judges explain that plain language, policy, and legislative history all support the conclusion that § 6229 does not establish an independent and exclusive limitations period.

Therefore, as presented in the Government's opening brief, the statute of limitations with respect to issuing the FPAA in this case was open on April 15, 2004. As shown below, and in the government's opening brief, § 7609(e)(2) suspended the running of that statute from April 15, 2004, until March 3, 2005. The limitations period was open on June 17, 2005 when the FPAA issued. Further, the FPAA and the filing of this suit further suspended the assessment statute pursuant to § 6229(d).

**A. Section 6229 operates as a possible extension of the statute of limitations of § 6501.**

Plaintiff has responded to the government's Cross-Motion contending that *AD Global Fund v. United States*, 67 Fed. Cl. 657 (2005), and the recent decision in *Grapevine Imports v. United States*, 71 Fed. Cl. 324 (2006), were incorrectly decided and, therefore, § 6229(a) is a separate and exclusive statute of limitations for issuing an FPAA.[14] Plaintiff's arguments on this

---

[13]*Andantech*, 331 F.3d at 977 ("the language of § 6229, rather than simply stating a three-year statute of limitations, indicates by the use of the term 'shall not expire' that the provision is intended to dictate a minimum period, but not an absolute restriction"); *Rhone*, 114 T.C. at 542 ("6229 provides a minimum period of time for the assessment of any tax attributable to partnership items").

[14]Pl. Response, pp. 17-23. Plaintiff introduces this portion of its brief by requesting the Court await resolution of *AD Global* in the Federal Circuit. Plaintiff then suggests it be granted "discovery rights to identify further evidence relating to its alternative legal arguments." We cannot tell for which alternative legal arguments plaintiff is seeking "discovery rights." As a result, the Government cannot respond as to whether this request for "discovery rights" is appropriate under the Rules of the Court of Federal Claims, or whether the unspecified discovery is necessary to determine the issues presented. We do not see how it could be.

point consist of tortured and strained interpretations of the statutes similar to those that caused the *Grapevine* Court to state: "Fortunately, like the Carrollian Jabberwock, the interaction concerns raised by plaintiffs ultimately prove a fiction."[15]

At pages 21-23 of its Response, plaintiff asserts that the holdings of *Grapevine* and *AD Global* create an anomaly as to the interaction of § 6229(a) and 6229(b)(1)(B). Section 6229(b)(1)(B) provides that the tax matters partner may agree with the Secretary to extend the period described in 6229(a) for all partners. Plaintiff then raises the specter of a tax matters partner ("TMP") agreeing to extend the statute of limitations as to all partners for *all* tax items on their individual returns, whether or not partnership related, if the "period described in" § 6229(a) refers to § 6501 as held by the courts. A reading of the pertinent part of § 6229(a) reveals the fallacy in plaintiff's argument:

> the period for assessing any tax imposed by subtitle A with respect to any person *which is attributable to any partnership item (or affected item)* for a partnership taxable year shall not expire before the date which is 3 years after the later of (emphasis added) . . .

Thus the TMP could only agree to extend the period described in § 6229(a) for the assessment of tax attributable to partnership items or affected items. Accordingly, defendant's interpretation of § 6229(a) as upheld by the courts does not lead to the drastic result envisioned by plaintiff.

Similarly, plaintiff's concern about the interaction of § 6501(c)(4) and § 6229(b)(3) is without basis. Plaintiff's attempt to raise an anomaly where none exists rests again on its premise that defendant's interpretation (and that of *AD Global*, *Grapevine*, and *Rhone-Poulenc*) of § 6229(a) would permit a TMP to extend the statute of limitations of § 6501 for all items on

---

[15] *Grapevine*, 71 Fed. Cl. at 336.

any individual partner's individual return. As explained above, a full reading of § 6229(a) shows plaintiff's concern is misplaced.

"In short, as every other court to consider these claims has found, plaintiffs' supposed interaction problems are little more than gewgaw and gimcrack, holding none of the interpretative value plaintiffs would offer."[16] Section 6229(a) provides a possible extension of the 3-year statute of limitations of § 6501 for assessment of taxes attributable to partnership items and affected items.

**B. Issuing the FPAA suspends the statute of limitations of § 6501(a).**

Plaintiffs also contend that issuance of the FPAA does not suspend the statute of limitations of § 6501(a). In this case, the FPAA issued on June 17, 2005, and plaintiff's filed their petition in this Court on September 15, 2005. Section 6229(d) provides:

> (d) SUSPENSION WHEN SECRETARY MAKES ADMINISTRATIVE ADJUSTMENT.– If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) shall be suspended –
>
> (1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and
>
> (2) for one year thereafter.

