IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Sweeney)

No. 05-999 T

EPSOLON LIMITED, by and through
SLIGO (2000) COMPANY, INC.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY TO PLAINTIFF'S SURREPLY

Plaintiff has filed its Surreply arguing that, because the requirements of *Powell v. United States*[1] cannot be met with respect to the summons issued to Sidley Austin, that summons cannot form the basis for a suspension of § 7609(e)(2)[2] of the statute of limitations. Plaintiff is wrong for three reasons: (1) the requirements of *Powell* are irrelevant to this case, where the issue concerns the date on which the summoned party's response to the summons was finally resolved; (2) the information demanded by the summons was not already in the possession of the United States both in fact and under the *Powell* requirements; and (3) the summoned party had not resolved its response to the summons until March 3, 2005.

[1] 379 U.S. 48 (1964).

[2] All references herein to sections are to Title 26, U.S.C., unless otherwise designated.

**1. The *Powell* requirements are irrelevant where the issue concerns the date on which the summoned party's response to the summons was finally resolved.**

The question in this case concerns the date on which the suspension of the statute of limitations of § 7609(e)(2) ends. As presented in the Government's Reply, the Supreme Court in *Powell* addressed the question of when it is proper for a court to enforce a summons issued by the Service. The Supreme Court held that the summons must be issued for a legitimate purpose; that the summoned information must be relevant to that purpose; that the information must not already be in the possession of the Commissioner; and that the procedural requirements of the Internal Revenue Code must have been followed.[3] However, the appropriate time for Mr. Tucker to raise the issue of whether the information is already in the possession of the Service was during a summons enforcement proceeding, in which he did in fact intervene. That proceeding with respect to the Sidley Austin summons took place in the District Court for the Northern District of Illinois. As the Government stated in its Reply, the Sidley Austin summons was enforced by order of the Illinois District Court on April 28, 2004[4] – after plaintiff contends the information was already in the hands of the Government. Thus, the enforceability of the summons was decided and that decision is *res judicata*. The time for Mr. Tucker to cite *Powell* and argue that the Service already had the summoned information in its possession was in the enforcement proceeding in which he had intervened.[5] He cannot now collaterally attack in this

---

[3]*Powell*, 379 U.S. at 57-58.

[4]Government Proposed Finding 18.

[5]Such litigation in and of itself would have operated to keep the suspension of § 7609(e)(2) in place. In the legislative history to § 6503(j) (regarding suspension of the statute of limitations in the case of a designated summons") the Conference Report states that the term "final resolution" in that statute has the same meaning as that term in§ 7609(e)(2), i.e., that no court proceeding remains pending and the summoned person has complied with the summons to

Court the enforceability of the summons already enforced by the District Court for the Northern District of Illinois.

The question in this case is clearly presented by the statute. The suspension of § 7609(e)(2) ends upon the final resolution of the summoned party's response. Had Congress wished to provide that the suspension ended when the Service obtained, from any *other* source, information which may be responsive to the summons, Congress could have done so. The Government has described the administrative and litigative nightmare which would result in straying from the plain meaning of the statute. Once a summons is issued and ordered enforced, plaintiff's contentions regarding the *Powell* requirements are unavailing.

**2. The information demanded by the summons was not already in the possession of the Service both in fact and under the *Powell* requirement.**

As shown above, and in the Government's Reply, the question of whether information which may have been responsive to the Sidley Austin summons might have been available to the Service from other sources is irrelevant to determining the date upon which Sidley Austin's response was finally resolved pursuant to § 7609(e)(2). Nevertheless, plaintiff contends that the Service had learned Mr. Tucker's identity, as well as those of SLIGO and Epsolon, as a result of the response of a different entity – KPMG – to the summons served upon it and unsealed in the District of Texas. Plaintiff ignores the information demanded by the Sidley Austin summons (emphasis added):

> the name, address and taxpayer identification number for each United States taxpayer who, during any part of the period January 1, 1996 through October 15, 2003, participated in a transaction which was or later became a 'listed transaction'

---

the extent required by the Court. H.R. Conf. Rep. No. 101-964 (1990).

> or other 'potentially abusive tax shelter' *organized or sold by the law firm of Sidley Austin Brown & Wood LLP and its predecessor Brown & Wood LLP*.[6]

In addition to the mere identities of Mr. Tucker, Epsolon, and SLIGO, the Sidley Austin summons sought to learn the identities of U.S. taxpayers who participated in shelters organized or sold *by Sidley Austin*. Without a final resolution to Sidley Austin's response to the summons served upon it, the Service had not confirmed that Mr. Tucker, SLIGO 2000, and Epsolon had participated in a shelter organized or sold by Sidley Austin. That confirmation did not happen until March 3, 2005.