The reference in § 6229(d) to "the period specified in subsection (a)" is, as shown above, a reference to the statute of limitation of § 6501(a).[17] Thus, the issuance of the FPAA tolled the

---

[16]*Grapevine*, 71 Fed. Cl. at 337.

[17]*Grapevine,* 71 Fed. Cl. at 340; *AD Global,* 67 Fed. Cl. at 694; *Rhone-Poulenc*, 114 T.C. at 552-553.

statute of limitations of § 6501 as it applies to the Tuckers.[18] The filing of the petition in this Court by Epsolon further tolled the statute of limitations of § 6501(a) pursuant to § 6229(d)(1), until the case is final and for one year thereafter. Therefore, the statutory notice of deficiency issued to the Tuckers on March 22, 2006, was timely.

Plaintiff, at pages 19-21 of its Response, argues that none of the statutory provisions suggests that § 6501 is extended by the issuance of an FPAA. As shown above, plaintiff is in error. Plaintiff's Response winds itself through the various deficiency provisions, concluding that they do not apply to "assessment of tax with respect to partnership items."[19] Plaintiff then states that § 6503 provides that the limitations in § 6501 can "only" be suspended by a notice of deficiency. Section 6503 is not the exclusive provision for suspension of the 3-year statute of limitations. Plaintiff ignores that provisions other than § 6503 provide for suspension of the statute of limitations where a notice of deficiency has not been issued. For instance, § 7609(e)(2), described below, provides for the suspension of the statute of limitations pending the resolution of a summoned party's response to a summons. Plaintiff's attempts to argue that the interaction of various provisions of the Code contradict defendant's interpretation of § 6229 (and that of every court to expressly address the issue) are no more persuasive here than the attempts made by the taxpayer in *Grapevine*.

Upon issuance of the FPAA, § 6229(d) provides for the suspension of the period specified in § 6229(a). Again, the period specified in § 6229(a) is the limitations period of

---

[18]Id.

[19]Response at 20.

§ 6501 as extended by § 6229.[20] Thus, the issuance of the FPAA tolled the limitations period of § 6501 and the assessment of tax against the Tuckers on March 22, 2006, was timely.

### III. The statute of limitations is suspended by 7609(e)(2) until the response by Sidley Austin to the summons is resolved.

#### A. The plain meaning of the statute suspends the statute of limitations until the summoned party's response is resolved.

In the Government's opening brief, we established that § 7609(e)(2) suspends the statute of limitations of § 6501 from a period beginning six months after issuance of the summons until the response of the summoned party is resolved. Section 7609(e)(2) provides:

> (2) SUSPENSION AFTER 6 MONTHS OF SERVICE OF SUMMONS. – In the absence of the resolution of the *summoned party's response* to the summons, the running of any period of limitations under section 6501 or under 6531 with respect to *any person* with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period –
>
> (A) beginning on the date which is 6 months after the service of such summons, and
>
> (B) ending with the final resolution of such response.

(Emphasis added.)

The statutory language makes clear that the running of the section 6501 period of limitations for *any person* with respect to whose liability the summons is issued will be suspended until the final resolution of the summoned party's response to the summons. Here, in the case of a "John Doe" summons pertaining to an ascertainable class of persons under § 7609(f), in the absence of timely compliance with the summons, the statute of limitations for

---

[20] *Andantech,* 331 F.3d 972 (D.C. Cir. 2003) ; *Grapevine*, 71 Fed. Cl. 324 (2006); *AD Global,* 67 Fed. Cl. 567 (2005); *Rhone-Poulenc*, 114 T.C. 533, 542 (2000).

"any person" in the class is suspended until the final resolution of the summoned party's response to the summons. Such resolution cannot occur under § 7609(e)(2) before the *summoned party* has provided all the information required by the summons. Where, as here, a John Doe summons requires production of information with respect to a group of persons, suspension cannot end before the summoned party fully complies with the summons by producing the summoned information with respect to all members of the group.[21]

The plain meaning of § 7609(e) does not provide for an exception in the event the government obtains information as to one taxpayer in the John Doe class from a source other than the summoned party. Nothing in the legislative history of § 7609(e) or § 7609(f) suggests that Congress intended to provide an exception to the suspension rules where information which may be responsive to a summons is available from other sources – an exception which could have been easily provided. The plain meaning of the suspension provisions in § 7609(e) cannot be reconciled with plaintiff's argument for an exception where summoned information as to one taxpayer in the John Doe class is obtained from sources other than the summoned party. To create such an exception, Congress would have to rewrite the statute.