Even if the *Powell* requirements were relevant to the suspension of § 7609(e)(2), and they are not, the fact that KPMG had produced information in the KPMG litigation does not mean that the information requested from Sidley Austin was already in the possession of the Service, within the meaning of *Powell*. As explained in the Government's Reply, the requirement that the requested information not already be in the possession of the Service was intended to prevent harassing and unnecessary summonses.[7] In *United States v. Davis*, the Fifth Circuit referred to both *Schwartz*[8] and *First National*[9] as cases that had already used this interpretation of the *Powell* requirement:

> Though both of these courts chose to cast their argument in terms of whether the information was effectively in the government's "possession", this terminology should not obscure their essential analysis. In both opinions the courts recognized that actual possession of or access to information by the IRS is not an absolute bar

---

[6] Def. Prop. Finding 4.

[7] *United States v. Davis*, 636 F.2d 1028, 1037 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981).

[8] *United States v. Schwartz*, 469 F.2d 977, 985 (5th Cir. 1972)

[9] *United States v. First National State Bank of New Jersey*, 616 F.2d 668 (3rd Cir. 1980).

> to enforcement of a summons for that information. In both the courts balanced the government's need for effective investigation against the potential for unnecessary harassment inherent in such summonses, and enforced such summonses even though compliance would impose nontrivial costs on the summonee.[10]

Plaintiff relies on the case of *United States v. Monumental Life Insurance*[11] to refute the cases cited by the Government. *Monumental Life* involved a petition to enforce a summons – not a question of when the suspension of the statute of limitations ended. In that case, the Service was investigating a single employer for possible abuse of deduction of premiums paid for life insurance policies for its employees. The Service served a third party summons on a life insurance company seeking proprietary information, as well as information that would pertain to all of that insurance company's customers. The life insurance company moved to quash the summons. That motion was dismissed and the company produced some of the information requested and asked the Service to enter into a protective order to keep its proprietary information confidential. The Service refused and filed a petition to enforce that summons. The lower court, after 6 hearings and an attempted settlement, ordered the summons enforced and the Sixth Circuit reversed.

In its opinion, the Sixth Circuit found that the Service had already received *from the summoned party* numerous documents that were asked for in the summons under dispute.[12] Thus it clearly presented a question of whether the summons the Service was seeking to enforce was burdensome as to the summoned party. The Sixth Circuit also found that the subject summons sought irrelevant material, and was burdensome in that it sought proprietary materials without

---

[10] *Davis,* supra, 636 F.2d at 1038.

[11] 440 F.3d 729 (6th Cir. 2006).

[12] *Id.* at 735.

benefit of a protective order to preserve their confidential nature. By contrast, in the present case, plaintiff is seeking to assert that documents received by the Service *from any source* – including sources *other than* the summoned party – must be considered in determining when a summoned party's response is fully resolved, in order to end the suspension of § 7602(e)(2). *Monumental Life* does not address that question.

**3. The date upon which Sidley Austin finally resolved its response to the summons was until March 3, 2005.**

On March 3, 2005, Sidley Austin provided the Government with the identities of Epsolon and SLIGO 2000 in response to the summons served upon it.[13] (So far as we know, Sidley Austin never provided Mr. Tucker's social security number, nor the taxpayer identification numbers of the entities whose names were turned over in response to the summons.) As a result, March 3, 2005, is the earliest date upon which Sidley Austin could be found to have finally resolved its response to the summons served upon it.

The statute of limitations was suspended pursuant to § 7609(e)(2) on April 15, 2004 (the date 6 months after the service of the summons). At that point in time, there remained 365 days on the statute of limitations for Mr. Tucker's 2001 taxable year.[14] The remaining 365 days began to run on March 3, 2005 (the earliest date on which Sidley Austin could be found to have finally resolved its response to the summons). Therefore, the FPAA mailed on June 17, 2005, was well within the remaining time left on the statute of limitations. Pursuant to § 6229(d), the mailing of

[13]Government Prop. Finding 23.

[14]As presented in the Government's Motion for Summary Judgment, the statute of limitations for Mr. Tucker's 2001 year was three years from the date Mr. Tucker was deemed to have file his return for that year - on April 15, 2002. As a result, the statute would have expired on April 15, 2005, but for the suspension of § 7609(e)(2).

the FPAA again suspended the statute of limitations so that the assessment on March 22, 2006, against Mr. Tucker for his 2001 taxable year with respect to partnership items was timely.

**CONCLUSION**

The statute of limitations of § 6501 governs the assessment of tax attributable to partnership items. As of the date of the issuance of the FPAA, the statute of limitations of § 6501 was open as a result of the suspension of § 7609(e)(2). The statute of limitations to assess tax against Mr. Tucker for 2001 remains open and suspended, pursuant to § 6229(d), as a result of the issuance of the FPAA and the filing of this suit. Therefore the United States asks the Court to grant the United States' Motion for Partial Summary Judgment by holding that the adjustments reflected in the 2001 FPAA are not barred by limitations, so that the Court may determine Epsolon's 2001 partnership items.

In the alternative, if the Court were to reach the issue of whether Mr. Tucker filed a false or fraudulent return with the intent to evade tax resulting in the application of the unlimited statute of limitations of § 6501(c)(1), then the Court should refuse plaintiff's application for judgment pursuant to RCFC 56(f) and should continue the stay in this matter.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims

s/David Gustafson
Of Counsel