In this case, the statute of limitations on Tucker's 2001 taxable year with respect to taxes attributable to partnership items would have ended on April 15, 2005– three years following the filing of the Tuckers' tax return.[22] A "John Doe" summons was issued to Sidley Austin on

---

[21]Congress intended that § 7609(e)(2) apply to John Doe summonses and confirmed such intention by enacting § 7609(i)(4) which provides for notice of any suspension of the limitations period under § 7609(e)(2) to any person described in § 7609(f) with respect to a summons described in § 7609(f)(setting forth additional requirements for John Doe summons).

[22]§§ 6229(a); 6501(a). As shown above, that period begins running from the later of the filing of the individual return or the filing of the partnership return. In this instance, both the

October 15, 2003. (Def. Prop. Finding 3.) Pursuant to § 7609(e)(2)(A), the suspension of the statute of limitations began on April 15, 2004, when 365 days remained on the statute of limitations. Pursuant to § 7609(e)(2)(B), the suspension ends upon the resolution of the summoned party's response. As presented in the Government's opening brief, Sidley Austin's response to the summons was not resolved until March 3, 2005.[23] Therefore, on March 3, 2005, after ten months of suspension, the statute of limitations resumed running – for 365 days – and would expire on March 3, 2006. The FPAA was issued on June 17, 2005 – well before the statute of limitations had run, and, as shown above, again suspended the running of the statute of limitations.[24] When plaintiff filed its petition in this case, the statute remains suspended until a final decision of this Court.[25] Therefore, the assessment of taxes against the Tuckers on March 22, 2006, was timely.

**B. Adopting plaintiff's position would alter Congress' statutory scheme and frustrate the Congressional purpose underlying § 7609(e)(2).**

As applied to a John Doe summons involving a group or class of persons, § 7609(e)(2) provides for the suspension of the statute of limitations for "any person with respect to whose liability the summons is issued," until the "final resolution" of the summoned party's response to the summons. Congress thereby fashioned an administratively manageable suspension regime

---

partnership return and the individual return were deemed filed on April 15, 2002.

[23]Def. Prop. Finding 23. It is possible that the period of suspension continued beyond March 3, 2005, if Sidley Austin did not fully comply with the terms of the enforcement order, which required the production of multiple taxpayers' names and associated data.

[24]Section 6229(d)

[25]Id.

through which the Commissioner could effectively track statute suspensions for multiple John Doe class members based on a common date–the date of final resolution of the summoned party's response to the John Doe summons.[26]

Plaintiff argues that the suspension of § 7609(e)(2) is inoperable because the government had, from other sources, some information with respect to Mr. Tucker which may have been demanded by the summons served on Sidley Austin.[27] To begin its argument, plaintiff misstates the information required by the summons as requiring only "'the name, address and taxpayer identification number' of a specific taxpayer."[28] The summons actually required Sidley Austin to produce the following information:

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction'

---

[26]The General Explanation of the Tax Reform Act of 1986 (P.L. 99-514) states with respect to § 7609(e)(2) that "the statute of limitations is suspended until the issue is resolved. The issue is not considered to be resolved during the pendency of any action to compel production of the documents."

[27]Response, pp. 13 - 16. Plaintiff also states, at page 13 of its Response, that "Defendant knew not later than April 14, 2004, that SABW had identified Mr. Tucker as a taxpayer who engaged in one of the transactions referenced in the summons, and knew Mr. Tucker's address and taxpayer identification number." On the same page, plaintiff asserts: "SABW determined that Mr. Tucker's identifying information was responsive to the summons and that defendant was, in that context, provided with Mr. Tucker's name, address and taxpayer identification number. All of this happened on or before April 14, 2004." These statements are incorrect. No where does plaintiff provide an affidavit from Sidley Austin personnel to support these statements, nor could they. Prior to June 29, 2004, Sidley Austin affirmatively refused to provide Mr. Tucker's identity to the Government. (Def. Prop. Finding 17, 20, Lindquist Supplemental Declaration, paras. 27-34.) Not until March 3, 2005, did Sidley Austin provide the Government with the names of the entities involved in the tax shelter transactions. (Def. Prop. Finding 23.)

[28]Response, pp. 13, 15-16.

> or other 'potentially abusive tax shelter' organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor Brown & Wood LLP.[29]

Thus, the summons requires that Sidley Austin produce the identities (including name, address and tax identification number) for *each* United States taxpayer who participated in shelter activities. The request for information regarding participants in the tax shelters includes the entities Sligo 2000 and Epsolon, their addresses and taxpayer identification numbers.[30] The names of Sligo 2000 and Epsolon were not produced by Sidley Austin until March 3, 2005.[31] Therefore, despite plaintiff's attempts to imply to the contrary, Sidley Austin's response to the summons was not resolved until March 3, 2005, if then.

Under the theory urged by plaintiff, Congress's coherent, unified suspension regime would devolve into a confused and unmanageable tangle. The suspension provided for in § 7609(e)(2) would have no meaning. Under plaintiff's interpretation, the Service would be required to: (1) continually review any and all responses to all summonses to see if any response to one summonse could be considered responsive to another summons, whether or not related;

---

[29]Def. Prop. Finding 4.

[30]On page 15, of plaintiff's Response, plaintiff makes much of Mr. Lindquist's statements in the United States' Opposition to Intervention filed in the Illinois District Court that the United States was seeking "only identities." Plaintiff cites page 2 of that Opposition. Tellingly, plaintiff ignores that immediately following that statement on page 2 of the Government's Opposition, Mr. Lindquist quotes the text of the summons, making it clear exactly what was meant by "identities." Plaintiff adds language to Mr. Lindquist's statement from page 9 of that Opposition by adding "[intervening John Does']." Mr. Lindquist specified that the Government was seeking the identities of the John Does - not limited to the intervenors. Again, the identities requested under the summons included Sligo 2000 and Epsolon, their addresses and their taxpayer identification numbers.

[31]Def. Prop. Finding 23. So far as we know, Sidley Austin never did produce the taxpayer identification numbers.

(2) continually review all information obtained from any and all audits to determine if information received from another source was responsive to an outstanding summons; (3) determine whether any information gathered in any other fashion was relevant to information requested of any summoned party as to any taxpayer; (4) determine if any information was in hand which was relevant to a taxpayer whose statute of limitations was about to expire; and (5) calculate the tax and issue an FPAA or statutory notice of deficiency prior to the expiration of the statute of limitations. This is not the kind of burden Congress intended on placing on the Commissioner. The § 7609(e)(2) suspension provision applies "to *any person* with respect to whose liability the summons is issued" and ties the suspension period to the final resolution of *the summoned party's* response. The statute as enacted by Congress avoids the difficulties which plaintiff is seeking to place into the statutory scheme.

Plaintiff's interpretation of the suspension provision of § 7609(e)(2) would also defeat the purpose of the suspension. Congress enacted the statute to change the prior law under which, "if the IRS litigated to obtain access to the third-party records, the statute of limitations can expire prior to final determination as to the availability of the records."[32] Mr. Tucker concurrently prosecuted two separate pieces of litigation, one in Texas with respect to KPMG and one in Illinois with respect to Sidley Austin, both seeking to prevent the Service from learning his identity. The potential effect of both actions was to delay the Service's learning his identity as a tax shelter investor until after the three-year statute had expired. If plaintiff's theory were to prevail here, the Congressional purpose underlying § 7609(e)(2) would be frustrated.

---

[32]H.R. Conf. Rep. 99-841, 1986-3 C.B. (vol. 4), at 809.

Both the plain meaning of § 7609(e)(2) and the intent of Congress establish that the suspension of the statute of limitations continues until the summoned party's response is finally resolved. Adoption of plaintiff's strained interpretation would result in an administrative and litigation nightmare. Every person who fit the description of the John Doe class would be encouraged to first delay the summoned party's response (as happened here), then seek to determine what other information the Service might have from any source which arguably presented that same information as requested by the summons, and the time the Service obtained that information, all in hopes of running out the clock on the statute of limitations.[33] The clear line laid down by congress as to the duration of the suspension–final resolution of the summoned party's response–renders any such exercise irrelevant.

**C. The holding of *United States v. Powell* does not prevent the application of the suspension of § 7609(e)(2) to Mr. Tucker.**

Plaintiff contends that the Service had the information requested by the Sidley Austin summons somewhere in the voluminous record unsealed by the Texas District Court on April 12, 2004. Even if true, this is irrelevant. Plaintiff cites to the cases *Powell v. United States*, 379 U.S. 48 (1964), and *United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978), for the proposition that if the government already has in its possession the same information requested by a summons, the summons "is satisfied and is moot."[34] Plaintiff misstates the nature of the holdings of *Powell* and *Garrett*. First, those two cases concern the prerequisites which must be satisfied prior to

---

[33]Although defendant is unsure as to what plaintiff's rule 56(f) motion involves, it is suspected that plaintiff wishes to discover what information the Government had and when it had that information regarding the KPMG enforcement proceeding. The plain language of the statute renders the need for such a fishing expedition unnecessary as that information is irrelevant.

[34]Response, p. 14.

enforcement of a summons – not whether a specific summoned party's response has been resolved. In this case, the Sidley Austin summons was enforced by order of the Illinois District Court on April 28, 2004–after plaintiff contends the information was already in the hands of the Government. Thus, the enforceability of the summons was decided and that decision is *res judicata*. The time for Mr. Tucker to cite *Powell* and argue that the Government already had the summoned information in its possession was in the enforcement proceeding in which he had intervened.[35]

Even if the issue of whether the information sought by the Service is already in the possession of the Government from any source were present in this case, and it is not, cases subsequent to *Powell* have looked at the question of when information is already in the possession of the government. In *Powell*, 379 U.S. 48, 57-58 (1964), the Supreme Court held that, for an IRS summons to be enforced, the Government must show:

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . .

In construing these requirements, subsequent cases have held that the requirement that the information was "not already in the possession of the government" was to prohibit unnecessary summonses as set forth in § 7605(b):

---

[35]Such litigation in and of itself would have operated to keep the suspension of § 7609(e)(2) in place. In the legislative history to § 6503(j) (regarding suspension of the statute of limitations in the case of a designated summons") the Conference Report states that the term "final resolution" in that statute has the same meaning as that term in§ 7609(e)(2), i.e., that no court proceeding remains pending and the summoned person has complied with the summons to the extent required by the Court. H.R. Conf. Rep. No. 101-964 (1990).

> Read in context, we construe the "already possessed" principle enunciated by *Powell* as a gloss on § 7609(b)'s prohibition of unnecessary summonses, rather than an absolute prohibition against the enforcement of any summons to the extent that it requests the production of information already in the possession of the IRS.

*United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981). The *Davis* Court noted that this principle had already been applied, citing *United States v. Schwartz*, 469 F.2d 977, 985 (5th Cir. 1972), and *United States v. First National State Bank of New Jersey*, 616 F.2d 668 (3rd Cir. 1980).

In *Schwartz*, the taxpayer objected to enforcement of a summons on numerous grounds including that the Service had already had access to the summoned information. The *Schwartz* Court held that, even though the Service had free access to corporate records for a period of time, the requested records were not already in the possession of the Service, even during that period of access, because the information sought was not readily available to the corporations' bookkeeper and retrieving the information required a search of voluminous corporate records.

In *First National State Bank of New Jersey*, the Third Circuit considered the question of whether the Service could summons copies of Forms 1099 and1087 from banks, even though originals of those Forms had been filed with the Service and were already in the possession of the Service. The Third Circuit stated that the *Powell* requirement was based upon "the desire to prevent abuse of the administrative summons process and harassment of the taxpayer." *First National State Bank of New Jersey*, 616 F.2d 668 at 664. Because the forms were not kept in an indexed system, the Third Circuit held that, as a practical matter, the information was not in the possession of the Service.

Again, the issue of whether the information sought by the Sidley Austin summons was already in the possession of the United States as a result of a summons directed to another party is not present in this case. Even if that issue were present here, however, the information sought from Sidley Austin by the summons served on it was not in the possession of the United States where some of the information requested was buried in approximately 2500 pages of documents deposited in the United States District Court for the District of Texas in an injunction proceeding brought against KPMG and finally unsealed on April 12, 2004. *United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981); *United States v. Schwartz*, 469 F.2d 977, 985 (5th Cir. 1972); *United States v. First National State Bank of New Jersey*, 616 F.2d 668 (3rd Cir. 1980).

The relevant question is on what date did Sidley Austin finally resolve its response to the summons served upon it. § 7609(e)(2). As established above, the earliest possible date that Sidley Austin could be considered to have resolved its response to the summons was on March 3, 2005.

**IV. Plaintiff's Rule 56(f) motion.**

Plaintiff has incorporated into its Response its own Rule 56(f) motion seeking unspecified discovery regarding unspecified allegations made by the Government. Presumably, plaintiff wishes to engage in discovery to learn what information the Government had with respect to Mr. Tucker and when the Government acquired that information, regardless of the source of that information. Plaintiff's supplemental Proposed Findings of Undisputed Fact indicate that plaintiff is seeking to establish that information present in the 2,499 pages filed in response to the KPMG summons as part of the Texas litigation may have been shared among the various components of the Department of Justice and the IRS. As is shown above, the relevant inquiry is when did

Sidley Austin finally resolve its response to the summons served upon it and ordered enforced in the United States District Court for the District of Illinois. The declaration of John Lindquist of the Department of Justice, attached to the Government's Cross Motion for Summary Judgment, and his supplemental declaration filed simultaneously with this Reply, establish that the earliest date Sidley Austin could be considered to have finally resolved its response was March 3, 2005. Since plaintiff cannot present declarations from Sidley Austin personnel to establish a different date, there is simply no reason to grant its Rule 56(f) motion.

**V. The Government's Rule 56(f) Motion.**

While the Government contends that its Cross-Motion for Summary Judgment on the issue of whether the statute of limitations barred the assessment of taxes arising from the FPAA in this case should be granted, if that Cross Motion is denied, the Government has requested leave to conduct discovery into the issue of whether or not Mr. Tucker had filed a false or fraudulent return. If a false or fraudulent return was filed, then the unlimited statute of limitations of § 6501(c)(1) would apply, with the result that the FPAA was issued timely. Unlike plaintiff's vague request in its Rule 56(f) motion, the Government has set forth detailed reasons why there is a potential for fraud in this matter.

As is stated in the Government's opening brief and in its Brief in Support of the Motion to Suspend Proceedings, the individuals, entities, and transactions involved in this case are intimately related to a broad-based conspiracy to develop, promote, sell, and implement various illegal tax shelters by the worldwide accounting firm KPMG LLP and others. The Service determined that, *inter alia*, the transactions at issue in this case which gave rise to the claimed loss were not entered into with a profit motive, lacked economic substance, had no bona fide business

purpose, and were shams. The United States expects to prove at trial that these losses were calculated to be used by Mr. Tucker to avoid paying income taxes on substantial amounts of income. Furthermore, Mr. Tucker took aggressive steps to prevent his identity from being disclosed to the Service in response to summonses seeking the identities of taxpayers who had participated in tax shelters.

In order to determine whether an allegation of fraud in this case is appropriate, the United States requires discovery into the merits of the Tucker/Epsolon transaction – both document discovery and depositions – including inquiries into KPMG's marketing of the SOS shelter to Mr. Tucker, and the participation in implementing the transaction by various KPMG personnel and R.J. Ruble, who is an indicted defendant in the criminal case proceeding in the Southern District of New York. As is explained in the letter dated January 13, 2006, from the United States Attorney's Office for the Southern District of New York, the Epsolon/Tucker transaction is part of the matters contained in the Superceding Indictment filed in *United States v. Jeffrey Stein, et al.*, S05 Crim. 888 (LAK) (SDNY).[36] For reasons stated in the Government's Brief in Support of Defendant's Motion to Suspend, that discovery would necessarily interfere with the criminal case. Therefore, the Government requests that, if the Court reaches the issue of whether the unlimited statute of limitations of § 6501(c)(1) applies because Mr. Tucker filed a false or fraudulent return with the intent to evade tax, the Court refuse plaintiff's application for judgment pursuant to RCFC 56(f) to allow discovery on this issue after the case is no longer stayed.

---

[36]Exhibit 7 to the Declaration of David House filed with the Government's Brief in Support of Motion to Stay Proceedings.

## CONCLUSION

The statute of limitations of § 6501 governs the assessment of tax attributable to partnership items. As of the issuance of the FPAA, the statute of limitations of § 6501 was open and suspended pursuant to § 7609(e)(2)(B). The statute of limitations to assess tax against Mr. Tucker for 2001 remains open and suspended as a result of the issuance of the FPAA and the filing of this suit pursuant to § 6229(d)(1). Therefore the United States asks the Court to grant the United States Motion for Partial Summary Judgment by holding that the adjustments reflected in the 2001 FPAA are not barred by limitations, so that the Court may determine Epsolon's 2001 partnership items.

In the alternative, if the Court reaches the issue of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax resulting in the application of the unlimited statute of limitations of § 6501(c)(1), the Court should refuse plaintiff's application for judgment pursuant to RCFC 56(f) and continue the stay in this matter.

Respectfully submitted,
s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
s/David Gustafson
Of Counsel